1  James P. Cilley, Esq. (SB#168118)
   Mark A. Schmuck, Esq. (SB#205164)
2  **TEMMERMAN & CILLEY, LLP**
   2502 Stevens Creek Blvd.
3  San Jose, California 95128-1654
   Tel: (408) 998-9500
4  Fax: (408) 998-9700

5  Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MILLER, as guardian of Molly Miller, an individual; and ANNE MILLER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, a business entity of unknown form; CARLETON L. BRIGGS, an individual; CHRISTINE DILLON, an individual; DONALD BOHN, an individual; GRACE PARISH CHRISTIAN CHURCH, a business entity of unknown form; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: C 07-04776 JL<br><br>**PLAINITFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>Date:        December 5, 2007<br>Time:        9:30 a.m.<br>Courtroom:   F, 15th Floor<br>Magistrate:  Hon. James Larson<br><br>Complaint Filed:  August 17, 2007<br>Trial Date:       None |

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................... 1

II.  STATEMENT OF FACTS ............................................. 1

III. LEGAL DISCUSSION ................................................ 4

    A.  Standards Governing 12(b)(6) Motions ......................... 4

    B.  Plaintiffs Can Recover Damages for Breach of Contract .................... 5

        Greensprings' Third Party Beneficiary Argument Misstates the Facts ........ 8

        Greensprings' Illegality Argument Misstates the Law ..................... 8

    C.  Plaintiffs Have Stated A Claim For Conversion ........................ 9

    D.  Plaintiffs Have Sufficiently Pled A Fraud Cause of Action ................ 10

    E.  Plaintiffs Have Sufficiently Pled A Declaratory Relief Cause of Action ...... 10

    F.  Imposition of a Constructive Trust is Appropriately Pled ................ 11

IV.  CONCLUSION ..................................................... 12

# TABLE OF AUTHORITIES

**CASES**

Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . 5

Anderson v. Dillon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Anderson v. Greensprings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997) . . . . . . . . . . . . . . . . 4

Haigler v. Donnelly, 18 Cal.2d 674, 681 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Laks v. Coast Federal Savings and Loan Ass'n, 60 Cal. App. 3d 885, 890. . . . . . . . . . . . . . . . 5

Neitzke v. Williams, 490 U.S. 319, 328-329 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Olson v. Toy (1996) 46 Cal.App.4th 818, 823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Parks School of Business, Inc. V. Symington, 51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . 4

Steele v. Marsicano, 102 Cal. 666, 669 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tomerlin v. The Canadian Indemnity Company, 61 Cal.2d 638, 649 (1964) . . . . . . . . . . . . 6, 7

United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . 4

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Federal Rule of Civil Procedure 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATE STATUTES**

California Civil Code § 1667 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Civil Code § 2223. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

California Civil Code § 2224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

California Code of Civil Procedure Section 1060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TREATISES**

1 Witkin Summary of California Law § 244 (10th Ed. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1 Witkin, Summary of California Law (10th ed. 2005) "Contracts," § 244, at 275 . . . . . . . . . 5

1 Witkin Summary of California Law Contracts § 440 (10th Ed. 2007) . . . . . . . . . . . . . . . . . . . . 8

1 Witkin Summary of California Law Contracts § 441 (10th Ed. 2007) . . . . . . . . . . . . . . . . . . . . 9

1 Witkin Summary of California Law Contracts § 451 (10th Ed. 2007). . . . . . . . . . . . . . . . . . . . 8

2 Schwarzer, et al. California Practice Guide: Federal Civil Procedure Before Trial (rev. 2007) ¶ 9:210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 Witkin Summary of California Law Torts § 699 (10th Ed. 2007) . . . . . . . . . . . . . . . . . . . . . . . 9

