1  CARLETON L. BRIGGS, SBN 117361
   Law Offices of Carleton L. Briggs
2  3510 Unocal Place, Suite 209
   Santa Rosa, CA 95403-0918
3  Telephone: (707) 523-2251
   Facsimile: (707) 523-2253
4  E-mail: clbriggs@sonic.net

5  Attorneys for Defendant
   GREENSPRINGS BAPTIST
6  CHRISTIAN FELLOWSHIP TRUST

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 BARBARA MILLER, as guardian of          Case No. C 07-04776 JL
   Molly Miller, an individual; and ANNE
11 MILLER, an individual,                  DEFENDANT GREENSPRINGS'
                                           REPLY TO PLAINTIFFS'
12              Plaintiffs,                OPPOSITION TO DEFENDANT'S
                                           MOTION TO DISMISS FOR FAILURE
13         vs.                             TO STATE A CLAIM UPON WHICH
                                           RELIEF CAN BE GRANTED
14 GREENSPRINGS BAPTIST                    [FRCP 12(b)(6)]
   CHRISTIAN FELLOWSHIP TRUST, et
15 al.,                                    Date: February 27, 2008
                Defendants.                Time: 9:30 a.m.
16                                         Courtroom: F, 15th Floor
                                           Magistrate Judge: Hon. James Larson
17                                         Complaint filed: August 17, 2007
                                           Trial date: None
18 _____/

19 **INTRODUCTION**

20      Plaintiffs' opposition to the motion to dismiss by defendant Greensprings Baptist

21 Christian Fellowship Trust ("Greensprings") contains numerous contradictory flip-flops

22 of positions, leaps of logic, and flights of fancy. They repeatedly assert that the alleged

23 promise to pay $500,000 to a charity of plaintiffs' choice was a substitute for the gift that

24 Elsie Turchen allegedly offered to make to Molly and Anne Miller. Opposition, 8:12-13;

25 10:19-20; 12:6-8. Yet, plaintiffs also argue that the validity of Elsie Turchen's

26 underlying gift is irrelevant. Opposition, 6:21-25; 7:17-19.

27

28 ─────────────────────────────────────────
                              1
   REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
                    UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs allege that defendant Dillon promised to pay $500,000 to a charity of plaintiffs' choice on behalf of Molly and Anne Miller. Opposition, 2:2-5. From this alleged promise, plaintiffs leap to the assertion that Anne and Molly Miller were "entitled" personally to the money (Opposition, 10:23-24) and that the $500,000 "belonged to them" (Opposition 11:15-17).

Plaintiffs also contend that,

> by paying the $500,000, and later demanding that the money be returned in light of the Anderson v. Dillon lawsuit, Greensprings was acknowledging that it was acting on behalf of the Turchen estate *without court appointment and at its own risk* [emphasis in original]. Greensprings was also acknowledging that the Plaintiffs' claim to the money had validity.

Opposition, 7:13-16.

This argument represents not only a jaw-dropping leap of logic, it flies in the face of reason to assert that Greensprings was acting on behalf of the Estate of Elsie Turchen in the Anderson v. Dillon litigation when Greensprings *was being sued by the Estate* in that action, a fact well known to the Millers and easily ascertainable from court records.

These are just a few examples of how plaintiffs' ever more fanciful contentions are no longer tethered even to the insufficient allegations of their complaint.

**ARGUMENT**

**1.   Plaintiffs have failed to state a cause of action for breach of contract.**

**A.   Plaintiffs have failed to establish that Greensprings promised to pay them $500,000.**

Plaintiffs allege that defendant Dillon promised to pay $500,000 to a charity of plaintiffs' choice on behalf of Molly and Anne Miller. Opposition, 2:2-5. From this alleged promise, they leap to the conclusion that Greensprings promised to pay *them* $500,000, and that "Greensprings [made] misrepresentations that Dillon was the personal representative of Elsie Turchen's estate and that the gift was to be paid out of the estate."

Opposition at 6:1-2.

