James P. Cilley, Esq.  (SB#168118)
Mark A. Schmuck, Esq.  (SB#205164)
**TEMMERMAN & CILLEY, LLP**
2502 Stevens Creek Blvd.
San Jose, California 95128-1654
Tel: (408) 998-9500
Fax: (408) 998-9700

Attorney for Plaintiffs

CARLETON L. BRIGGS, ESQ. (SB# 117361)
Law Offices of Carleton L. Briggs
3510 Unocal Place, Suite 209
Santa Rosa, CA 95403-0918
Tel: (707) 523-2251
Fax: (707) 523-2253
E-mail: clbriggs@sonic.net

Attorneys for Defendant Greensprings

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MILLER, as guardian of Molly Miller, an individual; and ANNE MILLER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, a business entity of unknown form; CARLETON L. BRIGGS, an individual; CHRISTINE DILLON, an individual; DONALD BOHN, an individual; GRACE PARISH CHRISTIAN CHURCH, a business entity of unknown form; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: C 07-04776 JL <br><br> JOINT CASE MANAGEMENT CONFERENCE STATEMENT <br> [Civ. L.R. 16-9] <br><br> Date: December 26, 2007 <br> Time: 10:30 a.m. <br> Dept.: F, 15th Floor <br> Magistrate Judge: Hon. James Larson <br><br> Complaint Filed:  August 17, 2007 <br> Trial Date:  None |

    Plaintiffs Barbara Miller, guardian ad litem for Molly Miller, and Anne Miller ("Plaintiffs") and Defendant Greensprings Baptist Christian Fellowship Trust ("Greensprings") hereby submit this Joint Case Management Conference Statement pursuant to Civil Local Rule 16-9.

1. <u>Jurisdiction and Service</u>.  This Court's jurisdiction is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, this case having been removed to this Court by Greensprings on or about September 17, 2007 from the Superior Court of California, County of San Mateo.

Defendant Greensprings waived formal service of the Summons and Complaint on October 1, 2007.

Carleton L. Briggs was dismissed as a defendant in this lawsuit before it was removed to this Court.

Christine Dillon has not yet been served with the Summons and Complaint, though Plaintiffs continue to search for her whereabouts.  Plaintiffs anticipate seeking leave of this Court to serve her by publication if continued efforts to locate her are not successful.

Donald Bohn has not been served with a Summons and Complaint in this matter, though he has filed a Motion to Dismiss in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6) (see No. 4, below).

Defendant Grace Parish Christian Church has not been served, though Plaintiffs continue to search for its whereabouts, if such an organization even exists.  Plaintiffs do not believe it exists, but do not dismiss the possibility that it does.  Plaintiffs anticipate seeking leave of this Court to serve it by publication if continued efforts to locate it are not successful.

2. <u>Facts</u>.  Elsie Turchen, now deceased, was Molly Miller's natural great grandmother. Molly is Robert and Barbara Miller's adopted daughter.  Robert and Barbara also have a natural daughter, Anne.  Even though Molly was Elsie's blood relative, Plaintiffs allege Elsie always treated both Molly and Anne equally as her own great grandchildren.

Prior to her death, Elsie expressed in writing what Plaintiffs allege to be her intent to give a substantial gift to Anne and Molly.  Elsie's November 23, 2000 letter, written to Barbara and Robert Miller, stated, in pertinent part:

> "I would like to do something for your girls.  I do not shop; and I don't want to send things that have to be exchanged or are not useful, so I have failed to do anything on either Annie's or Molly's birthdays.
>
> Would you consider the gift of the house for them?  Enclosed is the picture. . . .

1     It will go vacant approximately 2/1/2001.

2     As you know, I am very ill. . . ."

3     Plaintiffs allege that Elsie's clear intent was to give Anne and Molly the house located at 325 Malcomb Avenue, Belmont, California. Elsie died on December 10, 2000.

