| | |
|---|---|
| 1 | James P. Cilley, Esq.  (SB#168118) |
|   | Mark A. Schmuck, Esq.  (SB#205164) |
| 2 | **TEMMERMAN & CILLEY, LLP** |
|   | 2502 Stevens Creek Blvd. |
| 3 | San Jose, California 95128-1654 |
|   | Tel: (408) 998-9500 |
| 4 | Fax: (408) 998-9700 |
| 5 | Attorney for Plaintiffs |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

―――――

| | |
|---|---|
| BARBARA MILLER, as guardian of Molly Miller, an individual; and ANNE MILLER, an individual, | Case No.: C 07-04776 JL |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO DEFENDANT DONALD BOHN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED |
| v. | |
| GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, a business entity of unknown form; CARLETON L. BRIGGS, an individual; CHRISTINE DILLON, an individual; DONALD BOHN, an individual; GRACE PARISH CHRISTIAN CHURCH, a business entity of unknown form; and DOES 1 through 50, inclusive, | [F.R.C.P. 12(b)(6)] |
|  | Date: February 27, 2008 |
|  | Time: 9:30 a.m. |
|  | Courtroom: F |
|  | Complaint Filed: August 17, 2007 |
|  | Trial Date: None |
| Defendants. | |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................. 1

II.  STATEMENT OF FACTS ........................................................ 1

III. LEGAL DISCUSSION ............................................................ 8

   A.   Standards Governing 12(b)(6) Motions ................................. 8

   B.   Plaintiffs Have Alleged Bohn's Liability ................................ 9

   C.   Plaintiffs Have Established a Breach of Contract Claim ............... 10

   D.   Plaintiffs Can Recover Damages for Conversion ....................... 12

   E.   Plaintiffs Can Recover Damages for Fraud ............................. 13

   F.   Plaintiffs Have Established Entitlement to Declaratory Relief .......... 14

   G.   Imposition of a Constructive Trust is Appropriately Pled .............. 14

IV.  CONCLUSION ................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). .......................... 9

Anderson v. Dillon ................................................................. 4, 8

Anderson v. Greensprings ........................................................... 4

Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997) ................... 8

Haigler v. Donnelly, 18 Cal.2d 674, 681 (1941) ...................................... 13

Laks v. Coast Federal Savings and Loan Ass'n, 60 Cal. App. 3d 885, 890. ................ 10

Neitzke v. Williams, 490 U.S. 319, 328-329 (1989) .................................... 8

Olson v. Toy (1996) 46 Cal.App.4th 818, 823 ........................................ 15

Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998) ................................... 8

Parks School of Business, Inc. V. Symington, 51 F.3d 1480 (9th Cir. 1995) ................ 8

Steele v. Marsicano, 102 Cal. 666, 669 (1894) ....................................... 12

Tomerlin v. The Canadian Indemnity Company, 61 Cal.2d 638, 649 (1964) .............. 11

United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981) ....................... 8

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ...................................... 8, 9, 11

Federal Rule of Civil Procedure 15(a) ............................................... 9

**STATE STATUTES**

California Civil Code § 1667 ....................................................... 8

California Civil Code § 2317. ...................................................... 9

California Civil Code § 2318. ...................................................... 9

California Civil Code § 2223. ..................................................... 14

California Civil Code § 2224 ..................................................... 14

California Code of Civil Procedure Section 1060 .................................... 14

**TREATISES**

1 Witkin Summary of California Law § 244 (10th Ed. 2007) .......................... 10

2 Schwarzer, et al. California Practice Guide: Federal Civil Procedure Before Trial (rev. 2007) ¶ 9:210 ............................................................. 8

5 Witkin Summary of California Law Torts § 703 (10th Ed. 2007) ...................... 13

Restatement (Second) of Contracts § 90(1) ........................................... 10

Witkin Summary of California Law Contracts § 211 (10th Ed. 2007) .................. 12

# I.

# INTRODUCTION

Defendant Donald Bohn brings the instant Motion to Dismiss alleging that there is no set of facts that can sustain the Plaintiffs' Complaint. However, as discussed below, Plaintiffs have, in fact, sufficiently pled each and every cause of action alleged against all of the defendants, including defendant Bohn, because they were all involved in the payment of $500,000.00 as demanded by the Plaintiffs. In addition, there is ample evidence to demonstrate that the actions of all of the defendants were in furtherance of a fraudulent scheme to prevent scrutiny into their activities in connection with the Estate of Elsie Turchen and to collect vast sums of money and property for themselves. Therefore, the Court should deny Bohn's motion.

