James P. Cilley, Esq. (SB#168118)
Mark A. Schmuck, Esq. (SB#205164)
**TEMMERMAN & CILLEY, LLP**
2502 Stevens Creek Blvd.
San Jose, California 95128-1654
Tel: (408) 998-9500
Fax: (408) 998-9700

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MILLER, as guardian of Molly Miller, an individual; and ANNE MILLER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, a business entity of unknown form; CARLETON L. BRIGGS, an individual; CHRISTINE DILLON, an individual; DONALD BOHN, an individual; GRACE PARISH CHRISTIAN CHURCH, a business entity of unknown form; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: C 07-04776 JL <br><br> DECLARATION OF BARBARA MILLER |

I, BARBARA MILLER, declare as follows:

1. I am an adult and a party to the above-entitled action acting in my capacity as Guardian Ad Litem for my daughter, Molly Miller. I have personal knowledge of the facts set forth herein and if called on to testify, I could and would do so competently.

2. On August 11, 2005, I had a telephone conversation with Carleton L. Briggs concerning a $500,000.00 cashier's check that was delivered to me by Greensprings Baptist Christian Fellowship Trust and made out to "Maui Preparatory Academy." Mr. Briggs and I were

discussing Greensprings' need to have that check returned to Greensprings because of litigation that was then ongoing by Penny Anderson against Greensprings, Don Bohn and Christine Dillon. That conversation was confirmed by Mr. Briggs in a letter dated August 11, 2005, a true and correct copy of which is attached hereto as **Exhibit A**.

3. At the outset of the conversation, I told Mr. Briggs that I would be recording the conversation because I wanted to make sure that my husband, who was not present at the time, understood exactly the details of the conversation. It is also my regular practice to ask if I can record my most important conversations because I suffer from tinnitus, which I have no control over and can suddenly and severely affect my hearing. Mr. Briggs agreed to my recording of the conversation, which I did using my home answering machine. A true and correct copy of the transcript of that conversation is attached hereto as **Exhibit B**.

4. If allowed to amend the instant Complaint, I will allege the following: that, by not returning the $500,000.00 cashier's check to Greensprings, Don Bohn could get into a lot of trouble. Mr. Briggs also stated to me that Mr. Bohn and Christine Dillon were acting "informally" in issuing checks to charities, including the charities that I requested be paid.

5. Throughout the conversation, Mr. Briggs represented to me several times that the $500,000.00 would be paid out as promised and that the Elsie Turchen estate has no claim to the money in question. For example, the following was said:

| | |
|---|---|
| Barbara: | So now, does this have to go before the board of directors too? |
| Briggs: | No it doesn't. Because at this point I'll have the board of directors approve it in three seconds flat. That's easy. |
| Barbara: | Okay. |
| Briggs: | The problem is that right now the court is saying don't move or do anything with any funds at all without letting me know. So that's why we have to go in front of the court and say in a separate motion, and just say look, your honor, this has nothing to do with this case. But, this lady very honestly and, at our request, has returned the check. Here's the cashiers check. We put it back, we've given it to the bank. The bank is holding it. The bank is ready to issue, you know, the three checks that we want issued. But, out of an abundance of caution because your honor was very, you know, particular about wanting to |

|   |   |   |
|---|---|---|
| | | know what's going on, not wanting us to do stuff without telling the court. Here's what we're doing. If there's any problems with it, if the court has any questions, let us know. |
| Barbara: | | See my big fear is that you're gonna come back and say that it's fallen under unapproved expenditure. |
| Briggs: | | Yeah, but see the board can always ratify an expenditure particularly before it's been, you know, where it's been issued, but if it hasn't been given yet. See the board, a board of directors has the legal power to ratify that action. In other words, approve it after it was taken. |
| Barbara: | | Okay. |
| Briggs: | | You see, see the board isn't a problem. The board is on your side. The problem is the court. The court will get angry if the court finds out that we've reissued the checks without telling them anything. |
| Barbara: | | Right. |
| Briggs: | | That would be the problem. And that's what Don was about to do and Christine said, wait a second, you better check with Carl, and he did and that's when I said no, no, no, don't do that. You'll just get the judge mad. |
| Barbara: | | Right. |
| Briggs: | | See, I mean, there's no reason to get him mad. I mean we're not doing anything improper, you just have to explain it to him. |
| Barbara: | | Well that was my big fear on this that that would come back and they'd say it was an unapproved expenditure. |
| Briggs: | | By the time the court looks at it, if it have any questions, I'll have a resolution from the board ratifying it. |
| Barbara: | | Okay. |
| Briggs: | | So, that's not a problem. As far as the non-profit corporation goes, it'll be entirely proper. The only question will be, for the court, does this have something to do with the funds that Penny and Greensprings have a dispute over? And it clearly does not. |

3. I would also amend the Complaint to allege that Mr. Briggs specifically made the following representation:

| | | |
|---|---|---|
| Briggs: | | Any event, that would be my argument [that the funds were not subject to a claim by the estate of Elsie Turchen]. So, worse case scenario, the funds will be sitting for a while in that account earning interest and |

Page 3

Declaration of Barbara Miller

|   |   |   |   |
|---|---|---|---|
| 1 |   |   | then would be released. Okay? |
| 2 | 4. |   | Finally, along those same lines, Mr. Briggs made the following statements to me: |
| 3 |   | Barbara: | Okay, and I'm sorry that I didn't get it to you before I left, but as I said, my big fear was that this thing was going to come back as unapproved expenditure. |
| 5 |   | Briggs: | Believe me if, in the worse case scenario if that happened, I still say we'd be able to ultimately settle the case with Penny and your funds would still be sitting there safely in an interest bearing account |
| 8 |   | Barbara: | Okay. |
| 9 |   | Briggs: | Because she has no claim on it. |
| 10 |   | Barbara: | Right. |
| 11 |   | Briggs: | You see? Even if she won the case, she still wouldn't get those funds. |
| 12 |   | Barbara: | Okay. |
| 13 |   | Briggs: | Which is impossible. She can't possibly win. You know, I'm just saying, I just don't see any possibility that anything is going to happen to those fund, and they'll just be sitting there earning interest. |
| 16 |   | Barbara: | Good. Okay Carl. Thank you very much. |
| 17 |   | Briggs: | Thanks for your help. |
| 18 |   | Barbara: | Okay. |
| 19 |   | Briggs: | Bye. |
| 20 |   | Barbara: | Bye. |

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this __5__ day of February, 2008, at 4 p.m. est WAshington, D.C.

_Barbara P. Miller_
Barbara Miller

Page 4
Declaration of Barbara Miller