EXHIBIT B

Barbara: As I said, I was going to call you. The attorney that I was working with has gotten called away on some serious business, so he can't look at this for two weeks. But, I do not want to hold you guys up so, let's get it done.

Unidentified: (Briggs) Yeah, I talked to Tony Gibbs and he said look, logically, if you show the judge the check, he said look, here it is. It's been paid out.

Barbara: Right.

Briggs: She's returned it. Here is the cashiers check. The bank is ready to exchange it. So it's not a question of the funds coming from some improperly, you know, derived source. It's not a question of the funds legitimately being under the purview of the court. Because it was all done before...

Barbara: Right

Briggs: ...you know, before the court became involved with it. He said he's known the judge for thirty years. He said you know, probably the judge will say okay go ahead. If he doesn't say that, he'll say well let me take a little, closer look at it. And there may be some delay, but ultimately, he said, his guess is that the judge will approve it.

Barbara: Right.

Briggs The problem is, if you go ahead and negotiate the check, you could get Don into a heck of a lot of trouble.

Barbara: Oh I have no intention of doing that.

Briggs: Well see...

Barbara: Nor would I ever cause any problems for Don or Christine

Briggs: But let me explain the situation. It's not really Don's fault. But Don and Christine have been, sort of, behaving very informally. Okay?

Barbara: Right.

Briggs: So they knew what else you wanted, so they just go ahead and do it. The problem is, then there's no record. There's no resolution of the board of directors. There's no, you know, there's no record for the non-profit corporation to show why this stuff is being done. So what they did really

|  |  |
|---|---|
|  | was, they issued it without authorization of the corporate board. You see, which technically you're not supposed to do. Nobody cares because they've never put any money into their own pocket. They're as honest as can be. And they've only done the proper things, you know, in terms of where they've disbursed funds. But see, what I've tried to make them understand is no, no, you've got to it very formally. You've got to have, you know, a resolution of the board of directors approving the issue of it. And then you keep a copy of that. Then you're safe. You see, no one can question it. |
| Barbara: | So now, does this have to go before the board of directors too? |
| Briggs: | No it doesn't. Because at this point I'll have the board of directors approve it in three seconds flat. That's easy. |
| Barbara: | Okay. |
| Briggs: | The problem is that right now the court is saying don't move or do anything with any funds at all without letting me know. So that's why we have to go in front of the court and say in a separate motion, and just say look, your honor, this has nothing to do with this case. But, this lady very honestly and, at our request, has returned the check. Here's the cashiers check. We put it back, we've given it to the bank. The bank is holding it. The bank is ready to issue, you know, the three checks that we want issued. But, out of an abundance of caution because your honor was very, you know, particular about wanting to know what's going on, not wanting us to do stuff without telling the court. Here's what we're doing. If there's any problems with it, if the court has any questions, let us know. |
| Barbara: | See my big fear is that you're gonna come back and say that it's fallen under unapproved expenditure. |
| Briggs: | Yeah, but see the board can always ratify an expenditure particularly before it's been, you know, where it's been issued, but if it hasn't been given yet. See the board, a board of directors has the legal power to ratify that action. In other words, approve it after it was taken. |
| Barbara: | Okay. |
| Briggs: | You see, see the board isn't a problem. The board is on your side. The problem is the court. The court will get angry if the court finds out that we've reissued the checks without telling them anything. |

Barbara: Right.

Briggs: That would be the problem. And that's what Don was about to do and Christine said, wait a second, you better check with Carl, and he did and that's when I said no, no, no, don't do that. You'll just get the judge mad.

Barbara: Right.

Briggs: See, I mean, there's no reason to get him mad. I mean we're not doing anything improper, you just have to explain it to him.

Barbara: Well that was my big fear on this that that would come back and they'd say it was an unapproved expenditure.

Briggs: By the time the court looks at it, if it have any questions, I'll have a resolution from the board ratifying it.

Barbara: Okay.

Briggs: So, that's not a problem. As far as the non-profit corporation goes, it'll be entirely proper. The only question will be, for the court, does this have something to do with the funds that Penny and Greensprings have a dispute over? And it clearly does not.

Barbara: That's what Christine said. Christine said that his is a totally separate...

