JAMES H. HARTNETT, SBN 84587
Hartnett, Smith & Associates
777 Marshall Street
Redwood City, CA 94063
Telephone: 650-568-2820
Telefax: 650-568-2823

Attorney for Defendant Donald Bohn

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MILLER, as guardian of Molly Miller, an individual; and ANNE MILLER, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, et al.,<br><br>Defendants. | Case No. C 07-04776 JL<br><br>REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(b)(6)]<br><br>Date: February 27, 2008<br>Time: 9:30 a.m.<br>Courtroom: F, 15th Floor<br>Complaint filed: August 17, 2007<br>Trial date: None |

**INTRODUCTION**

Donald Bohn should be dismissed from this Lawsuit. The allegations against him do not stand up as a matter of law. The overall allegations do not stand up against any defendant, but it is particularly clear that Donald Bohn should not be in this Lawsuit.

Plaintiffs' opposition to defendant Donald Bohn's motion to dismiss is rife with contradictory positions and leaps of logic. Plaintiffs repeatedly assert that the alleged promise to pay $500,000 to a charity of their choice was a substitute for the alleged gift Elsie Turchen offered to make to Molly and Anne Miller. Opposition, 2:7-11; 2:22-25; 13:18-19; 15:4-6. Yet, they also argue that the validity of Elsie Turchen's underlying gift

1
REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(b)(6)]

is irrelevant. Opposition, 11:13-15; 12:6-8. In any event none of this has anything to do with Donald Bohn.

Plaintiffs allege that defendant Dillon promised that Grace Parish Christian Church would pay $500,000 to a charity of plaintiffs' choice on behalf of Molly and Anne Miller. Opposition, 2:8-11. From this alleged promise, plaintiffs leap to the assertion that Anne and Molly Miller were "entitled" to the money (Opposition, 13:20) and that the $500,000 "belonged to them" (Opposition 14:13-14).

Plaintiffs also contend that,

> by paying the $500,000, and later demanding that the money be returned in light of the Anderson v. Dillon lawsuit, defendants were acknowledging that they was [sic] acting on behalf of the Turchen estate without court *appointment and at its own risk* [emphasis in original]. Defendants were also acknowledging that the Plaintiffs' claim to the money had validity. (Opposition, 12:2-5.)

This argument flies in the face of reason: plaintiffs assert that defendants were acting on behalf of the Estate of Elsie Turchen in the Anderson v. Dillon lawsuit when in fact defendants were being *sued by the estate* in that action.

These are just a few examples of how plaintiffs' fanciful contentions are no longer tethered to the factual allegations of their complaint.

**ARGUMENT**

**1.    The court may not consider the extraneous material plaintiffs submitted.**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court ordinarily cannot consider material outside the complaint, such as facts presented in briefs, affidavits, or discovery materials. *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); *Paulsen v. CNF, Inc.*, 391 F.Supp.2d 804, 807 (ND CA 2005).

Plaintiffs go on at length about facts they discovered since filing the complaint, including allegations of a complaint filed in another action in San Mateo County Superior

Court (Anderson v. Miller), a matter that has since been settled. Opposition 4:16-5:14. Plaintiffs also quote several pages of a telephone conversation between plaintiff Barbara Miller and Carleton Briggs, attorney of record for defendant Greensprings Baptist Fellowship Trust ("Greensprings"), which plaintiff Barbara Miller allegedly recorded. See plaintiff's Opposition, 5:15-8:1.

These allegations are clearly outside the complaint plaintiffs filed and may not be considered by the court in ruling on the motion at issue here.

## 2. Plaintiffs have failed to state a claim for breach of contract.

### A. Plaintiffs have failed to establish that defendants promised to pay them $500,000.

Plaintiffs allege that defendant Dillon promised that Grace Parish Christian Church ("Grace Parish") would pay $500,000 to a charity of plaintiffs' choice on behalf of Molly and Anne Miller. Opposition, 2:8-11. From this alleged promise, they conclude that defendant Bohn promised to pay $500,000. Opposition, 11:4-5. But the complaint actually alleges that "Grace Parish Christian Church would pay the $500,000.00 as Elsie desired." Complaint at 5:20-21.

Plaintiffs further allege that

> Defendant Dillon represented that Grace Parish Christian Church (which Plaintiffs are informed and believe never existed) would pay $500,000.00 (in place of a gift of the Malcolm Avenue property) to a charity or charities of Robert's and Barbara's choice on behalf of Anne and Molly.

Complaint at 3:23-26.

Plaintiffs also state that their initial choice of charity was the Maui Preparatory Academy. See Complaint, 4:2-4; 4:13-16. Again none of this has anything to do with Donald Bohn.

