1  CARLETON L. BRIGGS, SBN 117361
   Law Offices of Carleton L. Briggs
2  3510 Unocal Place, Suite 209
   Santa Rosa, CA 95403-0918
3  Telephone: (707) 523-2251
   Facsimile: (707) 523-2253
4  E-mail: clbriggs@sonic.net

5  James E. Rice, SBN 213670
   GINES & RICE
6  2319 Polk Street
   Caldwell, Idaho 83605
7  Telephone: (208) 455-2302
   Facsimile: (208) 377-8722
8  E-mail: jimrice@q.com

9  Attorneys for Defendant
   GREENSPRINGS BAPTIST
10 CHRISTIAN FELLOWSHIP TRUST

11                 UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13 BARBARA MILLER, individually and        Case No. C 07-04776 JL
   as guardian ad litem of Molly Miller, an
14 individual; ANNE MILLER, an             MEMORANDUM OF POINTS AND
   individual; and ROBERT MILLER, an       AUTHORITIES IN SUPPORT OF
15 individual,                             DEFENDANT GREENSPRINGS'
                                           MOTION TO DISMISS FOR FAILURE
16            Plaintiffs,                   TO STATE A CLAIM UPON WHICH
                                           RELIEF CAN BE GRANTED
17     vs.                                 [FRCP 12(b)(6)]

18 GREENSPRINGS BAPTIST CHRISTIAN
   FELLOWSHIP TRUST, et al.,
19                                         Date:   June 4, 2008
              Defendants.                  Time:  9:30 a.m.
20                                         Courtroom: F, 15th Floor
                                           Chief Magistrate Judge:
21                                                 Hon. James Larson
                                           Complaint filed: August 17, 2007
22 _____/    First Amended Complaint filed:
                                                   March 28, 2008
23                                         Trial date: None

24

25

26

27

28
                                    1

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . 1

COURT'S ORDER RE AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1.    Breach of contract—damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.    Breach of contract—promissory estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3.    Additional explanation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1.    Dismissal  is proper where the plaintiffs cannot prove any set of facts that would
      entitle them to relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.    Plaintiffs' claim for breach of contract—promissory estoppel  is fatally deficient. . . . . . 7

      A.    Plaintiffs cannot recover damages for breach of contract. . . . . . . . . . . . . . . . . . 7

            (1)    The purported gift by Elsie Turchen was not enforceable. . . . . . . . . . . . 8

            (2)    The $200,000 pledge purportedly made to Seabury Hall does not allege
                   the requisite damages to save this claim. . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Plaintiffs' forbearance to pursue a wholly unenforceable claim was not valid
            consideration to support a new oral contract. . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    An agreement made under duress or threat is voidable. . . . . . . . . . . . . . . . . . 12

      D.    Plaintiffs cannot establish reasonable reliance on defendant's representations.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      E.    Because Greensprings' payment of $500,000 to plaintiffs would disqualify
            Greensprings as a tax exempt organization, it would be an act beyond the powers
            of Greensprings' trustee, and would constitute an illegal contract. . . . . . . . . . . 13

3.    Plaintiffs breach of contract claim is time-barred. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.    The oral representations occurred more than two years before the First Amended
            Complaint was filed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.    The amendments after the statute of limitations had run do not "relate back" to the
            original complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4.    Plaintiffs have no standing to assert their claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5.    Plaintiffs cannot recover damages for conversion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6.    Plaintiffs cannot state a claim for fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      A.    Plaintiffs cannot establish damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      B.    Plaintiffs' charge that defendants promised to pay $500,000 without any intent to
            perform must fail because they did perform. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      C.    Plaintiffs' claim of "conspiracy" to defraud Elsie Turchen's Estate has been
            settled, and *res judicata* prevents reconsideration of those claims. . . . . . . . . . . . 20

      D.    Plaintiffs cannot establish reasonable reliance on defendants' representations.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7.    Plaintiffs cannot establish their right to the requested declaratory relief. . . . . . . . . . . . 21

8.    The Court cannot impose a constructive trust on Greensprings when the $500,000
      is held by the Estate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

9.    Plaintiffs cannot obtain specific performance because they merely seek money
      and have an adequate remedy at law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

10.   Plaintiffs' claims for "interference with right to inherit" must fail because they
      had no right to inherit from Elsie Turchen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GREENSPRINGS'
FRCP 12(b)(6) MOTION

1

TABLE OF AUTHORITIES

2

CASES

3

*Besig v. Dolphin Boating and Swimming Club,* 683 F.2d 1271 (9th Cir. 1982) . . . . . . . . . . . . 17

4

*Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5

*Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

6

*Bullfrog Films, Inc. v. Wick,* 847 F.2d 502 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

7

*Burkle v. Burkle,* 141 Cal.App.4th 1029 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8

*Church of Spiritual Technology v. United States,* 26 Cl.Ct. 713 (1992) . . . . . . . . . . . . . . . . . . 14

9

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10

*Dateline Builders, Inc. v. City of Santa Rosa,* 146 Cal.App.3d 520 (1983) . . . . . . . . . . . . . . . . 9

11

*Davies v. Krasna,* 14 Cal.3d 502 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

12

*Fiedler v. Clark,* 714 F.2d 77 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

13

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, (2000)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

14

15

*Galbraith v. County of Santa Clara* (9th Cir. 2002) 307 F.3d 1119 . . . . . . . . . . . . . . . . . . . . . . 3

16

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 17

17

*Glue-Fold, Inc. v. Slautterback Corp.,* 82 Cal.App.4th 1018 (2000) . . . . . . . . . . . . . . . . . . . . . 22

18

*Gonsalves v. Hodgson,* 38 Cal.2d 91 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

19

*Hagan v. Fairfield,* 238 Cal.App.2d 197 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

20

*Haigler v. Donnelly,* 18 Cal.2d 674 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21

*Hartman Ranch Co. v. Associated Oil Co.,* 10 Cal.2d 232 (1937) . . . . . . . . . . . . . . . . . . . . . . . . 9

22

*In re Stac Electronics Securities Litig.* (9th Cir. 1996) 89 F.3d 1399 . . . . . . . . . . . . . . . . . . . . . 3

23

*Kashani v. Tsann Kuen China Enterprise Co.,* 118 Cal.App.4th 531 (2004) . . . . . . . . . . . 14, 15

24

*Marriage of Smith & Maescher,* 21 Cal.App.4th 100 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

25

*McDermott v. Bear Film Co.,* 219 Cal.App.2d 607 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26

*Merchants' Collection Agency v. Roantree* (1918) 37 Cal.App. 88 . . . . . . . . . . . . . . . . . . . . . . 12

27

*Rice v. Crow*, 81 Cal.App.4th 725 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GREENSPRINGS'
FRCP 12(b)(6) MOTION

1  *Service by Medallion, Inc. v. Clorox Co.,* 44 Cal.App.4th 1807 (1996) . . . . . . . . . . . . . . . . . . . 19

2  *Smith v. City and County of San Francisco,* 225 Cal.App.3d 38 (1990) . . . . . . . . . . . . . . . . . . . 7

3  *SMS Financial, Ltd. Liability Co. v. ABCO Homes Inc.,* 167 F.3d 235 (5th Cir. 1999) . . . . . . . 16

4  *State of California v. Oroville-Wyandotte Irrigation Dist.,* 409 F.2d 532 (9th Cir. 1969) . . . . . 21

5  *Uhlmann v. Kin Daw,* 97 Or. 681 (1920) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6  *United States v. Hays,* 515 U.S. 737 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7  *US Ecology, Inc. v. State of California,* 129 Cal.App.4th 887 (2005) . . . . . . . . . . . . . . . . . . . . . . 8

8  *Vu v. California Commerce Club, Inc.,* 58 Cal.App.4th 229 (1997) . . . . . . . . . . . . . . . . . . . . . . . 18

9  *Wendy L. Parker Rehabilitation Foundation, Inc. v. Commissioner,* 52 TCM 51 (1986) . . . . . 14

10  *Wheeler v. Travelers Ins. Co.,* 22 F.3d 534 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11  *Yukon River Steamboat Co. v. Gratto*, 136 Cal.538 (1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12