5 Witkin Summary of California Law Torts § 703 (10th Ed. 2007) . . . . . . . . . . . . . . . . . . . . . 10

Restatement (Second) of Contracts § 90(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Witkin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Witkin Summary of California Law Contracts § 211 (10th Ed. 2007) . . . . . . . . . . . . . . . . . . . . 8

# I.

# INTRODUCTION

Greensprings Baptist Christian Fellowship Trust ("Greensprings") brings the instant Motion to Dismiss alleging that there is no set of facts that can sustain the Plaintiffs' Complaint. However, as discussed below, Plaintiffs have, in fact, sufficiently pled each and every cause of action alleged against Greensprings primarily because it was Greensprings' own actions in paying the money on behalf of Anne and Molly Miller that give rise to the Complaint. Thereofre, the Court should deny Greensprings' motion.

# II.

# STATEMENT OF FACTS

Elsie Turchen, now deceased, was Molly Miller's natural great grandmother. Molly is Robert and Barbara Miller's adopted daughter. Robert and Barbara also have a natural daughter, Anne. Even though Molly was Elsie's blood relative, Elsie always treated both Molly and Anne equally as her own great grandchildren.

Prior to her death, Elsie expressed in writing her intent to give a substantial gift to Anne and Molly. Elsie's November 23, 2000 letter, written to Barbara and Robert Miller, stated, in pertinent part:

> "I would like to do something for your girls. I do not shop; and I don't want to send things that have to be exchanged or are not useful, so I have failed to do anything on either Annie's or Molly's birthdays.
>
> Would you consider the gift of the house for them? Enclosed is the picture. . . .
>
> It will go vacant approximately 2/1/2001.
>
> As you know, I am very ill. . . ."

Elsie's clear intent was to give Anne and Molly the house located at 325 Malcolm Avenue, Belmont, California. Elsie died on December 10, 2000.

Following Elsie's death, Defendant Christine Dillon represented to Barbara Miller that she was the personal representative of the Estate of Elsie Turchen. Defendant Dillon knew about Elsie's gift to Anne and Molly at the time Dillon made the representation to Barbara

Miller because Dillon had a copy of Elsie's letter. Knowing about Elsie's gift to Anne and Molly, Defendant Dillon represented that Grace Parish Christian Church (which Plaintiffs are informed and believe never existed) would pay $500,000.00 (in place of a gift of the Malcolm Avenue property) to a charity or charities of Robert's and Barbara's choice on behalf of Anne and Molly. Plaintiffs relied upon Dillon's representation that she was the personal representative of the estate of Elsie Turchen. In reliance upon Dillon's representation that she was personal representative and in reliance upon Dillon's representation that Grace Parish Christian Church would pay the $500,000.00 gift, Plaintiffs did not make any claim whatsoever against the estate of Elsie Turchen because the gift was going to be satisfied.

On August 11, 2002, the defendant issued two checks totaling $500,000-"First Hawaiian Title Company." The checks were issued to a title company because the Millers' chosen charity, the Maui Preparatory Academy, was in the process of purchasing real property for use as a school and the $500,000 was paid towards that purchase. The two checks were drawn on an account owned by "Real Estate Trust," which Plaintiffs are informed and believe is a "dba" for defendant Greensprings Baptist Christian Fellowship Trust. The checks were both signed by defendant Don Bohn. These checks were intended to be performance on the agreement between defendant Dillon, on behalf of herself and the other defendant, to the Millers to fulfill Elsie Turchin's promise to make a gift to Anne and Molly as indicated in Elsie's November 23, 2000 letter. Robert and Barbara Miller later learned that the checks were made out to First Hawaiian Title Company, an entity that did not exist. On October 9, 2002, Mr. and Mrs. Miller sent a letter to defendants Bohn and Dillon and asked them to reissue the checks to the proper company name, "First Hawaii Title Corporation."