But what the complaint actually alleges is that "Grace Parish Christian Church would pay the $500,000.00 as Elsie desired." Complaint at 5:20-21. Plaintiffs further allege that

> Defendant Dillon represented that Grace Parish Christian Church (which Plaintiffs are informed and believe never existed) would pay $500,000.00 (in place of a gift of the Malcolm [sic] Avenue property) to a charity or charities of Robert's and Barbara's choice on behalf of Anne and Molly."

Complaint at 3:23-26.

Thus, plaintiffs have made another mighty leap, now contending that the promise was for *Greensprings* to pay $500,000 to plaintiffs. But plaintiffs allege no connection between Grace Parish Christian Church and Greensprings, which they now know (and could easily have discovered before filing suit) is a separate legal entity.

Moreover, plaintiffs have failed to allege that Dillon represented or had any authority to speak for Greensprings. Plaintiffs have not alleged that Dillon was a trustee or director of Greensprings, nor can they. Plaintiffs have alleged that Greensprings is defendant Dillon's alter ego and that it is not a legitimate § 501(c)(3) charitable organization. But Greensprings has demonstrated that these contentions are false: the Internal Revenue Service notified Greensprings on September 20, 1994, that it was recognized as a tax exempt charitable organization under IRC § 501(c)(3). See Request for Judicial Notice filed in support of the instant motion. Thus, Greensprings is a separate legal entity. Any promises that defendant Dillon allegedly made have not been alleged by plaintiffs to have been made by one authorized to act on Greensprings' behalf, so they cannot be the basis of liability for Greensprings.

Moreover, if Dillon indeed represented to plaintiffs that the $500,000 payment would be made from the Estate of Elsie Turchen, as plaintiffs have alleged, and the $500,000 which Barbara Miller returned to Greensprings in fact was given to the Estate,

3
REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

as has been shown, plaintiffs should be looking to the Estate for the money, not to Greensprings.

**B.      Plaintiffs cannot establish the requisite elements of promissory estoppel.**

Plaintiffs argue that they have stated a cause of action for breach of contract based on a theory of promissory estoppel.  The required elements for promissory estoppel in California are a promise clear and unambiguous in its terms; reliance by the party to whom the promise is made, which is both reasonable and foreseeable; and injury to the party asserting the estoppel resulting from his reliance.  *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 890 (1976).  In *Laks*, the plaintiff hotel developers brought an action against a lending institution for damages resulting from the defendant's failure to make a loan as set out in a letter of "conditional commitment."  The court found that the letter was missing essential terms and was not sufficient to establish a clear and unambiguous promise, and that the plaintiffs could not reasonably have relied on such a conditional offer.  *Id.* at 893.

In this case, plaintiffs contend that they acted reasonably in relying on defendant Dillon's alleged promise to pay $500,000 from Estate funds to a charity of their choice on behalf of Anne and Molly Miller, in forbearing to make a claim against the Estate of Elsie Turchen for payment of the $500,000.  Plaintiffs argue that, because they thought they would be satisfied through this informal promise, "it would be a waste of time and money to prepare the papers in order to enforce the claim in court."  Opposition, 6:11-13.

But it was not reasonable for plaintiffs to believe that Dillon was the personal representative of Elsie Turchen's estate when they had received notice of the Anderson v. Dillon litigation, clearly indicating that the plaintiff in that action, Penny Anderson, (Molly's birth mother) was suing in *her* capacity as representative of the Estate.  Furthermore, it was not reasonable for plaintiffs to think that any personal representative

4
REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED

1   could unilaterally pay out $500,000 from an estate on his or her own initiative and
2   without court authorization.  Probate Code § 9832(b) requires court authorization for the
3   compromise or settlement of a matter that requires the estate to pay out any amount in
4   excess of $25,000.  Finally, it was unreasonable for plaintiffs not to protect their alleged
5   interest by making a claim in the probate proceeding or at least by intervening in the
6   Anderson v. Dillon litigation, where plaintiffs knew the rightful ownership of the returned
7   $500,000 was to be determined.

       In *US Ecology, Inc. v. State of California,* 129 Cal.App.4th 887 (2005), a developer selected to build a radioactive-waste facility sued the State on a promissory estoppel theory after the facility was not built because the State had failed to acquire the site from the federal government.  The court stated that "promissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract . . . ." *Id.* at 904.  Moreover, "[a] party allowed in equity to pursue a claim for promissory estoppel because it has no enforceable contract should not be placed in a position better than one with an enforceable contract."  Thus, the court held that a plaintiff pursuing a promissory estoppel claim must prove the other elements of a breach of contract claim, including that the defendant's breach caused its damages.  *Id.* at 908.