5     Following Elsie's death, Defendant Christine Dillon represented to Barbara Miller that she was the personal representative of the Estate of Elsie Turchen. Plaintiffs believe that Defendant Dillon knew about Elsie's gift to Anne and Molly at the time Dillon made the representation to Barbara Miller because Dillon had a copy of Elsie's letter. Knowing about Elsie's gift to Anne and Molly, Plaintiffs allege that Defendant Dillon represented that Grace Parish Christian Church (which Plaintiffs are informed and believe never existed) would pay $500,000.00 (in place of the uncompleted gift of the Malcomb Avenue property during Elsie's lifetime) to a charity or charities of Robert's and Barbara's choice on behalf of Anne and Molly. Plaintiffs claim that they relied upon Dillon's representation that she was the personal representative of the estate of Elsie Turchen. In reliance upon Dillon's representation that she was personal representative and in reliance upon Dillon's representation that Grace Parish Christian Church would pay the $500,000.00 gift, Plaintiffs did not make any claim whatsoever against the estate of Elsie Turchen.

17    On August 11, 2002, Defendant Bohn issued two checks totaling $500,000 to "First Hawaiian Title Company." The checks were issued to a title company because the Millers' chosen charity, the Maui Preparatory Academy, was in the process of purchasing real property for use as a school and the $500,000 was paid towards that purchase. The two checks were drawn on an account owned by "Real Estate Trust," which Plaintiffs are informed and believe is a "dba" for defendant Greensprings Baptist Christian Fellowship Trust. Plaintiffs allege that the checks issued by Defendant Bohn, drawn on what Plaintiffs believe to be Defendant Greensprings' bank account, were intended to be performance on the agreement between defendant Dillon, on behalf of herself and Defendant Grace Parish Christian Church, with the Millers to fulfill what Plaintiffs allege to be Elsie Turchin's promise to make a gift to Anne and Molly as indicated in Elsie's November 23, 2000 letter. Plaintiffs believed that Defendants Bohn and Dillon were acting on behalf of the Estate of Elsie Turchen. Robert and Barbara Miller later learned that the checks were made out to First

Hawaiian Title Company, an entity that did not exist. On October 9, 2002, Mr. and Mrs. Miller sent a letter to defendants Bohn and Dillon and asked them to reissue the checks to the proper company name, "First Hawaii Title Corporation."

After not having heard from defendants Bohn or Dillon for some time, on January 10, 2005, Mr. and Mrs. Miller demanded that they re-issue a check to "Maui Preparatory Academy." The purpose of making the check to Maui Preparatory Academy was to make a gift to the Academy on behalf of Anne and Molly. Thereafter, on January 10, 2005, a cashier's check was delivered by defendant by Defendant Bohn drawn on what Plaintiffs believe to be Defendant Greensprings' bank account to Mr. and Mrs. Miller in the amount of $500,000 made out to Maui Preparatory Academy.

Following receipt of the $500,000 cashier's check, Mr. and Mrs. Miller requested on July 22, 2005 that defendants Bohn and Dillon re-issue the check into three separate checks totaling $500,000 to three new charities: Stanford University, Seabury Hall and West Maui Carden Academy. On August 10, 2005, Mrs. Miller had a telephone conversation with Defendant Bohn concerning the checks. During that conversation, defendant Bohn represented that the checks would be re-issued the following day.

At the same time, Mrs. Miller wrote a letter to Carleton L. Briggs, who Plaintiffs are informed and believe is a member of the board of defendant Greensprings. The purpose of this letter was to explain to Briggs the situation and why three checks needed to be issued instead of one. The following day, on August 11, 2005, Briggs wrote back to Mrs. Miller asking that the January 10, 2005 cashier's check be returned to Greensprings because of litigation against defendants Dillon, Bohn and Greensprings by Penny Anderson, who is Elsie Turchen's granddaughter and Molly Miller's birth mother.

Briggs' letter stated specifically that in order to have the checks re-issued, a motion in the <u>Anderson v. Dillon</u> litigation must be filed, which, according to Briggs, would be made "with all possible haste." Briggs also represented that the $500,000 being returned would be maintained in a separate, interest-bearing account earmarked for the charities named by Mr. and Mrs. Miller. Barbara Miller returned the cashier's check to Briggs on August 16, 2005, in reliance on these representations. Plaintiffs are informed and believe that defendant Greensprings never filed any

motion in the Anderson v. Dillon litigation to issue the checks. On multiple occasions, after inducing Barbara Miller to return the cashier's check, Plaintiffs allege that defendants have represented to the plaintiffs that they intended to reissue checks pursuant to what Plaintiffs allege is an agreement to do so.