# II.

# STATEMENT OF FACTS

Elsie Turchen, now deceased, was Molly Miller's natural great grandmother. Molly is Robert and Barbara Miller's adopted daughter. Robert and Barbara also have a natural daughter, Anne. Even though Molly was Elsie's blood relative, Elsie always treated both Molly and Anne equally as her own great grandchildren.[1]

Prior to her death, Elsie expressed in writing her intent to give a substantial gift to Anne and Molly. Elsie's November 23, 2000 letter, written to Barbara and Robert Miller, stated, in pertinent part:

> "I would like to do something for your girls. I do not shop; and I don't want to send things that have to be exchanged or are not useful, so I have failed to do anything on either Annie's or Molly's birthdays.
>
> Would you consider the gift of the house for them? Enclosed is the picture. . . .
>
> It will go vacant approximately 2/1/2001.

---

[1] Complaint ¶ 10.

As you know, I am very ill. . . ."[2]

Elsie's clear intent was to give Anne and Molly the house located at 325 Malcolm Avenue, Belmont, California. Elsie died on December 10, 2000.[3]

Following Elsie's death, Defendant Christine Dillon represented to Barbara Miller that she was the personal representative of the Estate of Elsie Turchen. Defendant Dillon knew about Elsie's gift to Anne and Molly at the time Dillon made the representation to Barbara Miller because Dillon had a copy of Elsie's letter. Knowing about Elsie's gift to Anne and Molly, Defendant Dillon represented that Grace Parish Christian Church (which Plaintiffs are informed and believe never existed) would pay $500,000.00 (in place of a gift of the Malcolm Avenue property) to a charity or charities of Robert's and Barbara's choice on behalf of Anne and Molly. Plaintiffs relied upon Dillon's representation that she was the personal representative of the estate of Elsie Turchen. In reliance upon Dillon's representation that she was personal representative and in reliance upon Dillon's representation that Grace Parish Christian Church would pay the $500,000.00 gift, Plaintiffs did not make any claim whatsoever against the estate of Elsie Turchen because the gift was going to be satisfied.[4]

On August 11, 2002, the defendant Bohn issued two checks totaling $500,000–"First Hawaiian Title Company." The checks were issued to a title company because the Millers' chosen charity, the Maui Preparatory Academy, was in the process of purchasing real property for use as a school and the $500,000 was paid towards that purchase. The two checks were drawn on an account owned by "Real Estate Trust," which Plaintiffs are informed and believe is a "dba" for defendant Greensprings Baptist Christian Fellowship Trust. The checks were both signed by defendant Don Bohn. These checks were intended to be performance on the agreement between defendant Dillon, on behalf of herself and the other defendant, to the Millers to fulfill Elsie Turchin's promise to make a gift to Anne and Molly as indicated in Elsie's November 23, 2000 letter. Robert and Barbara Miller later learned that the checks were

---

[2] Complaint ¶ 11.

[3] Id.