Briggs: Right, cause see what the, what the court is going to have to resolve, if the attorney's can't...between me and you, it think they can. I don't think the court is gonna have to, because I just got all the title reports on the properties. So I can show Penny's attorneys how the properties were transferred and that she didn't own any of them, you know. But see, even if you assume that Penny was right, is right, and her attorney's are right, and that some of this property wasn't properly transferred, something wrong with the deeds, so that some of it really would go through the estates of Ward or Elsie and to Penny. Those are real properties that have nothing to do with this money.

Barbara: Right.

Briggs: See?

Barbara: Right.

Briggs: That's the bottom line. The bottom line...

Barbara: And that's what Christine assured me because...

Briggs: Yeah. Penny would have no claim on these funds. I believe Christine's analysis is correct.

Barbara: Okay, great.

Briggs: Yeah, but see, you know, I can't...I don't want to lie to you, I don't want to tell you that the judge will approve it instantly. He might say, oh wait a second, I want to look at it. But the thing is, the only thing we can do is that. You see? And, you know, and it's the only proper, you know, ethical, legal thing to do, is to say look, here, she's honest, she gave it back, it's back in the same bank it was issued from. They're ready to reissue. You know, can we have permission to do so?

Barbara: And um...

Briggs: And the bank is ready, I gave the bank all the account in formation to redeposit it. But they say they're just...

Barbara: And it's gonna be redeposited in a separate account earmarked for those three schools.

Briggs: I set up a separate account, interest bearing, my name, no one else can touch it. I assured you in writing it's earmarked for those schools.

Barbara: Okay great.

Briggs: Yeah because that's the whole point. I mean, the whole point of all this stuff is to do, is to carry out the charitable intents of Ward and Elsie.

Barbara: Right.

Briggs: And that intent is clear. I've looked at dozens of documents.

Barbara: Right.

Briggs: I mean there's no question that's what they wanted. They wanted this stuff used for these charities. So you know, that's the bottom line. And that's our job to do that. The part that gummed everything up was that they didn't

          follow all the formalities and they didn't complete the formation of the corporation. They sort of aborted it in mid-stream. So they got some properties titled one way, some properties titled another way. And then Penny, of course, is coming in now and saying oh wait, you know, the properties weren't properly transferred out from Ward and Elsie. Now as far as I can tell, the overwhelming majority of deeds were properly done.

Barbara: Right.

Briggs: A couple of them may or may not be, I have them being looked at. But even if you assume they aren't, and Penny is owed a couple of properties, that still has nothing to do with these funds.

Barbara: Right.

That has nothing to do with your check at all.

Right, right. Okay.

That's why logically, the judge should approve it. But you know, I have to tell you in twenty years of legal practice, there are times that you see judges do things that aren't logical.

Right, exactly. Sometimes they have their own peccadillo as they say...

Well they do and sometimes they just like to be cautious. You know, sometimes they say well why don't we wait until you resolve the litigation. They say stuff like that when it isn't necessary. But then of course you have to say well no, that's not fair. You know, they need these funds, here's why, you're doing damage by waiting.

Right exactly.

You know, then you just have to cajole them into it. The good thing is that Tony has known this guy thirty years.

Right.

So, you know, so he says look, the guy's not an unfair judge. You know, he's not a rat or a bad person. And, you know, he said you'll get a fair decision from him, but even Tony says, I can't promise you he'll approve it. You know, he might say wait a while. But at least we're doing the right thing. And the funds aren't going anywhere.

Right.

The funds will be in that separate account. I filled out all the cards and everything, and at that same bank that issued the check.

Okay.

On purpose. Don and I sat there and filled out everything.

Okay now, once you get the check, how soon do you think it will be before you'll be able to bring this before the judge?

If we filed the motion...if you FedEx the check overnight, either to me or to Don, whichever you want, then we can get it to the bank the next day. Then we can file the motion within a couple of days. It only takes about a day to do the motion.

Okay.

Then we can file it. Normally, the calendar at the court is such that they give you about a thirty day lead time before you get a hearing on the motion.

Right.

Depending on how crowded they are.

Right.

So my guess is, we'll have the motion on file and some sort of indication from the judge within about thirty days. Now, one way to shortcut it is, we can ask Penny's...we can explain the situation to Penny's attorneys.

Right.