Plaintiffs do *not* reveal that the alleged promise that Grace Parish would donate $500,000 to a charity of the Millers' choice (e.g., Maui Preparatory Academy) was

intended to be effective *only* on execution of a written contract between Grace Parish and the Maui Preparatory Academy prepared by the Millers' attorneys, which was never executed. By artful pleading, plaintiffs have skipped all mention of the written contract in their complaint, although they identified the agreement in their initial disclosures, filed under F.R.C.P. 26(a)(1), as a document that they may use to support their claims. See agreement attached as Exhibit A to the declaration of James H. Hartnett.

**B.   In ruling on this motion, the court may consider the unsigned agreement between Grace Parish and Maui Preparatory Academy.**

Material properly submitted with the complaint (i.e., exhibits under F.R.C.P. 10(c)) may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss.) *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 (9th Cir. 1989). The court may also consider documents referred to in the complaint to show that they do not support the plaintiff's claim. See *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1127 (9th Cir. 2002)). The Ninth Circuit has extended this rule to documents attached to a defendant's Rule 12(b)(6) motion, the authenticity of which is not contested, even though they are not mentioned in the complaint, to prevent plaintiffs from deliberately omitting references to documents on which their claims are based. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998).

In *Parrino*, the plaintiff's complaint referred to an ERISA "group plan" and its "cost containment program" but did not mention documents governing plan membership and coverage. These documents were attached to the defendant's Rule 12(b)(6) motion. The court held that the trial court properly considered the documents in ruling on the motion because they were essential to the claim and their authenticity was not contested. *Id.* at 706.

In this case, since plaintiffs have identified the unsigned agreement between Grace

Parish Christian Church and Maui Preparatory Academy in their initial disclosure under F.R.C.P. 26(a)(1), it is clear that they do not contest its authenticity. The fact that the document was never executed indicates that, in fact, no agreement for the donation of funds by Grace Parish to the Maui Preparatory Academy was ever reached. Plaintiffs contend that the alleged subsequent agreements were founded upon this original agreement. In ruling on the motion to dismiss, the court can consider this document, which contradicts the allegations of the complaint, in deciding whether there was a meeting of the minds regarding this alleged agreement.

**C.    Plaintiffs cannot establish the requisite elements of promissory estoppel.**

Plaintiffs argue that they have stated a claim for breach of contract based on a theory of promissory estoppel. The required elements for promissory estoppel in California are a promise clear and unambiguous in its terms; reliance by the party to whom the promise is made, which is both reasonable and foreseeable; and injury to the party asserting the estoppel resulting from his reliance. *Laks v. Coast Fed. Sav. & Loan Assn.*, (1976) 60 Cal.App.3d 885, 890. In *Laks*, the plaintiff hotel developers sued a lending institution for damages resulting from the defendant's failure to make a loan as set out in a letter of "conditional commitment." The court found that the letter was missing essential terms and was not sufficient to establish a clear and unambiguous promise, and that the plaintiffs could not reasonably have relied on such a conditional offer. *Id.* at 893.

In this case, plaintiffs contend that they acted reasonably in relying on the alleged promise of defendants Dillon and Greensprings to pay $500,000 from estate funds to a charity of plaintiffs' choice on behalf of Anne and Molly Miller in forbearing to make a claim against the estate of Elsie Turchen for payment of the $500,000. Plaintiffs contend that the fact that defendant Bohn initially issued two checks totaling $500,000 payable to plaintiffs' original designee led directly to their forbearance from making a claim in the Turchen estate. Opposition, 11:18-19. Plaintiffs argue that, because they thought they would be satisfied through this informal promise, "it would be a waste of time and money

to prepare the papers in order to enforce the claim in court." Opposition, 11:1-3. In any event, of note as to Donald Bohn is that there is no promise made by him

As to the other Defendants, it was not reasonable for plaintiffs to think that the personal representative could unilaterally pay out $500,000 from the estate on his or her own initiative and without court authorization. Probate Code § 9832(b) requires court authorization for the compromise or settlement of a matter that requires the estate to pay out any amount in excess of $25,000. Moreover, plaintiffs were told by Carleton Briggs that no checks could be reissued without court authorization in the Anderson v. Dillon lawsuit. See Complaint, 5:3-5. It was unreasonable for plaintiffs to rely on defendant Dillon's alleged misrepresentation that, as the estate's personal representative, she would pay $500,000 out of the estate funds, and unreasonable for plaintiffs not to protect their claim in the probate proceeding.

In *US Ecology, Inc. v. State of California*, (2005) 129 Cal.App.4th 887, a developer selected to build a radioactive-waste facility sued the State on a promissory estoppel theory after the facility was not built because the State had failed to acquire the site from the federal government. The court stated that "promissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract . . . ." *Id.* at 904. Moreover, "[a] party allowed in equity to pursue a claim for promissory estoppel because it has no enforceable contract should not be placed in a position better than one with an enforceable contract." Thus, the court held that a plaintiff pursuing a promissory estoppel claim must prove the other elements of a breach of contract claim, including that the defendant's breach caused its damages. *Id.* at 908.