13  STATUTES

14  26 U.S.C. § 501(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15  28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16  Civil Code § 1559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17  Civil Code § 1570 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18  Civil Code § 1667 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19  Code of Civil Procedure § 1060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

20  Code of Civil Procedure § 339 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21  Oregon Rev. Stats. § 130.650 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

22  Oregon Rev. Stats. § 130.665 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

23  Probate Code § 16000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

24  Probate Code § 16200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25  Probate Code § 21700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26  Probate Code § 6450 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

27

Probate Code § 6451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Probate Code § 9832(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

RULES

26 C.F.R. § 1.501(c)(3)-1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 C.F.R. § 1.501(c)(3)-1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26 C.F.R. § 1.501(c)(3)-1(c)(1)-(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Civil Procedure, Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 5, 7

Federal Rules of Civil Procedure, Rule 15(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rules of Civil Procedure, Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

OTHER AUTHORITY

1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Contracts" § 244 . . . . . . . . . . . . . . 7

1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2007) "Contracts" § 211 . . . . . . . . . . . . . 11

13 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Trusts" § 319 . . . . . . . . . . . . . . 22

2 Schwarzer, et al., CAL. PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL (rev. ed. 2007) § 9:187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 WILLISTON ON CONTRACTS (4th ed. 1990) § 71:8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 Witkin, CALIFORNIA PROCEDURE (4th ed. 1997) "Pleading," § 660 . . . . . . . . . . . . . . . . . . . 18

5 Witkin, CALIFORNIA PROCEDURE (4th ed. 1997) "Pleading" § 741 . . . . . . . . . . . . . . . . . . . 23

5 Witkin, CALIFORNIA PROCEDURE (4th Ed.) "Pleading" § 759 . . . . . . . . . . . . . . . . . . . . . . . . 23

5 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Torts," § 772 . . . . . . . . . . . . . . . 19

RESTATEMENT (2D) CONTRACTS § 175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# INTRODUCTION

Plaintiff Barbara Miller, individually and as guardian ad litem for her adopted daughter Molly Miller; Anne Miller, the natural daughter of Barbara and Robert Miller; and Robert Miller have sued to recover, or obtain a declaration that they are entitled to, the sum of $500,000. The first amended complaint alleges causes of action for "breach of contract—promissory estoppel, conversion, fraud, declaratory relief, constructive trust, specific performance, intentional interference with the right to inherit, and negligent interference with the right to inherit." Yet the facts alleged affirmatively show that plaintiffs do not now and never have owned or had any right to possess the $500,000, and they have suffered no damage as a result of defendants' purportedly wrongful conduct. Because these defects appear on the face of the first amended complaint, the Court may properly dismiss under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.

# THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Before her death, Elsie G. Turchen, Molly Miller's natural great grandmother, expressed in writing her intent to give a substantial gift to Anne and Molly. In a letter to Barbara and Robert Miller dated November 23, 2000, she asked the Millers if they would "consider" a gift to Anne and Molly of a house located at 325 Malcolm [sic] Avenue, Belmont, California. The first amended complaint alleges that it was Elsie's clear intent to give the Belmont house to Anne and Molly, but Elsie died 17 days later, on December 10, 2000. There is no allegation that the gift was completed. First Amended Complaint ("FAC"), ¶ 37.

After Elsie's death, defendant Christine Dillon, who had told Barbara Miller that she was the personal representative of Elsie's estate, said that Grace Parish Christian Church would pay $500,000 to a charity or charities of Barbara and Robert Miller's choice on behalf of Anne and Molly. The first amended complaint alleges that defendant Dillon knew of Elsie's intended gift to Anne and Molly and proposed the charitable payment so that Anne and Molly would not make

1    a claim against Elsie's estate.  FAC, ¶ 38.

2        On August 11, 2002, two checks totaling $500,000 were issued to First Hawaiian Title

3    Company.  The checks were issued to a title company because the Millers' chosen charity, Maui

4    Preparatory Academy, was in the process of buying real property for use as a school, and the

5    $500,000 was to be used for that purchase.  The two checks were drawn on an account owned by

6    Real Estate Trust, which plaintiffs believe is a "dba" for defendant Greensprings.  The checks

7    were signed by defendant Bohn, and "were intended to be performance on the agreement by

8    defendant Dillon (and now by Defendant Greensprings) to fulfill Elsie Turchin's [sic] promise to

9    make a gift to Anne and Molly as indicated in Elsie's November 23, 2000 letter."  FAC, ¶ 39.

10        Barbara and Robert Miller later learned that there was no entity named First Hawaiian

11    Title Company, and in an October 9, 2002 letter to defendants Bohn and Dillon, they asked that

12    the checks be reissued in the name of First Hawaii Title Corporation.  After not hearing from

13    Bohn and Dillon for some time, in January 2005 the Millers demanded that they reissue a check

14    to Maui Preparatory Academy.  On January 10, 2005, defendant Bohn delivered to the Millers a

15    cashier's check for $500,000 made out to Maui Preparatory Academy.  FAC ¶ 39.

16            The purpose of making the check to Maui Preparatory Academy was to make
         a gift to the Academy on behalf of Anne and Molly. Again, it was believed to
17        be more efficient to make the payment directly to Maui Preparatory Academy
         rather than for Anne and Molly to receive the money directly, as intended by
18        Elsie Turchen. Mr. and Mrs. Miller wrote to Bohn and Dillon still believing
         that they had the authority to issue checks for this purpose. Thereafter, on
19        January 10, 2005, a cashier's check was delivered by Defendant
         Greensprings to Mr. and Mrs. Miller in the amount of $500,000 made out to
20        Maui Preparatory academy, exactly as directed by the Millers. Up until this
         point, neither Bohn, Dillon, nor anyone at Greensprings ever indicated that
21        they were unauthorized to issue checks as requested by Mr. and Mrs. Miller.

22        FAC, ¶ 40.

23        This reference to the fact that plaintiffs "directed" Bohn and Dillon as to the issuance of a

24    check for $500,000 is a reference to a letter of November 14, 2004, from plaintiffs "Bob &

25    Barbara Miller On [six] behalf of Molly Miller" to Christine Dillon and Don Bohn, attached to

26

27

28

---
2

1    defendants' accompanying Request for Judicial Notice as Exhibit I.[1]  The letter in fact states that

2    defendants Dillon's and Bohn's

> behavior would tend to suggest that you have something to hide and that
> more importantly you are afraid of any inquiry that might result in
> discovery . . . .  [I]f you decide not to [issue a check for $500,000], you will
> be forcing us to commence an investigation of your handling of Grandma
> Teddy's estate if for no other reason than to find out the reason for your
> peculiar behavior and just what it is you are trying to hide with respect to
> Grandma Teddy's along with Grandpa Ward's respective estates.

7         Many months after receiving the cashier's check payable to Maui Preparatory Academy,

8    the Millers again asked defendants Bohn and Dillon to reissue the check, this time as three

9    checks totaling $500,000 payable to Stanford University, Seabury Hall, and West Maui Carden

10   Academy.  In a telephone conversation on August 10, 2005, defendant Bohn told Barbara Miller

11   that it would be done the next day.  FAC, ¶ 42.

12        At the same time, Barbara Miller wrote a letter to Carleton L. Briggs, who plaintiffs

13   believe is a member of defendant Greensprings' board of directors, to explain why the three

14   checks were needed instead of one.  The next day, Briggs wrote back to Barbara Miller asking

15   that the $500,000 cashier's check payable to Maui Preparatory Academy be returned because of

16   litigation against Greensprings, Bohn, and Dillon by Penny D. Anderson, who is Elsie Turchen's

17   granddaughter and Molly Miller's birth mother.  Briggs's letter said that a motion would have to

18   be made in the "Anderson v. Greensprings" litigation to have the checks reissued; that such a

19   motion would be made with all possible haste; and that the $500,000 would be maintained in a

20   separate, interest-bearing account earmarked for the three charities named by the Millers.