After not having heard from defendants Bohn or Dillon for some time, on January 10, 2005, Mr. and Mrs. Miller demanded that they re-issue a check to "Maui Preparatory Academy." The purpose of making the check to Maui Preparatory Academy was to make a gift to the Academy on behalf of Anne and Molly. <u>Thereafter, on January 10, 2005, a cashier's check was delivered by defendant Greensprings to Mr. And Mrs. Miller in the amount of $500,000 made out to Maui Preparatory Academy</u>. It is clear from their actions, and from the

facts alleged in the pleadings, that defendants Dillon, Bohn and Greensprings were all acting on and behalf one another in representations to the Millers and in inducing their inaction regarding either discovery of the true representatives of the decedent's estate or pursing their claims to the estate.

Following receipt of the $500,000 cashier's check, Mr. and Mrs. Miller requested on July 22, 2005 that defendants Bohn and Dillon re-issue the check into three separate checks totaling $500,000 to three new charities: Stanford University, Seabury Hall and West Maui Carden Academy. On August 10, 2005, Mrs. Miller had a telephone conversation with Defendant Bohn concerning the checks. During that conversation, defendant Bohn represented that the checks would be re-issued the following day.

At the same time, Mrs. Miller wrote a letter to Carleton L. Briggs, who Plaintiffs are informed and believe is a member of the board of defendant Greensprings. The purpose of this letter was to explain to Briggs the situation and why three checks needed to be issued instead of one. The following day, on August 11, 2005, Briggs wrote back to Mrs. Miller asking that the January 10, 2005 cashier's check be returned to Greensprings because of litigation against defendants Greensprings, Bohn and Dillon by Penny Anderson, who is Elsie Turchen's granddaughter and Molly Miller's birth mother.

The letter from Briggs was the first indication that the Millers received that Dillon's, Bohn's and Greensprings' actions in representing that they were acting as personal representative of and on behalf of the decedent's estate, and thereby inducing the Miller's inaction, was false and fraudulent. Briggs' letter stated specifically that in order to have the checks re-issued, a motion in the <u>Anderson v. Greensprings</u> litigation must be filed, which, according to Briggs, would be made "with all possible haste." Briggs also represented that the funds to cover the $500,000 would be maintained in a separate, interest-bearing account earmarked for the charities named by Mr. and Mrs. Miller. Barbara Miller returned the cashier's check to Briggs on August 16, 2005, in reliance on these representations. Plaintiffs are informed and believe that defendant Greensprings never filed any motion in the <u>Anderson v. Greensprings</u> litigation to issue the checks, nor did Greensprings ever deposit the funds in any

separate interest-bearing account earmarked for the charities. On multiple occasions, after inducing Barbara Miller to return the cashier's check, defendants have represented to the plaintiffs that they intended to reissue checks pursuant to the agreement set forth herein.

## III.

## LEGAL DISCUSSION

### A.    Standards Governing 12(b)(6) Motions

Federal Rule of Civil Procedure 12(b)(6) authorizes a Court to dismiss a complaint where that complaint fails to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion, the Court must construe the Complaint in the light most favorable to the Plaintiff.[1] Furthermore, the Court must accept as true all material allegations of the Complaint, as well as reasonable inferences to be drawn from them,[2] no matter how unlikely.[3]

In addition, many courts (including the Ninth Circuit) view Rule 12(b)(6) motions with disfavor because of the limited role that pleadings play in federal practice and the liberal policy concerning amendment of pleadings. In fact, the Ninth Circuit has stated that Rule 12(b)(6) motions are *"rarely granted."*[4] Also, dismissal pursuant to Rule 12(b)(6) is only proper is "extraordinary" cases.[5]

Greensprings' claims that the Plaintiffs' claims against it are so defective that dismissal pursuant to Rule 12(b)(6) is the only appropriate remedy. This is not the case. The pleadings disclose sustainable claims against Greensprings (as well as the other defendants) that deserve examination at trial.