       As moving party defendant Greensprings has previously demonstrated, plaintiffs had no enforceable claim against Elsie Turchen's estate for the alleged promise to make a gift.  Any promise that defendant Dillon may have made to pay $500,000 to a charity of the Millers' choice on behalf of Anne and Molly Miller was not a promise to pay any money to *them*.  Therefore, there is no legal or factual basis for Anne's and Molly's claim that they have been damaged in the sum of $500,000.

       In this case, plaintiffs' theory has made some remarkable leaps: they have turned Elsie Turchen's question whether they would "accept" the Belmont house (which she

1  didn't actually own at the time) into a promise to make a gift thereof during Elsie's life
2  (which fails as a matter of law because the alleged gift was never completed), then into
3  some sort of testamentary promise by Elsie (which fails because it does not meet any of
4  the requirements of California probate law), then into a promise by defendant Dillon,
5  allegedly as personal representative of the Estate of Elsie Turchen, to pay $500,000 from
6  Grace Parish Christian Church (which plaintiffs allege never existed) to a charity of
7  plaintiffs' choice on behalf of Anne and Molly Miller, and from that into a claim that
8  plaintiffs *themselves* are "entitled" to $500,000 payable from the Estate of Elsie Turchen,
9  and finally into a claim that Greensprings owes them $500,000!

Add to this the plaintiffs' allegation that the promise to them has been performed by defendants three times, arguably extinguishing any obligation. Plaintiffs' theory creates an open-ended promise under which Greensprings is obligated to issue them checks payable to different entities as many times as plaintiffs wish, and as often as they change their minds concerning the intended charitable beneficiaries. Unsatisfied even with this theory, plaintiffs finally go on to claim that they *themselves* are entitled to the $500,000.

The "promise" plaintiffs allege here is not nearly clear and unambiguous enough to be enforceable under the doctrine of promissory estoppel. There is simply no legal or factual basis for their breach of contract claim under a promissory estoppel theory. Even if there were, plaintiffs do not ask the Court to enforce the alleged promise to make charitable contributions in their names. Instead, with no legal or factual basis at all, they demand the money for themselves.

**C.    Plaintiffs' forbearance to pursue a wholly unenforceable claim was not valid consideration to support a new oral contract.**

Plaintiffs contend that their forbearance from making any claim against the

1  Turchen Estate is sufficient consideration to support an oral contract to pay them
2  $500,000.  Forbearance to sue on a claim or compromise of a claim, either valid,
3  doubtful, or disputed (but not void) is good consideration. 1 Witkin, SUMMARY OF
4  CALIFORNIA LAW (10th ed. 2007) Contracts § 211 at 246-247.  But "[i]f a claim is wholly
5  invalid, neither forbearance to sue nor compromise thereof can be good consideration."
6  *Id.* § 220 at 253.

7  Plaintiffs contend that defendant Greensprings is in possession of $500,000 (which
8  actually was given to the Turchen Estate) that defendant Dillon allegedly promised to pay
9  to a charity of plaintiffs' choice, as a substitute for a gift of real property that Elsie
10 Turchen, great-grandmother of Molly Miller, had allegedly proposed to make to plaintiffs
11 Molly and Anne Miller during Elsie's lifetime.  Plaintiffs contend that a letter dated
12 November 23, 2000, from Elsie Turchen shows that it was her "clear" intent to give Anne
13 and Molly Miller the house located at 325 Malcolm [sic] Avenue, Belmont, California.
14 But this property already had been given by Elsie G. Turchen, as Trustee of the Penny
15 Trust, to the Greensprings Fellowship Trust by grant deed dated January 12, 1999.  See
16 Request for Judicial Notice served and filed herewith.