3.  Legal Issues.

A.  Plaintiffs assert that the principal legal issues in dispute are (1) whether a contract existed between Plaintiffs and Defendants by estoppel (see, e.g., Laks v. Coast Federal Savings and Loan Ass'n, 60 Cal. App. 3d 885, 890); (2) whether Defendants have committed the tort of conversion (see, e.g., Steele v. Marsicano, 102 Cal. 666, 669 (1894), and Haigler v. Donnelly, 18 Cal.2d 674, 681 (1941)); (3) whether Defendants fraudulently induced Plaintiffs to return the checks that were issued to the charities requested by Plaintiffs; (4) whether Plaintiffs are entitled to declaratory relief (see Cal. Code of Civ. Proc. § 1060); and (5) whether Plaintiffs are entitled to the imposition of a constructive trust (see Olson v. Toy (1996) 46 Cal.App.4th 818, 823).

B.  Defendant Greensprings asserts that Plaintiffs' complaint against defendant Greensprings must be dismissed because the facts alleged affirmatively show that Plaintiffs are not entitled to relief, for the following five reasons:

(1) the purported cause of action for "breach of contract - promissory estoppel" fails to state a claim upon which relief can be granted because the promises alleged in the complaint cannot give rise to any damage claim for breach of contract by plaintiffs (FRCP 12(b)(6); *US Ecology, Inc. v. State of California*, 129 Cal.App.4th 887 (2005); *Burkle v. Burkle,* 141 Cal.App.4th 1029, 1036 fn. 5 (2006); Cal. Probate Code § 21700; *Dateline Builders, Inc. v. City of Santa Rosa,* 146 Cal.App.3d 520, 526 (1983); *Hartman Ranch Co. v. Associated Oil Co.,* 10 Cal.2d 232, 244 (1937); *In re Marriage of Smith & Maescher*, 21 Cal.App.4th 100, 106-107 (1993); 26 U.S.C. § 501(c)(3); 26 C.F.R. §§ 1.501(c)(3)-1(a)(1), 1.501(c)(3)-1(b)(1), 1.501(c)(3)-1(c)(1)-(2); *Church of Spiritual Technology v. United States,* 26 Cl.Ct. 713, 730 (1992); *Wendy L. Parker Rehabilitation Foundation, Inc. v. Commissioner,* 52 TCM 51 (1986); Cal. Probate Code §§ 16000, 16200; Oregon

Rev. Stats. § 130.650, 130.665; *Kashani v. Tsann Kuen China Enterprise Co.*, 118 Cal.App.4th 531, 541 (2004); *Uhlmann v. Kin Daw*, 97 Or. 681 (1920));

(2) the purported cause of action for conversion fails to state a claim upon which relief can be granted because the facts alleged show that plaintiffs never owned or had any right to possess the $500,000 alleged to have been converted (FRCP 12(b)(6;) 5 Witkin, CALIFORNIA PROCEDURE (4th ed. 1997) "Pleading," § 660, at 116; *Haigler v. Donnelly*, 18 Cal.2d 674, 681 (1941); *Vu v. California Commerce Club, Inc.,* 58 Cal.App.4th 229, 235 (1997));

(3) the purported cause of action for fraud fails to state a claim upon which relief can be granted because the facts alleged show that plaintiffs have not been damaged (FRCP 12(b)(6); 5 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Torts," § 772, at 1121; *Gonsalves v. Hodgson,* 38 Cal.2d 91, 101 (1951); *Service by Medallion, Inc. v. Clorox Co.,* 44 Cal.App.4th 1807, 1818 (1996));

(4) the purported cause of action for declaratory relief fails to state a claim upon which relief can be granted because the facts alleged show that the $500,000 does not and never did belong to plaintiffs (FRCP 12(b)(6); *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494 (1942); *State of California v. Oroville-Wyandotte Irrigation Dist.,* 409 F.2d 532, 535 (9th Cir. 1969)); and

(5) the purported cause of action for a constructive trust fails to state a claim upon which relief can be granted because imposition of a constructive trust is a remedy, not a claim, and the complaint fails to state any underlying claim that warrants such a remedy (FRCP 12(b)(6); *Davies v. Krasna*, 14 Cal.3d 502, 515 (1975); *Glue-Fold, Inc. v. Slautterback Corp.,* 82 Cal.App.4th 1018, 1023 fn. 3 (2000)).

Separately, Defendant Greensprings asserts that this case should be dismissed because the Estate of Elsie Turchen is a party the joinder of which is indispensable to the just adjudication of this action, and although Plaintiffs concede they can serve the Estate, it has not been made a party to this action (FRCP 12 (b)(7); FRCP 19(a) and (b); *HS Resources, Inc. v. Wingate* (5th Cir. 2003) 327 F.3d 432, 438; *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1067, 80 Cal.Rptr.2d 704 (1998); *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 990, 41 Cal.Rptr.2d 618 (1995); *Olson v. Toy*, 46 Cal.App.4th 818, 823, 54 Cal.Rptr.2d 29 (1996); *Lucas v. Associacao Protectora Uniao*

*MadeirenseDo Estado Da Cal.*, 61 Cal.App.2d 344, 351–352, 143 P.2d 53 (1943); *In re Republic of Philippines,* 309 F.3d 1143, 1153 (9th Cir. 2002)).

4.  Motions.  Defendant Greensprings has filed two motions that are set for hearing on February 27, 2008: a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) and a second Motion to Dismiss pursuant to F.R.C.P. 12(b)(7).  Defendant Don Bohn also has filed a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6), which is also scheduled for hearing on February 27, 2008.

5.  Amendment of Pleadings.  Plaintiffs do not at this time anticipate amending their claims pending the Court's rulings on the above-mentioned Motions.  Plaintiffs do anticipate adding parties to this matter as discovery warrants.

6.  Evidence Preservation.  Plaintiffs and Greensprings do not anticipate any issues concerning evidence preservation.

7.  Disclosures.  Disclosures pursuant to F.R.C.P. 26 are due on December 19, 2007 (the date that this Statement is due).  Plaintiffs and Greensprings plan on making full disclosures on that date.

8.  Discovery.  No party has conducted any formal discovery.  Plaintiffs and Greensprings have agreed to the limits on discovery as stated in the Federal Rules of Civil Procedure, without modification.  Discovery deadlines will be discussed at such time as the Court makes is rulings on the Motions to Dismiss that are currently pending, to the extent that such discussion is still necessary.

9.  Class Actions.  This is not a class action lawsuit.

10.  Related Cases.  There are no related cases.

11. <u>Relief</u>.  Plaintiffs seek $500,000.00 in damages, a declaration that the $500,000.00 in question belongs to Plaintiffs, the imposition of a constructive trust over the $500,000.00, exemplary and punitive damages, plus interest and costs.

Defendant Greensprings seeks dismissal and its fees and costs.

12. <u>Settlement and ADR</u>.  Plaintiffs and Greensprings have agreed to hire a private mediator to assist in the settlement of this matter.  Plaintiffs and Greensprings have agreed to exchange the names of three proposed mediators by December 31, 2007 and, from those names, agree to an appropriate mediator.  If the parties cannot agree to a mediator, then the parties will ask that the Court select one.

13. <u>Consent to Magistrate Judge for All Purposes</u>.  Plaintiffs and Greensprings have consented to have a magistrate judge conduct all further proceedings in this matter, including trial and entry of judgment.

14. <u>Other References</u>.  Plaintiffs and Greensprings do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>.  Discussions concerning the narrowing of issues and factual stipulations will occur after the Court's ruling on the pending Motions to Dismiss and after discovery has been conducted.

16. <u>Expedited Schedule</u>.  The parties do not believe that this is the type of case that can be handled on an expedited basis.

17. <u>Scheduling</u>.  Discovery deadlines, motion deadlines and trial setting dates will be discussed after the Court has ruled on the pending Motions to Dismiss.

18.     <u>Trial</u>.  No party has demanded a trial by jury.

19.     <u>Disclosure of Non-party Interested Entities or Persons</u>.  Both Plaintiffs and Greensprings have filed Certifications of Interested Persons pursuant to Civil L.R. 3-16.  Neither disclosed any person or entity having any interest that would be substantially affected by this proceeding.

Date: December 19, 2007                           TEMMERMAN & CILLEY, LLP


                                                  By: _____
                                                  MARK SCHMUCK, ESQ.
                                                  Attorneys for Plaintiffs


Date: December 19, 2007                           /s/ Carleton L. Briggs
                                                  CARLETON L. BRIGGS, ESQ.
                                                  Attorney for Defendant Greensprings
                                                  Baptist Christian Fellowship Trust