[4] Complaint ¶ 12.

made out to First Hawaiian Title Company, an entity that did not exist. On October 9, 2002, Mr. and Mrs. Miller sent a letter to defendants Bohn and Dillon and asked them to reissue the checks to the proper company name, "First Hawaii Title Corporation."[5]

After not having heard from defendants Bohn or Dillon for some time, on January 10, 2005, Mr. and Mrs. Miller demanded that they re-issue a check to "Maui Preparatory Academy." The purpose of making the check to Maui Preparatory Academy was to make a gift to the Academy on behalf of Anne and Molly. <u>Thereafter, on January 10, 2005, a cashier's check was delivered by defendant Greensprings to Mr. And Mrs. Miller in the amount of $500,000 made out to Maui Preparatory Academy</u>.[6] It is clear from their actions, and from the facts alleged in the pleadings, that defendants Dillon, Bohn and Greensprings were all acting on and behalf one another in representations to the Millers and in inducing their inaction regarding either discovery of the true representatives of the decedent's estate or pursing their claims to the estate.

Following receipt of the $500,000 cashier's check, Mr. and Mrs. Miller requested on July 22, 2005 that defendants Bohn and Dillon re-issue the check into three separate checks totaling $500,000 to three new charities: Stanford University, Seabury Hall and West Maui Carden Academy. On August 10, 2005, Mrs. Miller had a telephone conversation with Defendant Bohn concerning the checks. During that conversation, defendant Bohn represented that the checks would be re-issued the following day.[7]

At the same time, Mrs. Miller wrote a letter to Carleton L. Briggs, who Plaintiffs are informed and believe is a member of the board of defendant Greensprings. The purpose of this letter was to explain to Briggs the situation and why three checks needed to be issued instead of one. The following day, on August 11, 2005, Briggs wrote back to Mrs. Miller asking that the January 10, 2005 cashier's check be returned to Greensprings because of litigation against defendants Greensprings, Bohn and Dillon by Penny Anderson, who is Elsie Turchen's

---

[5]Complaint ¶ 13.

[6]Complaint ¶ 14.

[7]Complaint ¶ 15.

granddaughter and Molly Miller's birth mother.[8]

The letter from Briggs was the first indication that the Millers received that Dillon's, Bohn's and Greensprings' actions in representing that they were acting as personal representative of and on behalf of the decedent's estate, and thereby inducing the Miller's inaction, was false and fraudulent. Briggs' letter stated specifically that in order to have the checks re-issued, a motion in the <u>Anderson v. Greensprings</u> litigation must be filed, which, according to Briggs, would be made "with all possible haste." Briggs also represented that the funds to cover the $500,000 would be maintained in a separate, interest-bearing account earmarked for the charities named by Mr. and Mrs. Miller. Barbara Miller returned the cashier's check to Briggs on August 16, 2005, in reliance on these representations. Plaintiffs are informed and believe that defendant Greensprings never filed any motion in the <u>Anderson v. Greensprings</u> litigation to issue the checks, nor did Greensprings ever deposit the funds in any separate interest-bearing account earmarked for the charities. On multiple occasions, after inducing Barbara Miller to return the cashier's check, defendants have represented to the plaintiffs that they intended to reissue checks pursuant to the agreement set forth herein.[9]

Since the filing of the Complaint, Plaintiffs have uncovered additional facts that tend to show that the defendants were using the $500,000.00 payment to discourage further scrutiny into their financial dealings and to show that obtain the $500,000.00 back from the Millers for themselves without any intent to pay as promised. If the Court is inclined to grant this Motion, or Greensprings' 12(b)(6) motion (which is simultaneously pending), then Plaintiffs request that the Court grant with leave to amend their Complaint based on the following facts.[10]

First, all of the named defendants in this case were sued on March 18, 2005 in the San Mateo County Superior Court by Penny Anderson, who was Elsie Turchen's granddaughter, for, among other things, fraud, conversion, unjust enrichment, financial elder abuse and unfair business practices (the "<u>Anderson v. Dillon</u>" matter). The Complaint in that matter alleged that

---

[8] Complaint ¶ 16.

[9] <u>Id.</u>

[10] <u>See</u> section I.A., below.

the defendants defrauded Elsie Turchen out of $20 Million in personal and real property, ostensibly for charitable purposes. Plaintiff alleged that the defendants fraudulently induced Elsie Turchen to transfer all of her assets to Greensprings, many of which she did not own. In furtherance of the fraudulent scheme, the defendants caused various deeds to be executed and notarized. Those deeds, which were notarized by defendant Bohn, purported to be executed by a "Beth Anderson," which was a false alias for defendant Christine Dillon. Furthermore, the Complaint alleged that the defendants used the property not for charitable purposes, but for personal gain in that they continued to collect rents and profits from the property without using those profits for charitable purposes. The Complaint also alleged that defendant Christine Dillon represented to the granddaughters of Elsie Turchen that she was the personal representative for Elsie's estate and that she was authorized to pay money on behalf of the estate, which were the very same representation that were made by Dillon to Plaintiffs herein. Plaintiffs are aware that this case was settled, but that the terms of that settlement are confidential.

    Second, Plaintiffs are prepared to amend based on facts that are set forth in more detail in the Declaration of Barbara Miller, which is on file herewith. In particular, Plaintiffs, if so required, will amend their complaint to include the details of a telephone conversation between Barbara Miller and Carleton Briggs concerning the return of the $500,000.00 certified check to Greensprings. During that conversation, Mr. Briggs represented to Ms. Miller that, by not returning the $500,000.00 cashier's check to Greensprings, Don Bohn could get into a lot of trouble. He also represented that Mr. Bohn and Christine Dillon were acting "informally" with regard to the payment of the $500,000.00 to the requested charities. This "informality" with regard to the payment of moneys from Greensprings tends to reinforce the connection between the defendants' activities and Greensprings' knowledge of both Bohn's and Dillon's activities.

    In addition, the following exchange took place concerning the representation that the estate of Elsie Turchen had no claim to the $500,000.00 in question:

> Barbara: So now, does this have to go before the board of directors too?
>
> Briggs: No it doesn't. Because at this point I'll have the board

|   |          |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                 |
|---|----------|---|
| 1 |          | of directors approve it in three seconds flat. That's easy. |
| 2 | Barbara: | Okay. |
| 3 | Briggs:  | The problem is that right now the court is saying don't move or do anything with any funds at all without letting me know. So that's why we have to go in front of the court and say in a separate motion, and just say look, your honor, this has nothing to do with this case. But, this lady very honestly and, at our request, has returned the check. Here's the cashiers check. We put it back, we've given it to the bank. The bank is holding it. The bank is ready to issue, you know, the three checks that we want issued. But, out of an abundance of caution because your honor was very, you know, particular about wanting to know what's going on, not wanting us to do stuff without telling the court. Here's what we're doing. If there's any problems with it, if the court has any questions, let us know. |
|   | Barbara: | See my big fear is that you're gonna come back and say that it's fallen under unapproved expenditure. |
|   | Briggs:  | Yeah, but see the board can always ratify an expenditure particularly before it's been, you know, where it's been issued, but if it hasn't been given yet. See the board, a board of directors has the legal power to ratify that action. In other words, approve it after it was taken. |
|   | Barbara: | Okay. |
|   | Briggs:  | You see, see the board isn't a problem. The board is on your side. The problem is the court. The court will get angry if the court finds out that we've reissued the checks without telling them anything. |
|   | Barbara: | Right. |
|   | Briggs:  | That would be the problem. And that's what Don was about to do and Christine said, wait a second, you better check with Carl, and he did and that's when I said no, no, no, don't do that. You'll just get the judge mad. |
|   | Barbara: | Right. |
|   | Briggs:  | See, I mean, there's no reason to get him mad. I mean we're not doing anything improper, you just have to explain it to him. |
|   | Barbara: | Well that was my big fear on this that that would come back and they'd say it was an unapproved expenditure. |
|   | Briggs:  | By the time the court looks at it, if it have any |

|   |   |   |
|---|---|---|
| | | questions, I'll have a resolution from the board ratifying it. |
| | Barbara: | Okay. |
| | Briggs: | So, that's not a problem. As far as the non-profit corporation goes, it'll be entirely proper. The only question will be, for the court, does this have something to do with the funds that Penny and Greensprings have a dispute over? And it clearly does not. |

An amended complaint will also specifically allege that repeated representations were made that money would be paid as directed by Barbara Miller:

| | | |
|---|---|---|
| | Briggs: | Any event, that would be my argument [that the funds were not subject to a claim by the estate of Elsie Turchen]. So, worse case scenario, the funds will be sitting for a while in that account earning interest and then would be released. Okay? |
| | ... | |
| | Barbara: | Okay, and I'm sorry that I didn't get it to you before I left, but as I said, my big fear was that this thing was going to come back as unapproved expenditure. |
| | Briggs: | Believe me if, in the worse case scenario if that happened, I still say we'd be able to ultimately settle the case with Penny and your funds would still be sitting there safely in an interest bearing account. |
| | Barbara: | Okay. |
| | Briggs: | Because she has no claim on it. |
| | Barbara: | Right. |
| | Briggs: | You see? Even if she won the case, she still wouldn't get those funds. |
| | Barbara: | Okay. |
| | Briggs: | Which is impossible. She can't possibly win. You know, I'm just saying, I just don't see any possibility that anything is going to happen to those fund, and they'll just be sitting there earning interest. |
| | Barbara: | Good. Okay Carl. Thank you very much. |
| | Briggs: | Thanks for your help. |
| | Barbara: | Okay. |
| | Briggs: | Bye. |

Barbara:        Bye.

These representations by Carleton Briggs mirror the representations alleged to have been made by the defendants in the Anderson v. Dillon matter, described above. As described in the Declaration of Barbara Miller, Plaintiffs have more than sufficient facts to cure any factual defects that the Court may find.

## III.
## LEGAL DISCUSSION

### A. Standards Governing 12(b)(6) Motions

Federal Rule of Civil Procedure 12(b)(6) authorizes a Court to dismiss a complaint where that complaint fails to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion, the Court must construe the Complaint in the light most favorable to the Plaintiffs.[11] Furthermore, the Court must accept as true all material allegations of the Complaint, as well as reasonable inferences to be drawn from them,[12] no matter how unlikely.[13]

In addition, many courts (including the Ninth Circuit) view Rule 12(b)(6) motions with disfavor because of the limited role that pleadings play in federal practice and the liberal policy concerning amendment of pleadings. In fact, the Ninth Circuit has stated that Rule 12(b)(6) motions are *"rarely granted."*[14] Also, dismissal pursuant to Rule 12(b)(6) is only proper is "extraordinary" cases.[15]

Bohn asserts in his motion that the Plaintiffs' claims against him must be dismissed because the facts alleged do not show that Plaintiffs are entitled to relief. This is not the case. The pleadings disclose sustainable claims against Bohn (as well as the other defendants) that deserve examination at trial.

---

[11] Parks School of Business, Inc. V. Symington, 51 F.3d 1480 (9th Cir. 1995).

[12] Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998)

[13] Neitzke v. Williams, 490 U.S. 319, 328-329 (1989).

[14] Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997) (emphasis added); see also 2 Schwarzer, et al. California Practice Guide: Federal Civil Procedure Before Trial (rev. 2007) ¶ 9:210.

[15] United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

Finally, Federal Rule of Civil Procedure 15(a) states, with respect to amended pleadings requiring leave of court, that such leave "shall be freely given when justice so requires." The practical effect of such a liberal amendment policy is that, if the court is inclined to grant a motion under Rule 12(b)(6), leave to amend is almost always granted.[16] Therefore, if this Court is inclined to grant any part of the instant Motion, Plaintiffs request that leave to amend their Complaint be granted to that same extent.

### B. Plaintiffs Have Alleged Bohn's Liability.

Defendant Bohn alleges that the Plaintiffs have not alleged that he committed any wrongful act to support an award of liability in Plaintiffs' favor. In particular, Bohn states that

> Plaintiffs do not allege that defendant Bohn had any relationship with defendants, Christine Dillon, Greensprings Baptist Christian Fellowship Trust, or any other defendant; or to make any promises on behalf of another defendant; or to bind any other defendant. Nor have they alleged that any other defendant had any authority to act on behalf of defendant Bohn. They allege no agency relationship, no employment relationship, no trustee or director relationship between defendant Bohn and any other defendant.
>
> They do not allege that Bohn had any ostensible authority to act on behalf of Greensprings or any other defendant, or that any other defendant had any ostensible authority to make representations on Bohn's behalf. See e.g., Civil Code §§ 2317, 2318. Plaintiffs do not allege that the defendants were in any way acting in concert.[17]

This argument misstates the content of the Complaint. The Complaint at Paragraph 9 states

> Plaintiffs are informed and believe that all defendants, including those defendants sued as fictitious defendants, were at all times relevant herein, agents, servants, employees, joint venturers, and/or representatives of one another and acting within the course and scope of that agency, employment, and/or joint venture, with the full knowledge, consent, permission, authorization and ratification, either express or implied, of each of the other defendants in performing the acts alleged in this Complaint.

The allegation that each defendant was the agent of the other is sufficient to impute the actions of one defendant onto the others. Therefore, Bohn's liability is established to the very same extent as liability is established against all other defendants.

---

[16] Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990).

[17] Memorandum of Points and Authorities in Support of 12(b)(6) Motion, p.6:2-15.

C.   **Plaintiffs Have Established a Breach of Contract Claim.**

Plaintiffs' First Cause of Action for Breach of Contract is based on a theory of promissory estoppel. The Restatement Second of Contracts states the doctrine of promissory estoppel as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.[18]

California cases have stated that the required elements to sustain a promissory estoppel cause of action are

> (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.[19]

In this case, Plaintiffs' Complaint adequately states a claim for promissory estoppel, despite Bohn's argument to the contrary.

First, a clear and unambiguous promise was not only made by the Defendants, but it was *actually performed*. It was Defendant Bohn that initially paid the $500,000.00 in question. Those payments were all in connection with defendants Dillon's, Bohn's and Greensprings' misrepresentations that Dillon was the personal representative of Elsie Turchen's estate and that the gift was to be paid out of the estate. The terms of the contract were that Greensprings would pay $500,000.00 and that the Millers would forbear pursuing any claims that they may have to the Estate of Elsie Turchen, based upon the defendants' representations and performance.

Plaintiffs relied on the defendants' representation and their reliance was foreseeable. Once the representation was made by defendant Dillon and Greensprings that the payment would be made, Plaintiffs had no reason to pursue the matter any further with the estate. In other words, they did not file a Creditor's Claim or other petition in the probate of Elsie Turchen's estate because Plaintiffs believed that they were going to be fully satisfied by having

---

[18] Restatement (Second) of Contracts § 90(1). See also 1 Witkin Summary of California Law § 244 (10th Ed. 2007).

[19] Laks v. Coast Federal Savings and Loan Ass'n, 60 Cal. App. 3d 885, 890.

1  Greensprings pay the $500,000.00 as instructed. This is absolutely reasonable because, if one
2  believes that his claim is going to be paid in full without any court intervention, it would be a
3  waste of time and money to prepare the papers in order to enforce that claim in court.
4       Plaintiffs were in fact damaged from defendants' failure to fulfill its promise (which was
5  also a promise made by Bohn) to pay the $500,000.00 according to Plaintiffs' instructions. As
6  discussed above, the intent of the payments was to make gifts on behalf of Anne and Molly
7  Miller. Therefore, they are the ones entitled to the damages. In terms of damages "The cases
8  hold that the appropriate remedy lies in the enforcement of the defendant's promise."[20]
9  Therefore, the proper measure of damages is the $500,000.00 that was to have been paid to the
10 chosen charities on behalf of Anne and Molly Miller.
11      In its moving papers, Bohn attempts to cleverly sidestep the elements that give rise to a
12 promissory estoppel cause of action by arguing that the underlying gift from Elsie Turchen was
13 not a valid gift and, therefore, the promise was not enforceable. Whether the underlying gift by
14 Elsie Turchen was valid or not is irrelevant to a determination of whether Plaintiffs' promissory
15 estoppel cause of action can withstand a Rule 12(b)(6) motion.
16      More importantly is that the Complaint discloses all of the elements of a promissory
17 estoppel claim, i.e., a promise, reliance, reasonableness and damages. As discussed above,
18 Bohn's actions in making the $500,000.00 payments led directly to Plaintiffs' forbearance from
19 making any claim in the Turchen estate. While the validity of the underlying gift may have
20 been susceptible to dispute in connection with a claim validly brought against the Turchen
21 Estate, that matter is now irrelevant. The claim was not asserted against the Estate as a direct
22 and proximate result of the other defendants' actions and representations. The contract upon
23 which the Plaintiffs now seek to recover is simple. Defendants agreed to pay $500,000.00. The
24 Millers agreed to forbear from making any claims in the Turchen estate. As a result of that
25 forbearance, Plaintiffs are now barred by the applicable statutes of limitations from ever
26 bringing a claim of any sort against the Turchen estate and allowing the court with the proper
27 jurisdiction, the San Mateo County, California, Superior Court, from making that determination.
28

---

[20] Tomerlin v. The Canadian Indemnity Company, 61 Cal.2d 638, 649 (1964).

As a result of Defendants' actions, Plaintiffs will now never have that issue finally determined.

Furthermore, by paying the $500,000.00, and later demanding that the money be returned in light of the Anderson v. Dillon lawsuit, defendants were acknowledging that they was acting on behalf of the Turchen estate *without court appointment and at its own risk*. Defendants were also acknowledging that the Plaintiffs' claim to the money had validity. Otherwise, *why did the defendants pay the money as directed by Plaintiffs?* The fact that the money was paid in the first place completely emphasizes the irrelevance of the issue concerning the validity of the underlying gift from Elsie Turchen to Anne and Molly Miller.

Lastly, under this set of facts, the governing California authority would also authorize the inclusion of a breach of oral contract claim. As stated above, the contract alleged by the Plaintiffs is simple: the defendants agreed to pay $500,000.00 and the Plaintiffs agreed to forbear from making any claims against the Turchen Estate. The Plaintiffs' forbearance from making a claim is sufficient consideration to support an oral contract. As stated by Witkin:

> (1) *In General*. Consideration may be forbearance to sue on a claim, extension of time, or any other giving up of a legal right, in consideration of some promise. [Citations].
>
> The slightest forbearance will suffice: "Even though the forbearance is for one day only, there is sufficient consideration as the law does not weigh the quantum." [Citations].
>
> (2) *Compromise of Claim*. The compromise of a claim, either valid, doubtful, or disputed (but not void) is good consideration, the claimant giving up his or her asserted right to recover the whole amount as consideration for a promise to pay a lesser amount. [Citations].[21]

Therefore, even under a more traditional contract theory, the fact that Plaintiffs gave up their right to make a claim against the Turchen Estate is sufficient consideration to support the existence of a contract and to support a breach of contract claim.

**D.   Plaintiffs Can Recover Damages for Conversion.**

Conversion is the wrongful exercise of dominion over personal property of another.[22]

---

[21] 1 Witkin Summary of California Law Contracts § 211 (10th Ed. 2007) (italics in original).

[22] Steele v. Marsicano, 102 Cal. 666, 669 (1894). See also 5 Witkin Summary of California Law Torts § 699 (10th Ed. 2007).

Historically, conversion was limited to the wrongful taking of tangible personal property. However, money can be the subject of a conversion action where a specific, identifiable sum is involved.[23]

In this case, a claim is stated against the defendants for conversion. As discussed above, the agreement was for the defendants to pay $500,000.00 to a charity or charities on behalf of Anne and Molly Miller. Once Don Bohn delivered a $500,000.00 cashier's check to Barbara Miller in performance of that agreement, Greensprings lost the legal ability to take that check back. *Greensprings could not even stop payment on that check.* It was only by falsely representing to Barbara Miller that a motion would be made to the San Mateo County Superior Court for payment of that money back to the Millers was Greensprings able to regain possession of the cashier's check. Certainly, the Millers did not *want* to give the check back (otherwise there would be no lawsuit), but it was only given back with assurances that it would be paid with all possible haste. Under these facts as disclosed in the Complaint, a conversion cause of action is properly pled.

### E. Plaintiffs Can Recover Damages for Fraud.

Bohn alleges that Plaintiffs cannot sustain their Fraud cause of action because they cannot prove damages.[24] Plaintiff's damages exist because the payment by Bohn to the charities were to be made *on behalf of Anne and Molly Miller*. Recall that the money was always intended to take the place of the gift intended to be given by Elsie Turchen. The $500,000.00 payments that were made confirmed that Anne and Molly were entitled not only to the money, but also to direct Greensprings and Bohn how to pay it. By making the fraudulent representations as alleged in the Complaint, Greensprings and Bohn deprived Plaintiffs of the right not only of possession of the money, but also to direct how that money is to be paid. Therefore, the damages incurred by Plaintiffs as a result of the defendants' fraudulent conduct is the $500,000.00 itself.

---

[23] Haigler v. Donnelly, 18 Cal.2d 674, 681 (1941). See also 5 Witkin Summary of California Law Torts § 703 (10th Ed. 2007).

[24] Note that Greensprings does not raise any issues in connection with Plaintiffs' pleading of the other fraud elements.

F.  **Plaintiffs Have Established Entitlement to Declaratory Relief.**

California Code of Civil Procedure section 1060 allows

> Any person interested under a written instrument, excluding a will or trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse.

to seek a judicial declaration of his or her rights in the contract. Federal law is similar. Under both California and Federal law, an the Complaint must contain an allegation of the existence of an "actual controversy."

Here, Bohn alleges that there is no "actual controversy" as to who the $500,000.00 belongs to. As discussed several times above, the actual controversy arose when the $500,000.00 was paid three times on behalf of Anne and Molly, the third check was returned, and no payment was ever made. Plaintiffs assert that once the money was paid, the agreement was confirmed by the defendants and Plaintiffs had the right to decide what to do with the money because it belonged to them. Defendants disagree with this assertion. This is the actual controversy. The Complaint sufficiently pleads a Declaratory Relief action.

G.  **Imposition of a Constructive Trust is Appropriately Pled**

Plaintiffs' complaint seeks the imposition of a constructive trust as a result of Defendants' actions in failing to pay the $500,000.00 as demanded by the Millers. One who wrongfully detains a thing[25] or gains a thing by "fraud, accident, mistake, undue influence, violation of a trust, or other wrongful act"[26] is an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

> A constructive trust is not a true trust but an equitable remedy available to a plaintiff seeking recovery of specific property in a number of widely differing situations. The cause of action is not based on the establishment of a trust, but consists of the fraud, breach of fiduciary duty, or other act which entitles the plaintiff to some relief. That relief, in a proper case, may be to make the defendant a constructive trustee with a duty to transfer to the

---

[25] Calif. Civil Code § 2223.

[26] Calif. Civil Code § 2224.

plaintiff.[27]

Plaintiffs have clearly pleaded facts which state a cause of action for the imposition of a constructive trust because they have alleged that Defendants have wrongfully retained assets (specifically $500,000.00) of Anne and Molly Miller. These assets are Anne and Molly Miller's by virtue of Defendants' payments to the chosen charities as directed by the Millers as a substitute for Elsie Turchen's intended gift to them. Bohn's motion is not well taken on this point and should be denied.

## IV.
## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint states valid causes of action in all respects. Therefore, Bohn's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied. Alternatively, if the court is inclined to grant any part of this motion, Plaintiffs request that they be granted leave to amend their Complaint.

Dated: February 6, 2007                                        TEMMERMAN & CILLEY, LLP

By: _____
MARK SCHMUCK, ESQ.
Attorneys for Plaintiffs

---

[27] Olson v. Toy (1996) 46 Cal.App.4th 818, 823.