And we can say look, this has nothing to do with what's being claimed by Penny. So would you simply agree, you know, that the court can go ahead and approve this.

Right.

And if they'll do that, you know, then that makes it that much easier.
Then there's no one objecting to it.

Oh good. So you're gonna try both routes.

Well see again, the fact that you returned the check and that we've put it back in the same bank in a new interest bearing account and no one can touch it except me, an officer of the court. That shows you're on the up and up.

Right.

That shows you're proper. But the fact that the check was already issued last January, shows that the disbursement has been made.

Right.

You know, so you know, and you in essence are acting as a trustee and realizing you have to change, you know, the disbursee. But that doesn't make the funds subject to Penny's claim.

Right.

Perhaps it's quite the opposite.

Right, right.

Any event, that would be my argument. So, worse case scenario, the funds will be sitting for a while in that account earning interest and then would be released. Okay?

Right.

Best case scenario, the judge will approve it and you've got your checks very quickly.

Okay Carl. Okay, well I'll FedEx that out to you. Do you want...who do you prefer I send that too?

If you want to send it to me, that's fine, and I'll just take it down to the bank.

Okay 3, 5...

I'm going down there for a hearing on Thursday, let me see, Thursday...

Okay.

So if you FedEx it out to me today, overnight to my Santa Rosa office...

Right.

...then I'll have it tomorrow morning, which is Wednesday, and I'll just take it down with me Thursday morning. And after the hearing I'll just go by the bank and hand it to them.

Right, okay.

Yeah, and they're all set. The manager expects it. She says as soon as I get the check to her, she'll redeposit. Not a problem.

Okay. I will get that out...I'll get it out to you today then.

Perfect. Thank you for the help.

Okay Carl.

And I do apologize about the delay. It is flowed down, see what it is affecting is I can't release funds that are, you know, presently in the account for charitable stuff. You know, the other account. And that aggravates everybody, but I'm stuck until I resolve this stuff with Penny.

Right, but as you said, this has nothing to do with her stuff.

Yeah, logically it really doesn't.

It should be free and clear of anything she's doing.

Yeah.

Okay, well...and you're gonna go both routes. You're gonna try to get her attorney to agree to that and also you're gonna file a motion that...

Oh yeah. The first thing I'll do is tell Tony I got the check, I'm putting it back in the bank. Call Andrew ???, Penny's attorney, and say look, this is the situation, do you have any problems with it. Cause see, once he sees it's not funds that she's claiming...

Right.

...then what does he care?

Right, exactly.

I mean, there's no way that anybody can say that these funds came from one of those properties.

Right.

See they didn't. The properties she's claiming are separate. They're all still there.

Right. Okay.

That's the best we can do.

I would not want your job.

Well, it's just such a complicated mess, because see, what they did was, Christine called me at the end of 2001 and said would you mind forming this domestic non-profit corporation so Greensprings can transfer into it. And I said fine. Do you need me to do anything else? She said, no, no, no, we have our own counsel. Which I guess was the attorney in Idaho. But what they forgot to do was...

God bless her.

...get the exemption, the tax exemption from the California Franchise Tax Board and then to deed all the properties over. You know they just didn't do it all. So I'm sitting here, I'm trying to do that in this mess, and of course, the minute that they didn't do anything, the corporate status was suspended because Franchise Tax Board was wondering where our tax returns are.

Oh exactly. God.

So I'm in the process of cleaning up the mess.

Ah, as I said, I would not want your job.

Well it's a challenge.

Yes it is. And you're the man for the job obviously.

I do thank you very much for your help.

Okay, and I'm sorry that I didn't get it to you before I left, but as I said, my big fear was that this thing was going to come back as unapproved expenditure.

Believe me if, in the worse case scenario if that happened, I still say we'd be able to ultimately settle the case with Penny and your funds would still be sitting there safely in an interest bearing account                .

Okay.

Because she has no claim on it.

Right.

You see? Even if she won the case, she still wouldn't get those funds.

Okay.

Which is impossible. She can't possibly win. You know, I'm just saying, I just don't see any possibility that anything is going to happen to those fund, and they'll just be sitting there earning interest.

Good. Okay Carl. Thank you very much.

Thanks for your help.

Okay.

Bye.

Bye.