As has previously been demonstrated, plaintiffs had no enforceable claim against Elsie Turchen's estate for the alleged promise to make a gift. And any promise that defendant Dillon may have made to pay $500,000 to a charity of the Millers' choice on behalf of Anne and Molly Miller was *not* a promise to pay *any* money to *them*. Therefore,

there is no legal or factual basis for their claim that they have been damaged in the sum of $500,000. They certainly can not claim that Donald Bohn caused the damage under any theory.

In this case, plaintiffs' theory has made some remarkable leaps: they have turned Elsie Turchen's unenforceable promise to make a gift into a promise by defendant Dillon, allegedly as personal representative of the Estate of Elsie Turchen, to pay $500,000 to a charity of plaintiffs' choice on behalf of Anne and Molly Miller, and then into a claim that plaintiffs themselves are "entitled" to $500,000 payable from the Estate of Elsie Turchen, and now into a claim that the other defendants, including Greensprings and Donald Bohn, owe them $500,000. Plaintiffs' theory creates an open-ended promise under which defendants are obligated to issue them checks payable to different entities as many times as plaintiffs wish, and as often as they change their minds concerning their intended charities. And now, plaintiffs claim that they *themselves* are entitled to the $500,000.

The "promise" plaintiffs allege here is not clear and unambiguous enough to be enforceable under the doctrine of promissory estoppel. There is simply no legal or factual basis for their breach of contract claim under a promissory estoppel theory.

**D.   Plaintiffs' forbearance to pursue a wholly unenforceable claim was not valid consideration to support a new oral contract.**

Plaintiffs also contend that their forbearance from making any claim against the Turchen Estate is sufficient consideration to support an oral contract to pay them $500,000. Forbearance to sue on a claim or compromise of a claim, either valid, doubtful, or disputed (but not void) is good consideration. 1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2007) Contracts § 211 at 246-247. But "[i]f a claim is wholly invalid, neither forbearance to sue nor compromise thereof can be good consideration." *Id.* § 220 at 253.

Plaintiffs contend that defendants possess $500,000 that defendant Dillon allegedly

promised to pay to a charity of plaintiffs' choice, as a substitute for a gift of real property that Elsie Turchen, great-grandmother of Molly Miller, had allegedly proposed making to plaintiffs Molly and Anne Miller during her lifetime. Plaintiffs contend that a letter dated November 23, 2000, from Elsie Turchen shows that it was her clear intent to give Anne and Molly Miller the house located at 325 Malcolm Avenue, Belmont, California. But this property had already been given by Elsie G. Turchen, as Trustee of the Penny Trust, to the Greensprings Fellowship Trust by grant deed dated January 12, 1999. See Request for Judicial Notice filed herein.

Defendant has demonstrated that Elsie Turchen's original promise to make a gift to Anne and Molly Miller was wholly unenforceable. Since Elsie Turchen had already deeded the Belmont property to Greensprings well before she allegedly offered it to the Millers on November 23, 2007, the purported gift was wholly void. Therefore, forbearance to bring the claim against the estate could not provide valid consideration for another promise—e.g., a promise to pay $500,000. Again, in any event none of this had anything to do with Donald Bohn.

### 3. Plaintiffs' failure to establish that they had any right to the $500,000 is fatal to their claims for conversion and fraud.

Plaintiffs now claim that they are "entitled" to $500,000 (Plaintiffs' Opposition 13:19-21) and that defendants converted those funds. But the complaint's allegations fail to establish that there was ever any agreement by defendant Dillon, Greensprings, Bohn, or anyone else to pay $500,000 *to plaintiffs*. They have not established that they themselves have any ownership right to the $500,000. This fact is fatal to their cause of action for conversion.

Moreover, the fact that plaintiffs were never to have received the $500,000 under the alleged circumstances is also fatal to their claim for fraud. Plaintiffs would not have received the money in any case, and they are not liable to any of the charities to which they may have considered (and then reconsidered) giving the money on Anne and Molly

1  Miller's behalf. Contrary to their claims, the facts as alleged do not demonstrate that they
2  have been damaged in the amount of $500,000, or any other amount.

## CONCLUSION

Plaintiffs have advanced a variety of theories to support their claim that they are entitled to $500,000. But the facts as alleged show that they had no enforceable gift, and that even if the promises alleged in the complaint had been performed, plaintiffs would never have received any money. They are simply not "entitled" to the $500,000 under any theory against any defendant. But as demonstrated in the Motion and this Reply, the Complaint does not even come close to standing up against Donald Bohn. For these and the foregoing reasons, defendant Bohn's motion to dismiss should be granted.

Dated: February 13, 2008

Respectfully submitted,

HARTNETT, SMITH & ASSOCIATES

_____
James H. Hartnett
Attorney for Defendant Donald Bohn