21   Barbara Miller returned the cashier's check on August 16, 2005, but no motion was made to

---

23   [1]Documents referred to in the complaint may be attached to a Rule 12(b)(6) motion to show that they do not
24   support the plaintiff's claim. See *Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449, 454 (overruled on other grounds in
*Galbraith v. County of Santa Clara* (9th Cir. 2002) 307 F.3d 1119, 1127).  Documents may be considered if the
complaint refers to such document; the document is "central" to the plaintiff's claim; and no party questions the
25   authenticity of the copy attached to the 12(b)(6) motion.  *Branch v. Tunnell, supra*, 14 F.3d at 454.  These elements
are met here.  The complaint states that the Millers wrote to Bohn and Dillon but does not attach the letter; the
26   contents are central to their claim; and the document was produced by plaintiffs in discovery and is between the
parties to this action, so that its authenticity can readily be determined.  The court may consider the full text of the
27   document. See *In re Stac Electronics Securities Litig.* (9th Cir. 1996) 89 F.3d 1399, 1405.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GREENSPRINGS'
FRCP 12(b)(6) MOTION

1    reissue the three checks, and plaintiffs allege that the $500,000 was never put in a separate,

2    interest-bearing account earmarked for the charities.  FAC, ¶¶ 43-44.

3

4    **COURT'S ORDER RE AMENDED COMPLAINT**

5         Defendants Greensprings and Donald Bohn brought motions for dismissal of the original

6    complaint under FRCP 12(b)(6).  On March 24, 2008, the Court granted the 12(b)(6) motions

7    and gave plaintiffs Barbara Miller, as guardian ad litem for Molly, and Anne Miller leave to

8    amend their complaint.  The Court specifically directed the plaintiffs to address the following

9    points in their amended complaint:

10

11   **1.    Breach of contract—damages**

12        The court directed plaintiff Barbara Miller to

13        explain how and why she was damaged in the amount of $500,000 if the
          alleged agreement with defendants was for a gift of that amount to a charity
14        or charities.  As pled, Miller has at most stated facts sufficient to show
          damages only if her breach of contract claim was based on a third-party
15        beneficiary contract theory.

16        Order Granting Defendants' Motions to Dismiss With Leave to Amend,
          5:9-13.

17

18        In apparent response to this directive, plaintiffs amended their complaint to add plaintiffs

19   Barbara Miller and Robert Miller, as individuals.  They also have added allegations that they

20   have sustained damages of $500,000, or alternatively, of $200,000, because, in reliance upon

21   their expectation of receiving $500,000 from Greensprings, Barbara and Robert Miller pledged a

22   gift of $200,000 to Seabury Hall, and that Seabury Hall is now pursuing collection of the

23   Millers' pledge from them personally.  FAC, ¶ 45.

24        The first amended complaint adds Barbara and Robert Miller, in their individual

25   capacities, as new plaintiffs, together with new claims that they individually suffered damages,

26   claims for specific performance and intentional and negligent interference with the right to

27   inherit.  These amendments were done without leave of this Court and exceed the scope of the

28

4

1    Court's order granting defendants' first FRCP 12(b)(6) motion with leave to amend.  Nor have

2    plaintiffs Barbara Miller and Robert Miller sought to intervene as provided by FRCP 24.

3    Accordingly, concurrently with this motion, defendant Greensprings has moved to strike

4    improper allegations of the first amended complaint under FRCP 12(f).

5        The new allegation concerning the alleged $200,000 damage Barbara and Robert Miller

6    have sustained—albeit improperly added—does nothing to remedy the first amended

7    complaint's fatal deficiency.  Plaintiffs have made no attempt to state a valid claim under a

8    third-party beneficiary theory and still cannot establish the requisite elements to state a claim for

9    breach of contract for any of the named plaintiffs.  Moreover, amending the complaint to add the

10   new plaintiffs was improper because a claim by these plaintiffs individually is barred by the

11   statute of limitations.  Finally, there is evidence suggesting that plaintiffs' allegations concerning

12   the $200,000 pledge to Seabury Hall may be false and misleading.

13

14   **2.    Breach of contract—promissory estoppel**

15       Next, the Court noted that the promissory estoppel claim was deficient because plaintiffs

16   had not alleged what claims they would have had against Greensprings as a result of decedent's

17   gift of the Belmont house to Greensprings.  Order, 5:14-18.  In apparent response, plaintiffs now

18   allege the existence of a conspiracy among defendants "to fraudulently induce Elsie Turchen into

19   transferring over $20 million in real and personal property to Greensprings, mostly on January

20   12, 1999 (including the Malcolm [sic] Avenue property.)"  FAC ¶ 41.  But this entire matter was

21   litigated in the *Anderson v. Dillon* case and settled; the complaint against Greensprings and the

22   other named defendants was dismissed *with prejudice*; and notices of *lis pendens* filed on the

23   real property were withdrawn, including the *lis pendens* filed on the Malcomb Avenue, Belmont

24   property allegedly offered by Elsie Turchen to Anne and Molly Miller.  Thus, the doctrine of *res*

25   *judicata* prohibits reconsideration of the matter in this case.

26

27

28

1    The Court further noted, "there does not appear to have been an enforceable agreement

2    between the decedent and her great grandchildren for the gift of the house at 325 Malcomb

3    Avenue, Belmont, California."  The Court directed plaintiffs to explain "how the decedent's

4    apparent intent to give a gift to Anne and Molly provides Miller with grounds to bring a claim

5    against either Greensprings or the Estate, or both."  Plaintiffs' FAC makes no attempt to explain

6    how the unenforceable, failed, and void gift gives plaintiffs the right to bring any such claim.

7

8    **3.    Additional explanation**

9    Finally, the Court noted that plaintiffs "may wish to further develop the factual record to

10   explain the following:

> (1) why the $500,000 went to the Estate or, the issues in the *Anderson v.
> Greensprings* litigation and their relevance to this case; (2) how reliance on
> Defendants' representations was reasonable, specifically, that reliance on
> Atty. Briggs' representations (on behalf of Greensprings) was reasonable
> *even after* learning of the *Anderson v. Greensprings* litigation; (3) what
> obligations Miller has to any charities as a result of the agreement with
> Defendants; (4) why the Estate is NOT an indispensable party OR why
> Defendants should not be dropped from the lawsuit altogether if it is the
> Estate, and not the Defendants, that is in possession of the $500,000; and (5)
> anything else Miller thinks is necessary to support or explain the causes of
> action in her amended complaint.

17   In apparent response to the first item, plaintiffs have added a section under "Background

18   Facts: Conspiracy to Misappropriate Elsie Turchen's Estate," which simply incorporates

19   allegations from the *Anderson v. Greensprings* litigation.  See Request for Judicial Notice served

20   and filed herewith, Exhibits A through C.  But that case was settled and all claims dismissed

21   with prejudice (see Request for Judicial Notice, Exhibit E); thus, claims raised there can provide

22   no basis for plaintiffs' claims here.

23   Plaintiffs have made no attempt whatsoever to address the issues of how reliance on

24   defendants' representations was reasonable; why the Estate of Elsie Turchen is not an

25   indispensable party; or why defendants should not be dropped from the lawsuit, since plaintiffs

26   no longer dispute that it is the Estate—not defendants—that is in possession of the $500,000.

27

28

# ARGUMENT

## 1.    Dismissal is proper where the plaintiffs cannot prove any set of facts that would entitle them to relief.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the plaintiff can prove facts to support a claim that would merit relief. 2 Schwarzer, et al., CAL. PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL (rev. ed. 2007) § 9:187, at 9-53. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Even under these liberal rules, plaintiffs' first amended complaint must be dismissed because the facts alleged affirmatively show that plaintiffs are not entitled to relief.

## 2.    Plaintiffs' claim for breach of contract—promissory estoppel is fatally deficient.

### A.    Plaintiffs cannot recover damages for breach of contract.

The complaint's first claim is for "breach of contract—promissory estoppel." Under the doctrine of promissory estoppel, a promisor is bound by the promise if he or she should reasonably expect a substantial change of position in reliance on the promise, and injustice can be avoided only by its enforcement. *Smith v. City and County of San Francisco,* 225 Cal.App.3d 38, 48 (1990). The promisor may be bound to perform the promise despite lack of consideration because "the estoppel is a substitute for consideration." 1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Contracts," § 244, at 275.

1    Promissory estoppel claims are essentially contract actions without the consideration

2    element, and any damages recoverable, as in contract cases, are limited to those the breaching

3    party caused. *US Ecology, Inc. v. State of California,* 129 Cal.App.4th 887 (2005).

4    [W]hile conceptually, promissory estoppel is distinct from contract in that the
     promisee's justifiable and detrimental reliance on the promise is regarded as
5    a substitute for consideration required as an element of an enforceable
     contract, there appears to be no rational basis for distinguishing the two
6    situations in terms of the damages that may be recovered.

7    *Id.* at 903 (internal quotation marks, brackets and ellipses omitted).

8

9    **(1)    *The purported gift by Elsie Turchen was not enforceable.***

10    Plaintiffs cannot prove that they have been damaged: Elsie Turchen never made a gift to

11    plaintiffs. The elements of a gift are: (1) a donor competent to contract; (2) a voluntary intent on

12    the donor's part to make a gift; (3) delivery of the gift, either actual or symbolic; (4) the donee's

13    acceptance, either actual or imputed; (5) complete divestment of all control by the donor; and (6)

14    lack of consideration. *Burkle v. Burkle,* 141 Cal.App.4th 1029, 1036 fn. 5 (2006). The first

15    amended complaint alleges that Elsie Turchen intended to give the Belmont house to plaintiffs,

16    or that she promised to make such a gift, but it is apparent that the gift was not completed.

17    Indeed, plaintiffs acknowledge that the gift from Elsie was not completed. They allege that the

18    $500,000 check payable to Maui Preparatory Academy was "intended to be performance on the

19    agreement by defendant Dillon *to fulfill Elsie Turchin's* [sic] *promise to make a gift* to Anne and

20    Molly as indicated in Elsie's November 23, 2000 letter." FAC, ¶ 39 (emphasis added). The

21    allegation that defendant Dillon agreed "to fulfill [Elsie's] promise to make a gift" effectively

22    alleges that Elsie *did not* fulfill that promise.[2]

23    _____

24    [2]Plaintiffs repeatedly allege that Elsie Turchen "promised" to make a gift, but in the November 23, 2000
     letter (quoted in ¶ 11 of the first amended complaint), which purportedly contains the promise, Elsie posed a
25    question to the Millers, i.e., *would they consider* the gift of a house for the plaintiffs? This question has somehow
     been transformed into a promise. Yet even if Elsie had "promised" to make such a gift, it would not have been
26    enforceable. A prospective donee has no right to compel a gift not yet made. And while a contract to make a will or
     devise is enforceable, it must be a contract supported by consideration. Cal. Probate Code § 21700. Plaintiffs
27    repeatedly allege that they were induced not to make a claim against Elsie Turchen's estate, but the first amended

28

1    Thus, the promise that plaintiffs seek to enforce is not Elsie Turchen's alleged promise to

2    make a gift of the Belmont house to plaintiffs, but *defendants'* alleged promise to make a

3    $500,000 payment to the charity or charities of Barbara and Robert Miller's choice on behalf of

4    Anne and Molly.  FAC, ¶ 38.  If that promise is enforceable as a contract, whether based on

5    consideration or promissory estoppel, it would be a third-party beneficiary contract, *i.e.,* one

6    made expressly for the benefit of a third person (the charity or charities).  The third-party

7    beneficiary can enforce such a contract (Civil Code § 1559), but the extent of the promisee's

8    enforcement is limited if the third party is a donee beneficiary rather than a creditor beneficiary.[3]

9    Here, the first amended complaint expressly alleges that the purpose of making the

10    $500,000 check payable to Maui Preparatory Academy "was to make a gift to the Academy on

11    behalf of Anne and Molly."  FAC, ¶ 40.  Thus, if the charities in question are third-party

12    beneficiaries, they are donee beneficiaries.  If a promisor does not perform its obligation to a

13    donee beneficiary, the promisee is not liable to the beneficiary for such performance and suffers

14    no actual damage.  *Marriage of Smith & Maescher,* 21 Cal.App.4th 100, 106-107 (1993).

15    Accordingly, if a promisor does not perform its obligation to a donee beneficiary, the promisee

16    "has no cause of action for breach of contract damages."  *Id.,* at 107.  Thus, even if plaintiffs can

17    prove the facts alleged in their first amended complaint, those facts would establish that

18    plaintiffs have not been damaged.  In short, plaintiffs cannot prove *any* set of facts that would

19    entitle them to recover damages for breach of contract.

20

21

22

23    complaint's other allegations demonstrate that plaintiffs had no claim against Elsie's estate.  At most, Elsie promised to make a gift to plaintiffs (i.e., there was no enforceable agreement supported by consideration), of a house she already had deeded to Greensprings in 1999, and then failed to complete the gift before her death.

24

25    [3]A third party is a "donee beneficiary" if the promisee's contractual intent is to make a gift to the third party.  *Dateline Builders, Inc. v. City of Santa Rosa,* 146 Cal.App.3d 520, 526 (1983).  A third party is a "creditor beneficiary" if "no intention to make a gift appears from the terms of the promise, and performance of the promise

26    will satisfy a duty of the promisee to the beneficiary."  *Hartman Ranch Co. v. Associated Oil Co.,* 10 Cal.2d 232, 244 (1937).  If a promisor does not pay the promisee's debt to a creditor beneficiary, the promisee remains liable to

27    the creditor beneficiary and may recover damages from the promisor for breach of contract.

28

1    *(2)    The $200,000 pledge purportedly made to Seabury Hall does not allege the requisite*

2    *damages to save this claim.*

3         Plaintiffs Barbara and Robert Miller now allege that, in reliance on defendants'

4    representations that $500,000 would be paid by Greensprings "as demanded by Plaintiffs" (FAC

5    ¶ 54), they made a pledge of $200,000 to Seabury Hall, and that "on March 20, 2007, Seabury

6    Hall began pursuit of the payment of the pledge by Barbara Miller and Robert Miller."  FAC

7    ¶ 57.  Plaintiffs are referring to a March 20, 2007 letter to Bob and Barbara Miller from the

8    Headmaster and President of the Board of Trustees.  See Exhibit J of the Request for Judicial

9    Notice served and filed herewith.  The letter notes that Seabury Hall has not received payment

10    on the $200,000 pledge and then states, "We were very pleased to honor the Miller Family

11    Foundation for these wonderful gifts by including the name of the Foundation on the major

12    donor plaque, the classroom, and the all-donor plaque."  The letter goes on to suggest that those

13    families or foundations that do not fulfill their pledges may have their names removed from the

14    commemorative donor plaques.

15         Even if this allegation concerning Barbara and Robert Miller's alleged $200,000 damage

16    had been properly added,[4] it cannot save the first amended complaint.  It appears that the pledge

17    plaintiffs rely on in claiming that they have suffered damages of $500,000, or perhaps $200,000,

18    was in fact made by the Miller Family Foundation, a separate legal entity, not by Barbara or

19    Robert Miller individually.  Thus, it does not appear that Barbara and Robert Miller face any

20    personal liability or damage should they fail to pay the pledge, other than perhaps having the

21    Miller Family Foundation's name removed from the school plaques.  If in fact a separate legal

22    entity made the pledge to Seabury Hall, then the allegations of the first amended complaint

23    appear to be misleading at best and may constitute a fraud upon the Court.  In any event, they do

24    not establish that Molly Miller or Anne Miller have sustained any damages.

25

26

27        [4]In fact, it was not properly added.  See defendant's concurrent motion to strike under FRCP 12(f).

28

1    The element of damages is in fact missing from each and every cause of action stated by

2  Anne and Molly Miller.  Plaintiffs Barbara and Robert Miller are attempting to assert damages

3  that they allegedly have sustained to satisfy the requisite element of damages for Anne and

4  Molly Miller.  But this they cannot do.  Each plaintiff must be able to state a claim that meets all

5  the elements of each cause of action.  The new allegations concerning the alleged $200,000

6  pledge to Seabury Hall do nothing to remedy the lack of damages sustained by Anne or Molly

7  Miller.

8

9  **B.     Plaintiffs' forbearance to pursue a wholly unenforceable claim was not valid**

10     **consideration to support a new oral contract.**

11     Plaintiffs contend that their forbearance from making any claim against the Turchen

12  Estate is sufficient consideration to support an oral contract to pay them $500,000.  Forbearance

13  to sue on a claim or compromise of a claim, either valid, doubtful, or disputed (but not void) is

14  good consideration.  1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2007) Contracts § 211

15  at 246-247.  But "[i]f a claim is wholly invalid, neither forbearance to sue nor compromise

16  thereof can be good consideration."  *Id.* § 220 at 253.

17     Plaintiffs contend that a letter dated November 23, 2000, from Elsie Turchen shows that

18  it was her "clear" intent to give Anne and Molly Miller the house located at 325 Malcomb

19  Avenue, Belmont, California.  But this property already had been given by Elsie G. Turchen, as

20  Trustee of the Penny Trust, to the Greensprings Fellowship Trust by grant deed dated January

21  12, 1999, subsequently recorded in 2005.  (So the Court may have a complete picture, all the

22  recorded deeds to Greensprings, including that for the Malcomb Avenue house, are attached as

23  Exhibit F to the Request for Judicial Notice served and filed herewith.)

24     Elsie Turchen's original alleged promise to make a gift to Anne and Molly Miller was

25  wholly unenforceable: Elsie Turchen already had deeded the Belmont property to Greensprings

26  well before she allegedly offered it to the Millers on November 23, 2000.  Moreover, the gift was

27

28

1   not completed during her lifetime.  On both these bases, the purported gift was wholly void.

2   Therefore, forbearance to bring the claim against the Estate could not provide valid consideration

3   for another promise—e.g., a promise to pay $500,000.  Plaintiffs do not allege that defendant

4   Dillon made any such promise on Greensprings' behalf, or that anyone promised to pay money

5   to plaintiffs themselves.  The alleged initial promise was that Grace Parish would make a

6   donation to charity, not that the Estate of Elsie Turchen would make a gift to plaintiffs.  FAC ¶

7   38.

8

9   **C.    An agreement made under duress or threat is voidable.**

10       The reference in Plaintiffs' amended complaint (FAC, ¶ 40) to the fact that plaintiffs

11  "directed" Bohn and Dillon as to the issuance of a check for $500,000 is a reference to a letter of

12  November 14, 2004, from plaintiffs "Bob & Barbara Miller On [sic] behalf of Molly Miller" to

13  Christine Dillon and Don Bohn, attached to defendants' accompanying Request for Judicial

14  Notice as Exhibit I.  That letter states that, if defendants do not issue a check for $500,000 as

15  directed by plaintiffs, "you will be forcing us to commence an investigation of your handling of

16  Grandma Teddy's estate if for no other reason than to find out the reason for your peculiar

17  behavior and just what it is you are trying to hide with respect to Grandma Teddy's along with

18  Grandpa Ward's respective estates."

19       An agreement made under duress is voidable.  See REST.2D, CONTRACTS § 175; 28

20  WILLISTON ON CONTRACTS (4th ed. 1990) § 71:8.  The threat of duress or "menace" is defined

21  under Civil Code § 1570 as a threat of unlawful and violent injury to the person or property of

22  any person or a threat of injury to the character of a person.  A threat of criminal prosecution is a

23  threat of injury to the character and constitutes menace.  In *Merchants' Collection Agency v.*

24  *Roantree* (1918) 37 Cal.App. 88, 90, a bookkeeper and manager was charged by the head of the

25  firm with having withdrawn more money than he was entitled to take as salary and threatened

26  with prosecution for embezzlement unless he signed a note for the alleged overdraft.  The court

27

28

1    held that the note was unenforceable. *Id.*

2        Plaintiffs' November 14, 2004 letter contains what may be considered a threat to have

3    defendants "investigated" if they did not issue a $500,000 check as "directed" by plaintiffs.

4    Thus, any agreement to issue such a check is unenforceable as made under duress.

5

6    **D.**    **Plaintiffs cannot establish reasonable reliance on defendant's representations.**

7        Plaintiffs contend that they acted reasonably in relying on defendant Dillon's alleged

8    promise to pay $500,000 from Estate funds to a charity of their choice on behalf of Anne and

9    Molly Miller, in forbearing to make a claim against the Estate of Elsie Turchen for payment of

10   the $500,000.  But it was not reasonable for plaintiffs to believe that Dillon was the personal

11   representative of Elsie Turchen's estate when they had received notice of the *Anderson v. Dillon*

12   litigation, clearly indicating that the plaintiff in that action, Penny D. Anderson (Molly's birth

13   mother), was suing in *her* capacity as representative of the Estate.  Furthermore, it was not

14   reasonable for plaintiffs to think that any personal representative could unilaterally pay out

15   $500,000 from an estate on his or her own initiative and without court authorization.  Probate

16   Code § 9832(b) requires court authorization for the compromise or settlement of a matter that

17   requires the estate to pay out any amount in excess of $25,000.  Finally, it was unreasonable for

18   plaintiffs not to protect their alleged interest by making some kind of claim in the probate

19   proceeding or at least by intervening in the *Anderson v. Dillon* litigation, where plaintiffs knew

20   the rightful ownership of the returned $500,000 was to be determined.

21

22   **E.**    **Because Greensprings' payment of $500,000 to plaintiffs would disqualify**

23         **Greensprings as a tax exempt organization, it would be an act beyond the powers of**

24         **Greensprings' trustee, and would constitute an illegal contract.**

25       The promise the first amended complaint alleges is a promise to pay $500,000 to a

26   charity or charities, not a promise to pay that sum (or any other) to plaintiffs.  Greensprings

27   would not and could not promise to pay the money to plaintiffs because doing so would

28
13

1    disqualify it as a tax exempt organization under the tests established in 26 C.F.R.

2    § 1.501(c)(3)-1(a)(1), § 1.501(c)(3)-1(b)(1), and § 1.501(c)(3)-1(c)(1)-(2).[5]  Greensprings'

3    payment of $500,000 to plaintiffs would be fatal to its status as an exempt organization, and

4    Greensprings could not and did not engage in any such transaction.

5         Moreover, paying plaintiffs $500,000 would be an act contrary to Greensprings' exempt

6    purpose and in excess of its trustee's powers.  It would be analogous to an *ultra vires* act by a

7    corporation.  *McDermott v. Bear Film Co.,* 219 Cal.App.2d 607, 610 (1963) (an *ultra vires* act is

8    one "beyond the purpose or power of the corporation").  Greensprings is an Oregon trust, and the

9    payment of $500,000 to plaintiffs would be an act beyond the powers of its trustee under

10   applicable California and Oregon statutes.[6]

11        Finally, any contract to pay plaintiffs $500,000 would be an illegal contract in violation

12   of state and federal laws.  An illegal contract is void.  *Kashani v. Tsann Kuen China Enterprise*

13   *Co.,* 118 Cal.App.4th 531, 541 (2004); *Uhlmann v. Kin Daw,* 97 Or. 681 (1920) ("an agreement

14   may not be enforced if it is illegal.").  A contract is illegal if it is: (1) contrary to an express

15   provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or

16   _____

17        [5] Tax exempt status:
          To qualify as a tax exempt organization described in 26 U.S.C. § 501(c)(3), the organization must be
18   organized and operated for one or more exempt purposes.  26 C.F.R. § 1.501(c)(3)-1(a)(1).  The organizational test is
     met if the organization's articles limit its purposes to one or more exempt purposes and do not expressly empower
19   the organization to engage, other than as an insubstantial part of its activities, in activities that do not further exempt
     purposes.  *Id.,* § 1.501(c)(3)-1(b)(1).  The operational test is met if the organization operates exclusively for exempt
20   purposes, has no substantial nonexempt purpose, and if no benefits inure from it to private individuals.  *Id.,*
     § 1.501(c)(3)-1(c)(1)-(2); *Church of Spiritual Technology v. United States,* 26 Cl.Ct. 713, 730 (1992).  In *Wendy L.*
21   *Parker Rehabilitation Foundation, Inc. v. Commissioner,* 52 TCM 51 (1986), a foundation created to aid coma
     victims sought a declaratory judgment that it was an exempt organization under § 501(c)(3).  Approximately 30% of
22   its income was expected to be expended for the benefit of Wendy L. Parker, a recovering coma patient whose father,
     mother, and brother were the foundation's president, secretary-treasurer, and vice president respectively.  The Tax
23   Court held that the foundation was not an exempt organization.  *Id.* at 54.

24        [6] Act in excess of trustee's power
          Trustees have a duty to administer the trust "according to the trust instrument."  Cal. Probate Code § 16000;
25   Oregon Rev. Stats. § 130.650 ("the trustee shall administer the trust in good faith, in accordance with its terms and
     purposes . . . .").  They have the powers conferred by the trust instrument, the powers conferred by statute except as
26   limited by the trust instrument, and the power to perform "any act that a trustee would perform *for the purposes of*
     *the trust* under the standard of care provided in Section 16040 or 16047."  Cal. Prob. Code § 16200 (emphasis
27   added); Oregon Rev. Stats. § 130.665 ("A trustee shall administer the trust as a prudent person would, by
     *considering the purposes*, terms, distributional requirements and other circumstances . . . ." (emphasis added)).

28   _____
                                                         14

1  (3) otherwise contrary to good morals.  Civ. Code § 1667.  A violation of federal law constitutes

2  a violation of law for purposes of determining whether a contract is unenforceable as contrary to

3  California's public policy.  *Kashani, supra,* at 543.

4      Any contract to pay plaintiffs $500,000 would violate state law because it would be an

5  act contrary to Greensprings' purpose and in excess of its trustee's powers.  Such a contract also

6  would violate federal law prohibiting the transfer of an exempt organization's assets for the

7  benefit of private individuals, which would cause Greensprings to lose its exempt status.

8

9  **3.     Plaintiffs breach of contract claim is time-barred.**

10     Code of Civil Procedure § 339 provides that an action on an oral contract must be

11  brought within two years.

12

13  **A.     The oral representations occurred more than two years before the First**

14  **Complaint was filed.**

15     Plaintiffs rely on several key oral representations they allege defendants made on behalf

16  of Greensprings; they contend that these representations constituted an oral contract to pay them

17  $500,000.

18     Plaintiffs contend that defendant Dillon made an oral representation that Grace Parish

19  Christian Church would pay $500,000 (in place of the gift of the Malcomb Avenue property) to a

20  charity or charity of Barbara and Robert Miller's choice on behalf of Anne and Molly Miller at

21  some time before August 11, 2002, when two checks were issued to First Hawaiian Title

22  Company.  FAC, ¶¶ 38-39.  After rejecting those checks, plaintiffs allege that on January 10,

23  2005, at plaintiffs' request, Greensprings agreed to and did issue a $500,000 check to Maui

24  Preparatory Academy.  FAC, ¶ 40.  On July 22, 2005, plaintiffs requested that the checks be

25  reissued to three new charities, and plaintiffs contend that defendant Bohn agreed to do so on

26  August 10, 2005.  FAC, ¶ 40.  Finally, plaintiffs allege that, in a telephone conversation of

27  August 11, 2005, Carleton Briggs requested the return of the $500,000 cashier's check that had

28

15

1   been issued by Greensprings, represented that a motion would be made in the *Anderson v. Dillon*

2   litigation for issuance of a check to the Miller's latest choice of charities, and stated that funds to

3   cover the $500,000 would be maintained in an interest bearing account.  FAC ¶ 44.

4       The last act in this series of oral representations on which plaintiffs rely occurred on

5   August 11, 2005.  The complaint was filed on August 17, 2008, and the first amended complaint

6   was filed on March 28, 2008, both *after* the two-year statute of limitations on the alleged oral

7   contract had run.

8

9   **B.    The amendments after the statute of limitations had run do not "relate back" to the**

10      **original complaint.**

11      The first amended complaint added Barbara Miller and Robert Miller as plaintiffs in their

12  individual capacities.  The FAC also added a new claim that, in reliance on defendants' promise

13  that Greensprings would pay $500,000 to a charity or charities of their choice (FAC ¶ 54), they

14  pledged a gift of $200,000 to Seabury Hall (FAC ¶ 57) , and that Seabury Hall has begun

15  "pursuit of the payment of the pledge by Barbara Miller and Robert Miller."  FAC ¶ 57.  Thus,

16  Barbara and Robert Miller now claim that they have been damaged in their individual capacities

17  in the amount of  $200,000.  FAC ¶ 60.  But even if this claim were properly added, the two-year

18  statute of limitations on their claim for breach of an oral contract would have run on or about

19  August 11, 2007, and the first amended complaint was not filed until March 28, 2008.

20      FRCP 15(c),[7] which governs relation back of amendments, does not specifically address

21  whether amendments adding or changing plaintiffs "relate back" to the date the original

22

23      [7] (1) When an Amendment Relates Back.
    An amendment to a pleading relates back to the date of the original pleading when: A) the law that provides the
24  applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of
    the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or (c) the
25  amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is
    satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be
26  brought in by amendment:
        (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
27      (ii) knew or should have known that the action would have been brought against it, but for a mistake
    concerning the proper party's identity.

28

1   complaint was filed.  But rules regarding adding defendants are applied by analogy.  *SMS*

2   *Financial, Ltd. Liability Co. v. ABCO Homes Inc.,* 167 F.3d 235, 245, fn. 29 (5th Cir. 1999).

3   Amendments naming new parties plaintiff are permissible only if there is no change in the claim

4   being asserted.  *Besig v. Dolphin Boating and Swimming Club,* 683 F.2d 1271, 1278 (9th Cir.

5   1982).  "Relation back imposes no prejudice when an amendment restates a claim with no new

6   facts . . . .  An amendment changing plaintiffs may relate back when the relief sought in the

7   amended complaint is identical to that demanded originally."  *Ibid.*

8        Plaintiffs Barbara Miller and Robert Miller improperly seek to assert a new claim on their

9   own behalf—not merely in a representative capacity as guardian ad litem for Molly Miller—

10  after the statute of limitations has run on a claim for breach of an oral contract.  This claim does

11  not "relate back" to the time of filing the original complaint and is therefore clearly time-barred.

12       Moreover, as discussed in the accompanying motion to strike, these new plaintiffs have

13  not followed the rules prescribed for intervening in this case.  FRCP 24 requires plaintiffs to

14  make a written motion to intervene that must be filed and served under FRCP Rule 5.  The

15  motion must state the grounds for intervention and be accompanied by the pleading that sets out

16  the claim for which intervention is sought.  Rule 24(c).

17

18  **4.      Plaintiffs have no standing to assert their claims.**

19       Standing to sue in federal court is governed by federal law, even in diversity cases based

20  on state law claims and in actions removed from state court.  *Wheeler v. Travelers Ins. Co.,* 22

21  F.3d 534, 537 (3rd Cir. 1994); *Fiedler v. Clark,* 714 F.2d 77 (9th Cir. 1983) 79-80 (state statute

22  cannot confer standing where none exists under federal law).

23       Article III constitutional requirements require, among other things, "injury in fact."

24  Standing generally requires a showing that the plaintiff has suffered actual loss, damage, or

25  injury, or is threatened with impairment of his or her own interests.  *Gladstone Realtors v.*

26  *Village of Bellwood,* 441 U.S. 91, 100 (1979); *Bullfrog Films, Inc. v. Wick,* 847 F.2d 502, 506

27  (9th Cir. 1988).  Plaintiffs must demonstrate standing separately for each form of relief sought

28
                                              17

1    (i.e., damages, specific performance, etc.).  *Friends of the Earth, Inc. v. Laidlaw Environmental*

2    *Services (TOC), Inc.,* 528 U.S. 167, 184 (2000).  Moreover, the issue of standing is not subject to

3    waiver and must be considered by federal courts even if the parties fail to raise it.  *United States*

4    *v. Hays,* 515 U.S. 737, 742 (1995).

5      Plaintiffs' action suffers from a fatal defect: they cannot prove that they have suffered

6    damages.  There simply was never any promise made by defendants to pay any amount of money

7    *to them.*  Anne and Molly Miller have suffered no loss; neither have Barbara or Robert Miller.

8    What's more, the Millers have no standing to bring a claim on behalf of the third-party charities

9    who would have been the donee-beneficiaries of defendants' alleged promises.  There has been

10   no allegation that plaintiffs have any authority to represent or otherwise bring a claim on behalf

11   of Seabury Hall or any other would-be beneficiary.  They simply cannot amend to cure this

12   defect, and thus they cannot state a proper claim for relief.

13

14   **5.    Plaintiffs cannot recover damages for conversion.**

15     The elements of a claim for conversion are: (1) plaintiff's ownership or right to

16   possession of tangible property at the time of the conversion; (2) defendant's conversion

17   (wrongful taking or disposition); and (3) damages.  5 Witkin, CALIFORNIA PROCEDURE (4th ed.

18   1997) "Pleading," § 660, at 116.  It has long been established that one who has neither title nor

19   any right to possession of the property may not sue for conversion.  *Yukon River Steamboat Co.*

20   *v. Gratto*, 136 Cal.538, 542 (1902).  Money can be the subject of conversion only if a specific,

21   identifiable sum is involved.  *Haigler v. Donnelly,* 18 Cal.2d 674, 681 (1941); *Vu v. California*

22   *Commerce Club, Inc.,* 58 Cal.App.4th 229, 235 (1997).  But possession of a check made out to

23   someone else is not the equivalent of possession of money.

24     Whether or not the $500,000 here in question is a sufficiently specific, identifiable sum

25   so as to be subject to conversion, plaintiffs can prove no set of facts that would establish their

26   claim for conversion because they never owned or had any right to possess that sum.  Elsie

27   Turchen made no gift to them, in that amount or any other, and defendants' alleged promise was

28

to pay that sum to third parties.  The first amended complaint alleges that the funds were in an account owned by defendant Greensprings (FAC, ¶ 39), and absent the alleged conversion the funds would have been delivered to a charity or charities, not to plaintiffs.  The latter fact also establishes that plaintiffs have not been damaged.  If the alleged "conversion" had not occurred, plaintiffs would be in exactly the same position they are in now.  As with their claim for breach of contract, plaintiffs simply cannot prove any set of facts that would establish a claim for conversion.

### 6.    Plaintiffs cannot state a claim for fraud.

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  5 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Torts," § 772, at 1121.  Plaintiffs' fraud claim alleges false promise fraud, i.e., a promise made without any intent of performing it, which is deemed a factual misrepresentation of the promisor's state of mind.  *Id.,* § 781, at 1131.  Each of the above elements must be proved in order to recover for fraud, including damages.  *Gonsalves v. Hodgson,* 38 Cal.2d 91, 101 (1951) ("The absence of any one of these elements will preclude recovery.").  As one court succinctly put it: "Deception without resulting loss is not actionable fraud."  *Service by Medallion, Inc. v. Clorox Co.,* 44 Cal.App.4th 1807, 1818 (1996).

### A.    Plaintiffs cannot establish damages.

Plaintiffs' fraud claim includes a conclusory allegation that they have been damaged in the sum of $500,000 (FAC ¶ 76), but that simply cannot be true in light of the first amended complaint's other allegations.  The essence of plaintiffs' claims is that defendants promised to pay $500,000 to a charity or charities and failed to do so.  Plaintiffs would not have received the $500,000 under the alleged circumstances, and they are not liable to the charities for that sum.  Thus, plaintiffs' position is exactly the same as it would be absent the alleged fraud.  Since

1   damage is a necessary element of a fraud claim, plaintiffs can prove no set of facts that will

2   establish their claim, because the facts alleged in the first amended complaint show that they

3   were not damaged.

4

5   **B.      Plaintiffs' charge that defendants promised to pay $500,000 without any intent to**

6   **perform must fail because defendants *did* perform.**

7          Plaintiffs charge that defendants promised to "pay the $500,000 as Elsie desired" without

8   any intent to perform.  FAC ¶¶ 68, 71, 73.  But this cannot be so when defendants in fact did

9   perform, at least twice.  They issued checks at plaintiffs' direction, but plaintiffs changed their

10  minds repeatedly as to the beneficiary or beneficiaries of the checks.  Arguably, defendants

11  fulfilled their promise and were discharged from further obligation once Barbara Miller rejected

12  the checks that already had been issued.

13

14  **C.      Plaintiffs' claim of "conspiracy" to defraud Elsie Turchen's Estate has been settled,**

15  **and *res judicata* prevents reconsideration of those claims.**

16         Plaintiffs' first amended complaint alleges the existence of a conspiracy among

17  defendants "to fraudulently induce Elsie Turchen into transferring over $20 million in real and

18  personal property to Greensprings, mostly on January 12, 1999 (including the Malcolm [sic]

19  Avenue property.)"  FAC ¶ 41.  But this entire matter was litigated in the *Anderson v. Dillon*

20  case and settled; the complaint against Greensprings and the other named defendants was

21  dismissed *with prejudice*; and notices of *lis pendens* filed on the real property by the Estate were

22  withdrawn, including the *lis pendens* filed on the Malcomb Avenue property allegedly offered by

23  Elsie Turchen to Anne and Molly Miller.  See Exhibits E and G of the Request for Judicial

24  Notice filed concurrently with this motion.  Plaintiffs seek to step into the shoes of the Turchen

25  Estate and rehash the settled claims from the *Anderson v. Dillon* lawsuit in a vain attempt to

26  shore up the fatally defective claims of their own lawsuit.

27         A dismissal with prejudice bars any later lawsuit on the same claim.  A judgment of

28

1   dismissal entered is a final judgment on the merits, entitled to *res judicata* effect.  *Rice v. Crow*,

2   81 Cal.App.4th 725, 733-734 (2000).  Thus, the doctrine of *res judicata* prohibits reconsideration

3   of the *Anderson v. Dillon* claims in this case.

4

5   **D.    Plaintiffs cannot establish reasonable reliance on defendants' representations.**

6       Plaintiffs contend that they acted reasonably in relying on defendant Dillon's alleged

7   promise to pay $500,000 to a charity of their choice on behalf of Anne and Molly Miller, in

8   forbearing to make a claim against the Estate of Elsie Turchen.  But it was not reasonable for

9   plaintiffs to refrain from filing a claim when they had received notice of the *Anderson v. Dillon*

10  litigation.  It was unreasonable for plaintiffs not to protect their alleged interest by making a

11  claim in the probate proceeding or at least by intervening in the *Anderson v. Dillon* litigation,

12  where plaintiffs knew the rightful ownership of the returned $500,000 was to be determined.

13

14  **7.    Plaintiffs cannot establish their right to the requested declaratory relief.**

15      Plaintiffs initially brought their declaratory relief claim in a California court under Code

16  of Civil Procedure § 1060, which provides that any interested person may sue for a declaration

17  of his or her rights and duties with respect to another, or in respect to property, "in cases of

18  actual controversy relating to the legal rights and duties of the respective parties."  But

19      [w]here facts appear from the face of the complaint which would justify a
        trial court in concluding that its determination is not necessary or proper . . .
20      the court may sustain a general demurrer to the complaint for declaratory
        relief.
21
        *Hagan v. Fairfield,* 238 Cal.App.2d 197, 202 (1965) (internal quotation
22      marks omitted).

23      Federal law is similar.  The Federal Declaratory Judgments Act, 28 U.S.C. § 2201,

24  provides that any court of the United States "may declare the rights and other legal relations of

25  any interested party seeking such a declaration" in a case of "actual controversy within its

26  jurisdiction."  Whether to entertain the action for declaratory relief or grant a motion to dismiss

27  is a matter within the court's discretion.  *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494 (1942);

28

1     *State of California v. Oroville-Wyandotte Irrigation Dist.,* 409 F.2d 532, 535 (9th Cir. 1969).

2

3 > [T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

4

5 > *Id.*, 409 F.2d at 535.

6       The first amended complaint alleges a dispute as to whom the $500,000 "belongs to," and

7 seeks a declaration that it belongs to plaintiffs.  FAC, ¶¶ 79-80.  But the specific facts alleged in

8 the first amended complaint show that there is no "actual controversy" of any substance, and that

9 the $500,000 does not "belong to" plaintiffs.  The first amended complaint alleges that Elsie

10 Turchen "intended" or "promised" to give the Belmont house to plaintiffs as a gift, but it also

11 alleges facts showing that Elsie never completed that gift—much less a monetary gift in the sum

12 of $500,000.  It then alleges defendants' subsequent promise to pay $500,000 to a charity or

13 charities of Barbara and Robert Miller's choice, not to plaintiffs.  These allegations, if proved,

14 would establish that the $500,000 does not, and never did, "belong to" plaintiffs.  Under these

15 circumstances, dismissal of plaintiffs' claim for declaratory relief is mandated.

16 ## 8.   The Court cannot impose a constructive trust on Greensprings when the

17         $500,000 is held by the Estate.

18       The complaint includes what purports to be a separate claim for imposition of a

19 constructive trust.  FAC ¶¶ 83-84.  Constructive trust is a remedy used by a court of equity to

20 compel one who has property to which he or she is not justly entitled to transfer it to the person

21 entitled to it. 13 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Trusts" § 319 at 892.

22 Imposition of a constructive trust is not a substantive claim.  A constructive trust "is not a

23 substantive device but merely a remedy."  *Davies v. Krasna,* 14 Cal.3d 502, 515 (1975).  It "is

24 not an independent cause of action but merely a type of remedy for some categories of

25 underlying wrong."  *Glue-Fold, Inc. v. Slautterback Corp.,* 82 Cal.App.4th 1018, 1023 fn. 3

26 (2000).  Here, there is no "underlying wrong."  The complaint does not state any claim upon

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GREENSPRINGS'
FRCP 12(b)(6) MOTION

1    which relief can be granted, including imposition of a constructive trust.

2        Plaintiffs state that "Defendant Greensprings settled the *Anderson v. Dillon* litigation in

3    part by paying the $500,000 that was represented by Defendants to be paid to charities of the

4    Plaintiffs' choice to the Estate of Elsie Turchen."  FAC ¶ 44.  It is axiomatic that if the $500,000

5    is not in possession of Greensprings, but has been transferred to the Estate of Elsie Turchen, the

6    Court cannot impose a constructive trust on Greensprings to transfer the $500,000 to plaintiffs.

7    Thus, the claim for constructive trust must fail.

8

9    ## 9.    Plaintiffs cannot obtain specific performance because they merely seek

10            money and have an adequate remedy at law.

11        Plaintiffs' amended complaint includes a new count seeking specific performance of the

12    promise to make a $500,000 gift to the charities of plaintiffs' choice.  They assert that they have

13    no adequate remedy at law because any claim they may have had against the Estate of Elsie

14    Turchen is time-barred.  FAC ¶ 90.

15            Inadequacy of the remedy at law is a fundamental condition of any kind of
              equitable relief.  Accordingly, the complaint must set forth facts to show that
16            the breach cannot be adequately compensated for in damages; failing this, it
              does not state a cause of action.

17        5 Witkin, *supra*, "Pleading" § 759 at 215.

18        A complaint for specific performance must allege: (a) the making of a specifically

19    enforceable type of contract sufficiently certain in its terms; (b) adequate consideration, and a

20    just and reasonable contract; (c) plaintiff's performance, tender, or excuse for nonperformance;

21    (d) defendant's breach; and (e) inadequacy of the remedy at law.  5 Witkin, CALIFORNIA

22    PROCEDURE (4th ed. 1997), "Pleading" § 741 at 199.  But if a promisor does not perform its

23    obligation to a donee beneficiary, the promisee is not liable to the beneficiary for such

24    performance and suffers no actual damage.  *Marriage of Smith & Maescher,* , *supra*, 21

25    Cal.App.4th at 106-107.

26        Plaintiffs have not shown a sufficiently definite promise to warrant specific performance.

27

28

1   They have not shown adequate consideration for any promise by defendants.  They admit that

2   defendants tendered performance—more than once—but it was rejected by plaintiffs, who

3   repeatedly changed their minds concerning the charity or charities that should receive the gift.

4   And most glaringly: plaintiffs simply seek money here.  They want the $500,000 that they

5   contend defendants promised to pay.  Thus, they clearly have an adequate remedy at law—

6   although their first amended complaint is inadequate to substantiate it.

7

8   **10.    Plaintiffs' claims for "interference with right to inherit" must fail**

9   **because they had no right to inherit from Elsie Turchen.**

10      Plaintiffs' first amended complaint includes new claims for intentional and negligent

11  "interference with right to inherit."  FAC  ¶¶ 92-102.  They contend that defendants knew of

12  Elsie Turchen's desire to make a gift of the Belmont property to Molly and Anne Miller and

13  engaged in conduct "denying plaintiffs' right to receive the benefits of Elsie's desired gift by

14  defrauding Elsie into transferring her property to Greensprings."  FAC ¶¶ 94, 101.  They also

15  allege on information and belief that Elsie Turchen "left no last will and testament."  FAC ¶ 18.

16      These claims simply make no sense.  Elsie's letter concerning the Belmont property was

17  dated November 23, 2000.  But that property had been deeded to Greensprings by Elsie Turchen

18  on January 12, 1999.  Plaintiffs fail to allege how defendants could have known about Elsie's

19  intention to make a gift to the Miller girls that was not expressed until almost a year after the

20  subject property had been transferred to Greensprings.  Further, plaintiffs were provided by

21  defendant Greensprings with a copy of the Last Will and Testament of Elsie G. Turchen in initial

22  disclosures.  See Request for Judicial Notice, Exhibit K.

23      In any event, assuming *arguendo* the plaintiffs' allegation of intestacy to be true, neither

24  Anne Miller nor Molly Miller had any legal right to inherit from Elsie Turchen under the laws of

25  intestate succession.  Anne Miller was no relation to Elsie Turchen.  Barbara and Robert Miller

26  are no relation to Elsie Turchen.  Molly Miller is the natural daughter of Penny D. Anderson and

27  the natural great-granddaughter of Elsie Turchen.  Molly is the adopted daughter of Barbara and

28

1    Robert Miller.  FAC ¶ 36.

2         Probate Code § 6450 provides that, for purposes of determining intestate succession, the

3    relationship of parent and child exists between the adopted person and the person's adopting

4    parents.  Probate Code § 6451 provides that adoption severs the relationship of parent and child

5    between an adopted person and a natural parent of the adopted person, except under particular

6    circumstances that are not present here.  As a general matter, then, on adoption by Barbara and

7    Robert Miller, any right that Molly Miller may have had to inherit from Elsie Turchen through

8    the laws of intestate succession was severed.  Plaintiffs simply had no "right to inherit" that

9    defendants could have interfered with.

10        Finally, research reveals no reported cases in which courts in California or Hawaii ever

11   have recognized a cause of action for intentional interference with the right to inherit or for

12   negligent interference with the right to inherit.  Thus, these fanciful claims, too, must fail.

13

14   **CONCLUSION**

15        Plaintiffs' first amended complaint alleges a variety of claims, all attempting to establish

16   their entitlement to the sum of $500,000.  But the facts alleged show that plaintiffs are not

17   entitled to the claimed $500,000.  They never received it as a gift, and if the promises alleged in

18   the first amended complaint had been performed, the $500,000 would belong to a charity or

19   charities, not to plaintiffs.  Because plaintiffs cannot prove any set of facts that would entitle

20   them to relief, defendant's motion to dismiss should be granted without leave to amend.

21

22   Dated: April 17, 2008                        Respectfully submitted,

23                                                LAW OFFICES OF
                                                  CARLETON L. BRIGGS
24

25                                               /s/ Carleton L. Briggs
                                                  CARLETON L. BRIGGS
26                                                Attorneys for Defendant GREENSPRINGS
                                                  BAPTIST CHRISTIAN FELLOWSHIP TRUST
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GREENSPRINGS'
FRCP 12(b)(6) MOTION