Finally, Federal Rule of Civil Procedure 15(a) states, with respect to amended pleadings requiring leave of court, that such leave "shall be freely given when justice so requires." The

---

[1] Parks School of Business, Inc. V. Symington, 51 F.3d 1480 (9th Cir. 1995).

[2] Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998)

[3] Neitzke v. Williams, 490 U.S. 319, 328-329 (1989).

[4] Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997) (emphasis added); see also 2 Schwarzer, et al. California Practice Guide: Federal Civil Procedure Before Trial (rev. 2007) ¶ 9:210.

[5] United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

practical effect of such a liberal amendment policy is that, if the court is inclined to grant a motion under Rule 12(b)(6), leave to amend is almost always granted.[6] Therefore, if this Court is inclined to grant any part of the instant Motion, Plaintiffs request that leave to amend their Complaint be granted to that same extent.

### B.  **Plaintiffs Can Recover Damages for Breach of Contract**

Plaintiffs' First Cause of Action for Breach of Contract is based on a theory of promissory estoppel. The authority cited by Greensprings in its moving papers support the Millers' entitlement to damages for breach of contract. Greensprings argues:

> Under the doctrine of promissory estoppel, a promisor is bound by the promise if he or she should reasonably expect a substantial change of position in reliance on the promise and injustice can be avoided only by its enforcement. *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 48 (1990). The promisor may be bound to perform the promise despite lack of consideration because "the estoppel is a substitute for consideration." 1 Witkin, Summary of California Law (10th ed. 2005) "Contracts," § 244, at 275.

The Restatement Second of Contracts states the doctrine of promissory estoppel as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.[7]

California cases have stated that the required elements to sustain a promissory estoppel cause of action are

> (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.[8]

In this case, Plaintiffs' Complaint adequately states a claim for promissory estoppel, despite Greensprings' argument to the contrary.

First, a clear and unambiguous promise was not only made by Greensprings, but it was *actually performed* by Greensprings in that it paid the $500,000.00 in question not once, not twice, *but three times*. Those payments were all in connection with defendants Dillon's, Bohn's

---

[6] *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

[7] Restatement (Second) of Contracts § 90(1). See also 1 Witkin Summary of California Law § 244 (10th Ed. 2007).

[8] *Laks v. Coast Federal Savings and Loan Ass'n*, 60 Cal. App. 3d 885, 890.

and Greensprings' misrepresentations that Dillon was the personal representative of Elsie Turchen's estate and that the gift was to be paid out of the estate. The terms of the contract were that Greensprings would pay $500,000.00 and that the Millers would forbear pursuing any claims that they may have to the Estate of Elsie Turchen, based upon the defendants' representations and performance.

Plaintiffs relied on the defendants' representation and their reliance was foreseeable. Once the representation was made by defendant Dillon and Greensprings that the payment would be made, Plaintiffs had no reason to pursue the matter any further with the estate. In other words, they did not file a Creditor's Claim or other petition in the probate of Elsie Turchen's estate because Plaintiffs believed that they were going to be fully satisfied by having Greensprings pay the $500,000.00 as instructed. This is absolutely reasonable because, if one believes that his claim is going to be paid in full without any court intervention, it would be a waste of time and money to prepare the papers in order to enforce that claim in court.

Plaintiffs were in fact damaged from Greensprings' failure to fulfill its promise to pay the $500,000.00 according to Plaintiffs' instructions. As discussed above, the intent of the payments was to make gifts on behalf of Anne and Molly Miller. Therefore, they are the ones entitled to the damages. In terms of damages "The cases hold that the appropriate remedy lies in the enforcement of the defendant's promise."[9] Therefore, the proper measure of damages is the $500,000.00 that was to have been paid to the chosen charities on behalf of Anne and Molly Miller.

In its moving papers, Greensprings attempts to cleverly sidesteps the elements that give rise to a promissory estoppel cause of action by arguing that the underlying gift from Elsie Turchen was not a valid gift and, therefore, the promise by Greensprings was not enforceable. Whether the underlying gift by Elsie Turchen was valid or not is irrelevant to a determination of whether Plaintiffs' promissory estoppel cause of action can withstand a Rule 12(b)(6) motion.

More importantly, is that the Complaint discloses all of the elements of a promissory estoppel claim, i.e., a promise, reliance, reasonableness and damages. As discussed above,

---

[9] Tomerlin v. The Canadian Indemnity Company, 61 Cal.2d 638, 649 (1964).

Page 6
Plaintiffs' Opposition to Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

Greensprings' actions in making the $500,000.00 payments led directly to Plaintiffs' forbearance from making any claim in the Turchen estate. While the validity of the underlying gift may have been susceptible to dispute in connection with a claim validly brought against the Turchen Estate, that matter is now irrelevant. The claim was not asserted against the Estate as a direct and proximate result of Greensprings' and the other defendants' actions and representations. The contract upon which the Plaintiffs now seek to recover is simple. Defendants Greensprings, et al., agreed to pay $500,000.00. The Millers agreed to forbear from making any claims in the Turchen estate. As a result of that forbearance, Plaintiffs are now barred by the applicable statutes of limitations from ever bringing a claim of any sort against the Turchen estate and allowing the court with the proper jurisdiction, the San Mateo County, California, Superior Court, from making that determination. As a result of Greensprings' actions, Plaintiffs will now never have that issue finally determined.

Furthermore, by paying the $500,000.00, and later demanding that the money be returned in light of the <u>Anderson v. Dillon</u> lawsuit, Greensprings was acknowledging that it was acting on behalf of the Turchen estate *without court appointment and at its own risk*. Greensprings was also acknowledging that the Plaintiffs' claim to the money had validity. Otherwise, *why did Greensprings pay the money as directed by Plaintiffs?* The fact that Greensprings paid the money in the first place completely emphasizes the irrelevance of the issue concerning the validity of the underlying gift from Elsie Turchen to Anne and Molly Miller.

Lastly, under this set of facts, the governing California authority would also authorize the inclusion of a breach of oral contract claim. As stated above, the contract alleged by the Plaintiffs is simple: the defendants agreed to pay $500,000.00 and the Plaintiffs agreed to forbear from making any claims against the Turchen Estate. The Plaintiffs' forbearance from making a claim is sufficient consideration to support an oral contract. As stated by Witkin:

> (1) *In General*. Consideration may be forbearance to sue on a claim, extension of time, or any other giving up of a legal right, in consideration of some promise. [Citations].
>
> The slightest forbearance will suffice: "Even though the forbearance is for one day only, there is sufficient consideration as the law does not weigh the quantum." [Citations].

> (2) *Compromise of Claim.* The compromise of a claim, either valid, doubtful, or disputed (but not void) is good consideration, the claimant giving up his or her asserted right to recover the whole amount as consideration for a promise to pay a lesser amount. [Citations].[10]

Therefore, even under a more traditional contract theory, the fact that Plaintiffs gave up their right to make a claim against the Turchen Estate is sufficient consideration to support the existence of a contract and to support a breach of contract claim.

### Greensprings' Third Party Beneficiary Argument Misstates the Facts

Greensprings also spends a considerable amount of time in its moving papers discussing whether the agreement the Plaintiffs seek to enforce is a third party beneficiary contract. Greensprings attempts to state that, where the contract between Plaintiffs and Greensprings was to make a gift to a third party, and the promisor breaches that agreement, there is no damage suffered by the promisee. This argument misstates the case. Recall that the $500,000.00 was a *substitute* for the gift of real property to Anne and Molly Miller. By instructing Greensprings to pay it to various charities, Plaintiffs were giving Greensprings instructions as to how to pay *their own money*. The damages suffered here by Plaintiffs is either the loss of the money itself (which belongs to Plaintiffs) and the ability to control how it gets paid, including to Plaintiffs themselves.

### Greensprings' Illegality Argument Misstates the Law

Greensprings has also cleverly attempted to convince the Court that any agreement between Greensprings and Plaintiffs is illegal. Greensprings' argument essentially boils down to the assertion that if there was, in fact, an agreement between it and Plaintiffs, it is illegal and void because the existence of such a contract would jeopardize Greensprings' tax-exempt status. Generally, a contract is illegal and void if it is

  1. Contrary to an express provision of law;

  2. Contrary to the policy of express law, though not expressly prohibited; or,

---

[10] 1 Witkin <u>Summary of California Law</u> Contracts § 211 (10th Ed. 2007) (italics in original).

3. Otherwise contrary to good morals.[11]

Where the contract is found to be illegal, the general rule is that the contract is void.[12] There is an exception to this rule which states:

> In situations in which no strong objections of public policy are present, a party to the illegal agreement may be permitted to enforce it, often on the ground that the parties are not *in pari delicto* [not in equal wrong]. Other reasons that have been assigned, either singly, or together are: (1) the violation of law did not involve serious moral turpitude; (2) the adverse party would be unjustly enriched if enforcement were denied; (3) the forfeiture would be disproportionately harsh in proportion to the extent of illegality.[13]

In this case, no strong public policy is implicated by this contract. Assuming for the sake of argument that the contract Plaintiffs allege is contrary to the provisions of the Internal Revenue Code, the only consequence of that illegality would be that Greensprings could lose its tax-exempt status and be required to report and pay income tax. There is no moral or ethical component to this contract – *it is simply about money*. Furthermore, if the contract is illegal, the only illegal act is Greensprings' act in paying the money. Plaintiffs are completely innocent when it comes to violating any Internal Revenue statute. It would be unjust to not enforce the contract where the only possible consequence of violating the statute is Greensprings' loss of tax-exempt status. To do so would reward Greensprings and deprive Plaintiffs of the benefits of Greensprings' promise. In addition, there is no moral turpitude involved in the performance of this contract. Quite the opposite, if the contract is enforced, the money will be going to charity. While there will be no unjust enrichment to any party if the contract is enforced, the forfeiture suffered by Plaintiffs would be disproportionately harsh (to the tune of $500,000.00) if the agreement is not enforced. The argument by Greensprings that the Plaintiffs' alleged contract is illegal is simply a way for Greensprings to hide behind the Internal Revenue statutes and avoid a promise it made *and performed three times*.

**C.  Plaintiffs Have Stated A Claim For Conversion**

---

[11] Cal. Civil Code § 1667. See also 1 Witkin Summary of California Law Contracts § 451 (10th Ed. 2007).

[12] 1 Witkin Summary of California Law Contracts § 440 (10th Ed. 2007).

[13] Id. at § 441.

Conversion is the wrongful exercise of dominion over personal property of another.[14] Historically, conversion was limited to the wrongful taking of tangible personal property. However, money can be the subject of a conversion action where a specific, identifiable sum is involved.[15]

In this case, a claim is stated against Greensprings for conversion. As discussed above, the agreement was for Greensprings to pay $500,000.00 to a charity or charities on behalf of Anne and Molly Miller. Once Greensprings delivered a $500,000.00 cashier's check to Barbara Miller in performance of that agreement, Greensprings lost the legal ability to take that check back. *Greensprings could not even stop payment on that check.* It was only by falsely representing to Barbara Miller that a motion would be made to the San Mateo County Superior Court for payment of that money back to the Millers was Greensprings able to regain possession of the cashier's check. Certainly, the Millers did not *want* to give Greensprings the check back (otherwise there would be no lawsuit), but it was only given back with assurances that it would be paid with all possible haste. Under these facts as disclosed in the Complaint, a conversion cause of action is properly pled.

### D. Plaintiffs Have Sufficiently Pled A Fraud Cause of Action

Greensprings alleges that Plaintiffs cannot sustain their Fraud cause of action because they cannot prove damages.[16] Plaintiff's damages exist because the payment from Greensprings to the charities were to be made *on behalf of Anne and Molly Miller*. Recall that the money was always intended to take the place of the gift intended to be given by Elsie Turchen. Once Greensprings began making the $500,000.00 payments, it confirmed that Anne and Molly were entitled not only to the money, but also to direct Greensprings how to pay it. By making the fraudulent representations as alleged in the Complaint, Greensprings deprived Plaintiffs of the right not only of possession of the money, but also to direct how that money is to be paid.

---

[14] Steele v. Marsicano, 102 Cal. 666, 669 (1894). See also 5 Witkin Summary of California Law Torts § 699 (10th Ed. 2007).

[15] Haigler v. Donnelly, 18 Cal.2d 674, 681 (1941). See also 5 Witkin Summary of California Law Torts § 703 (10th Ed. 2007).

[16] Note that Greensprings does not raise any issues in connection with Plaintiffs' pleading of the other fraud elements.

Therefore, the damages incurred by Plaintiffs as a result of Greensprings' fraudulent conduct is the $500,000.00 itself.

### E. **Plaintiffs Have Sufficiently Pled A Declaratory Relief Cause of Action**

California Code of Civil Procedure section 1060 allows

> Any person interested under a written instrument, excluding a will or trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse.

to seek a judicial declaration of his or her rights in the contract. Federal law is similar. Under both California and Federal law, an the Complaint must contain an allegation of the existence of an "actual controversy."

Here, Greensprings alleges that there is no "actual controversy" as to who the $500,000.00 belongs to. As discussed several times above, the actual controversy arose when Greensprings paid the $500,000.00 three times on behalf of Anne and Molly, made the representation that the money would be paid with all due haste after the third check was returned, and no payment was ever made. Plaintiffs assert that once the money was paid, the agreement was confirmed by Greensprings and Plaintiffs had the right to decide what to do with the money because it belonged to them. Greensprings disagrees with this assertion. This is the actual controversy. The Complaint sufficiently pleads a Declaratory Relief action.

### F. **Imposition of a Constructive Trust is Appropriately Pled**

Plaintiffs' complaint seeks the imposition of a constructive trust as a result of Greensprings' actions in failing to pay the $500,000.00 as demanded by the Millers. One who wrongfully detains a thing[17] or gains a thing by "fraud, accident, mistake, undue influence, violation of a trust, or other wrongful act"[18] is an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

> A constructive trust is not a true trust but an equitable remedy available to a plaintiff seeking recovery of specific property in a number of widely differing situations. The cause of action is not

---

[17] Calif. Civil Code § 2223.

[18] Calif. Civil Code § 2224.

based on the establishment of a trust, but consists of the fraud, breach of fiduciary duty, or other act which entitles the plaintiff to some relief. That relief, in a proper case, may be to make the defendant a constructive trustee with a duty to transfer to the plaintiff.[19]

Plaintiffs have clearly pleaded facts which state a cause of action for the imposition of a constructive trust because they have alleged that Greensprings has wrongfully retained assets (specifically $500,000.00) of Anne and Molly Miller. These assets are Anne and Molly Miller's by virtue of Greensprings' payments to the chosen charities as directed by the Millers as a substitute for Elsie Turchen's intended gift to them. Greensprings' motion is not well taken on this point and should be denied.

## IV.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint states valid causes of action in all respects. Therefore, Greensprings' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied. Alternatively, if the court is inclined to grant any part of Greensprings' motion, Plaintiffs request that they be granted leave to amend their Complaint.

Dated: November 14, 2007                           TEMMERMAN & CILLEY, LLP

By: _____
JAMES P. CILLEY, ESQ.
MARK SCHMUCK, ESQ.
Attorneys for Plaintiffs

---

[19] Olson v. Toy (1996) 46 Cal.App.4th 818, 823.