17 Defendant Greensprings previously has demonstrated that Elsie Turchen's original
18 alleged promise to make a gift to Anne and Molly Miller was wholly unenforceable.  In
19 light of the fact that Elsie Turchen already had deeded the Belmont property to
20 Greensprings well before she allegedly offered it to the Millers on November 23, 2000,
21 the purported gift also was wholly void.  Therefore, forbearance to bring the claim against
22 the estate could not provide valid consideration for another promise—e.g., a promise to
23 pay $500,000.  And, as argued above, plaintiffs do not allege that defendant Dillon made
24 any such a promise on  Greensprings' behalf, or indeed that anyone promised to pay
25 money to plaintiffs themselves.

1  **2.   Both the contract alleged by plaintiffs and the relief they request would jeopardize Greensprings' tax exempt status and would violate state and federal law.**

Plaintiffs demonstrate a shockingly cavalier attitude toward jeopardizing Greensprings' status as a § 501(c)(3) tax exempt organization and enforcement of an illegal contract, where they have failed even to allege the existence of an enforceable contract, let alone any breach or damages. Greensprings has demonstrated that both the contract alleged, to give $500,000 to charities in the names of two private individuals (one of whom is the great-granddaughter of Elsie Turchen, who donated the Belmont house and other properties to Greensprings), and the relief requested, paying $500,000 not to charities but to two private individuals, would violate state and federal law.

An illegal contract is void. Public policy against enforcement of illegal contracts is so strong that illegality can be raised even if not pleaded by the defendant. Indeed, the court can raise the matter on its own motion, even if neither party raises it. *Kallen v. Delug*, 157 Cal.App.3d 940, 948, 203 Cal.Rptr. 879, 883, fn. 2 (1984); *Santoro v. Carbone*, 22 Cal.App.3d 721, 732, 99 Cal.Rptr. 488, 496 (1972) (disapproved on other grounds in *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30, 216 Cal.Rptr. 130, 137 (1985)).

Here, when viewed in light of the status of Greensprings as a tax exempt organization and the fact that Elsie Turchen, Molly Miller's great-grandmother, contributed the Belmont house to the corpus of Greensprings, the complaint discloses on its face the bars to recovery. See, e.g., *Beck v. American Health Group Int'l, Inc.*, 211 Cal.App.3d 1555, 1563, 260 Cal.Rptr. 237, 242 (1989) (contract between hospital and psychiatrist for referral fees showed on its face violation of Bus. & Prof. Code § 650).

### 3. Plaintiffs' failure to establish that they had any right to the $500,000 is fatal to their claims for conversion and fraud.

Plaintiffs now claim that they are "entitled" to $500,000 (Plaintiffs' Opposition 10:21-22) and that Greensprings converted those funds. But the complaint's allegations fail to establish that there was ever any agreement by defendant Dillon, Bohn, Greensprings, or anyone else to pay $500,000 *to plaintiffs*. They have not established that they themselves have any ownership right to the $500,000, which, they do not dispute, is in the possession not of Greensprings but of the Estate of Elsie Turchen. Plaintiffs' total lack of standing is fatal to their cause of action for conversion.

Moreover, the fact that plaintiffs were never to have received the $500,000 under the circumstances they have alleged is fatal to their cause of action for fraud. Plaintiffs would not have received the money in any case, and they are not liable to any of the charities to which they may have considered (and then reconsidered) giving the money in the names of Anne and Molly Miller. Contrary to their claims, the facts they allege do not demonstrate that they have been damaged in the amount of $500,000, or indeed in any amount at all.

### CONCLUSION

Plaintiffs have advanced a variety of theories to support their claim that they are entitled to $500,000. But the facts as alleged show that they had no enforceable gift, and that even if the promises alleged in the complaint had been fully performed, plaintiffs would never have received any money at all. They simply are not "entitled" to the $500,000 in question under any theory. For these and the foregoing reasons, defendant Greensprings' motion to dismiss should be granted.

1 | Dated: December 7, 2007                    Respectfully submitted,

2 |                                            LAW OFFICES OF
                                               CARLETON L. BRIGGS
3 |

4 |
                                               /s/ Carleton L. Briggs
5 |                                            CARLETON L. BRIGGS
                                               Attorneys for Defendant
6 |                                            GREENSPRINGS BAPTIST
                                               CHRISTIAN FELLOWSHIP TRUST

10
REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED