CARLETON L. BRIGGS, SBN 117361
Law Offices of Carleton L. Briggs
3510 Unocal Place, Suite 209
Santa Rosa, CA 95403-0918
Telephone: (707) 523-2251
Facsimile: (707) 523-2253
E-mail: clbriggs@sonic.net

James E. Rice, SBN 213670
GINES & RICE
2319 Polk Street
Caldwell, Idaho 83605
Telephone: (208) 455-2302
Facsimile: (208) 377-8722
E-mail: jimrice@q.com

Attorneys for Defendant
GREENSPRINGS BAPTIST
CHRISTIAN FELLOWSHIP TRUST

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MILLER, individually and as guardian ad litem of Molly Miller, an individual; ANNE MILLER, an individual; and ROBERT MILLER, an individual,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>GREENSPRINGS BAPTIST CHRISTIAN FELLOWSHIP TRUST, et al.,<br><br>　　　　　Defendants.<br>_____/ | Case No. C 07-04776 JL<br><br>DEFENDANT GREENSPRINGS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED<br>[F.R.C.P. 12(b)(6)]<br>_____<br><br>Date:　July 9, 2008<br>Time:　9:30 a.m.<br>Courtroom: F, 15th Floor<br>Chief Magistrate Judge:<br>　　Hon. James Larson<br>Complaint filed: August 17, 2007<br>First Amended Complaint filed:<br>　　March 28, 2008<br>Trial date: None |

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.    Plaintiffs must plead their claims with particularity. . . . . . . . . . . . . . . . . . . . . . . 1

2.    Plaintiffs still cannot establish the essential element of damages. . . . . . . . . . . . . 2

3.    Plaintiffs cannot demonstrate standing to sue if they have not suffered actual damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4.    The new parties and claims do not relate back to the original complaint and thus are barred by the statute of limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5.    Plaintiffs have failed to state a viable promissory estoppel theory. . . . . . . . . . . . 6

6.    Plaintiffs' forbearance from initiating a claim against the estate or an investigation of Dillon and Bohn does not provide the requisite elements necessary to enforce the alleged contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7.    Plaintiffs' argument concerning the contract's illegality misses the point. . . . . . 9

8.    Plaintiffs' breach of contract claim is time-barred. . . . . . . . . . . . . . . . . . . . . . . . 10

9.    The amended complaint fails to establish the essential elements of conversion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10.   Plaintiffs cannot establish justifiable reliance or damages required for fraud. . . . 12

11.   The facts alleged do not warrant imposition of a constructive trust. . . . . . . . . 13

12.   Plaintiffs' rationale for specific performance is flawed. . . . . . . . . . . . . . . . . . . . 13

13.   Plaintiffs' interference-with-right-to-inherit claims are not founded in law or fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1 | TABLE OF AUTHORITIES
2
3 | CASES

4 | *Besig v. Dolphin Boating and Swimming Club,* 683 F.2d 1271 (9th Cir. 1982) . . . . . . . . 5
5 | *Board of Home Missions v. Manley*, 129 Cal.App. 541 (1933) . . . . . . . . . . . . . . . . . . . . . 3
6 | *Bullfrog Films, Inc. v. Wick,* 847 F.2d 502 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 4
7 | *Cadle Co. v. World Wide Hospitality Furniture, Inc.,* 144 Cal.App.4th 504 (2006) . . . . . 3
8 | *City Street Improvement Co. v. Pearson*, 181 Cal. 640 (1919) . . . . . . . . . . . . . . . . . . . 7, 8
9 | *Grand Lodge v. Farnham*, 70 Cal. 158 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
10 | *Hagen v. Hickenbottom*, 41 Cal.App.4th 168 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
11 | *Hoey v. Sony Electronics Inc.,* 515 F.Supp.2d 1099 (N.D. Cal. 2007) . . . . . . . . . . . . . . . 1
12 | *Kreamer v. Earl*, 91 Cal. 112 (1891) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
13 | *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885 (1976) . . . . . . . . . . . . . . . . . . 6
14 | *Marriage of Gonzales*, 57 Cal.App.3d 736 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
15 | *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326 (9th Cir. 1978) . . . . . . . . . . 3
16 | *Otworth v. Southern Pac. Transp. Co.,* 166 Cal.App.3d 452 (1985) . . . . . . . . . . . . . . . . 11
17 | *Palm Valley Homeowners Ass'n, Inc. v. Design MTC*, 85 Cal.App.4th 553 (2000) . . . . . 3
18 | *Pay Less Drug Stores v. Bechdolt*, 92 Cal.App.3d 496 (1979) . . . . . . . . . . . . . . . . . . . . . 8
19 | *Porter v. Van Denburgh*, 15 Cal.2d 173 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
20 | *Security First Nat'l Bank v. Ross*, 214 Cal.App.2d 424 (1963) . . . . . . . . . . . . . . . . . . . . . 8
21 | *Steen v. Hendy*, 107 Cal. 49 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
22 | *Thomson v. Internat. Alliance of Stage Employees* 232 Cal.App.2d 446 (1965) . . . . . . . 6
23 | *Timberline, Inc. v. Jaisinghani*, 54 Cal.App.4th 1361 (1997) . . . . . . . . . . . . . . . . . . . . . . 3
24 | *University of So. Cal. v. Bryson*, 103 Cal. App. 39 (1929) . . . . . . . . . . . . . . . . . . . . . . . 4

25
26
27
28

iii

STATUTES AND RULES

Civil Code § 3390(3) .................................................... 13

Code of Civil Procedure § 338(d) ........................................ 8

Code of Civil Procedure § 339 .......................................... 10

Federal Rule of Civil Procedure 9(b) .................................... 1

Probate Code § 6451 .................................................... 14

Probate Code § 9000(a) .................................................. 8

Rev. Rul. 81-110, 1981-1 CB 479 ......................................... 9

Revenue & Taxation Code § 19719(a), (b) ................................. 4

Revenue & Taxation Code § 23301 ......................................... 3

OTHER AUTHORITY

1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2007) "Contracts" § 211 ......... 8

28 WILLISTON ON CONTRACTS (4th ed. 1990) § 71:8 ............................. 9

5 Witkin, CALIFORNIA PROCEDURE (4th ed. 1997) "Pleading," § 660 ............ 11

5 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Torts," § 772 ......... 12

RESTATEMENT (2D) CONTRACTS § 175 ........................................... 9

ROSS, CAL. PRAC. GUIDE: PROBATE (The Rutter Group, 2007) § 8:37 ............ 8

13 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Trusts" § 319 ........ 13

iv

DEFENDANT GREENSPRINGS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED [F.R.C.P. 12(b)(6)]

**INTRODUCTION**

On March 24, 2008, the Court granted the 12(b)(6) motions brought by defendants Greensprings and Donald Bohn and gave plaintiffs Barbara Miller, as guardian *ad litem* for Molly Miller, and Anne Miller leave to amend their complaint. The Court specifically directed these plaintiffs to address certain issues in any amended complaint. In the first amended complaint, plaintiffs either have failed to address those issues or failed to correct the defects in their claims which led the Court to grant defendants' first Rule 12(b)(6) motion. The crux of the problem is that plaintiffs have failed to establish that *they themselves* ever have been entitled to the disputed $500,000 which defendants allegedly agreed to pay to certain charities of plaintiffs' designation, but which Greensprings ultimately paid to the Estate of Elsie Turchen. Accordingly, plaintiffs have not established—and cannot establish—that they have been damaged by defendants' failure to pay this sum as plaintiffs directed, even had defendants promised to do so.

**ARGUMENT**

**1.    Plaintiffs must plead their claims with particularity.**

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b). The Rule 9(b) requirements of stating the circumstances constituting fraud or mistake with particularity apply not only to claims in which fraud is an essential element, but also to claims grounded in allegations of fraudulent conduct. See *Hoey v. Sony Electronics Inc.,* 515 F.Supp.2d 1099, 1102 (N.D. Cal. 2007). Where a plaintiff alleges a unified course of fraudulent conduct and relies on that course of conduct as the basis of a claim, the claim is said to be "grounded in fraud" and the pleading of that claim as a whole must satisfy Rule 9(b). *Id.* at 1102-1103.

In this case, all of plaintiffs' claims are grounded in fraud. Their FAC alleges in a lengthy tale of "background facts" that defendants engaged in conspiracies to

1

1  misappropriate Elsie Turchen's estate and to prevent the Millers from asserting their
2  claims.  Thus, all of the claims must be stated with particularity and include the who, what,
3  when, where, and how of the alleged misconduct.  Here, however, plaintiffs rely on
4  conclusory allegations that contradict the plain meaning of the specific facts they
5  themselves have alleged.  This is especially glaring in the matter of Elsie Turchen's
6  alleged promise to the Miller girls: the quoted portion of the letter plainly shows that there
7  is no promise, merely an inquiry as to whether the parents would consider the gift.  FAC
8  ¶ 37.  Tellingly, there is no allegation of a reply from the Millers in the affirmative.

9       In addition, the specific statements of Carleton L. Briggs quoted in the FAC (¶ 43)
10 demonstrate that he did not promise that the disputed $500,000 fund would be distributed
11 as plaintiffs desired, but that he merely believed that ultimately such could be done.
12 Plaintiffs include specific statements by Briggs that Christine Dillon and Donald Bohn did
13 not have authority to send any money or to make decisions on behalf of Greensprings.
14 They also include specific statements in which Briggs says what he will argue in the
15 *Anderson v. Dillon* litigation and what he believes the outcome will be.  But these
16 statements contain no unconditional promise, and certainly not a promise to pay a *second*
17 $500,000 to plaintiffs if the disputed fund were awarded to the Estate of Elsie Turchen.

## 2.    Plaintiffs still cannot establish the essential element of damages.

20      Plaintiffs have amended their original complaint to add Barbara Miller and Robert
21 Miller as plaintiffs in their individual capacities.  They now allege that they have sustained
22 damages of $500,000, or alternatively of $200,000, because, in reliance on their
23 expectation of receiving $500,000 from Greensprings, Barbara and Robert Miller pledged
24 a gift of $200,000 to Seabury Hall, and Seabury Hall is now pursuing collection of the
25 pledge from them personally.  FAC ¶ 57.
26      Plaintiffs are referring to a March 20, 2007 letter to Barbara and Robert Miller from
27 the Headmaster and President of the Seabury Hall Board of Trustees, produced by

1    plaintiffs in supplemental initial disclosure.  See Exhibit J of the Request for Judicial

2    Notice served and filed with the instant 12(b)(6) motion.  The letter notes that Seabury

3    Hall has not received payment on the $200,000 pledge and then states, "We were very

4    pleased to honor the Miller Family Foundation for these wonderful gifts by including the

5    name of the Foundation on the major donor plaque, the classroom, and the all-donor

6    plaque."

7           Even if this claim concerning Barbara and Robert Miller's alleged $200,000

8    damage had been properly added (and Greensprings contends it was not), it cannot save

9    the first amended complaint.  It appears from the letter that the only damage will be

10   removal of the name of the Miller Family Foundation, apparently a separate legal entity,

11   from the school's donor plaques if the pledge is not paid.  Current corporate records of the

12   California Secretary of State identify the Robert C. and Barbara P. Miller Family

13   Foundation, Corporation No. 1917832, with its status listed as "suspended."  See Exhibit

14   A attached to the Request for Judicial Notice served and filed herewith.  Therefore, not

15   only is this foundation not a party to this litigation, but currently it cannot be.[1]

16          There is no allegation in the first amended complaint of a promise by defendants to

17   pay anything to or on behalf of Barbara and Robert Miller individually, or their

18   foundation.  Even if there were, plaintiffs have not established that Barbara and Robert

19   Miller face any actual personal liability to Seabury Hall, nor have they addressed the issue,

20   other than to suggest that Seabury Hall might pursue a claim against them under a

21   promissory estoppel theory.  However, the general rule is that the promise to pay a

---

[1] During the period of such suspension, the only permissible corporate action is filing an application for tax-exempt status or amending the articles to perfect that application or to set forth a new corporate name.  Otherwise, the corporation is disqualified from exercising any right, power, or privilege.  Rev. & Tax. Code § 23301; see *Timberline, Inc. v. Jaisinghani*, 54 Cal.App.4th 1361, 1367 (1997).  During such suspension, the corporation is incapable of suing or defending in state courts.  *Cadle Co. v. World Wide Hospitality Furniture, Inc.,* 144 Cal.App.4th 504, 511 (2006); *Palm Valley Homeowners Ass'n, Inc. v. Design MTC*, 85 Cal.App.4th 553, 560-561 (2000).  The corporation's incapacity to sue or defend in state courts may also preclude it from suing or defending in federal courts.  *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 331 (9th Cir. 1978).

charitable subscription is ordinarily a mere offer that, in the absence of consideration, the promisor may withdraw at any time. *Board of Home Missions v. Manley*, 129 Cal.App. 541, 543–544 (1933); see *Grand Lodge v. Farnham*, 70 Cal. 158, 159–160 (1886). Plaintiffs have not alleged any acts performed or obligations incurred by Seabury Hall in reliance on the pledge which might render the agreement enforceable. *University of So. Cal. v. Bryson*, 103 Cal. App. 39, 51, (1929). Further, the March 20, 2007 letter from Seabury Hall can hardly be deemed a collection action. By its terms, it appears to exclude the possibility of any legal action, threatening only "updating" of the donor plaques to remove the names of donors who have not fulfilled their pledges.

Moreover, plaintiffs' first amended complaint certainly does not establish that *Anne Miller or Molly Miller* have sustained any damages. Barbara and Robert Miller's attempt to use their own, or their suspended foundation's,[2] dubious damage claim to graft the essential element of damages to their daughters' causes of action simply does not satisfy the legal requirement, specifically pointed out by this Court, to state how Anne and Molly Miller have been damaged. Plaintiffs have made no effort to address the lack of damages suffered by Anne Miller or Molly Miller because there is simply no way that plaintiffs can amend their complaint to do so under the facts they have alleged. This defect is fatal to each and every one of Anne's and Molly's claims.

**3.    Plaintiffs cannot demonstrate standing to sue if they have not suffered actual damages.**

Tellingly, plaintiffs do not allege that they have been authorized to make a claim on behalf of any charitable beneficiary of defendants' alleged promises, including Seabury Hall. Standing generally requires a showing that the plaintiff has suffered actual loss,

---

[2] Any person who attempts or purports to exercise the powers, rights, and privileges of a suspended corporation may be criminally punished by a $250 to $1,000 fine and/or up to one year in prison. Rev. & Tax. Code § 19719(a),(b).

damage, or injury, or is threatened with impairment of his or her own interests. *Bullfrog Films, Inc. v. Wick,* 847 F.2d 502, 506 (9th Cir. 1988). Because plaintiffs cannot prove that they have sustained any actual damages, they have no standing to bring this action. That missing element is fatal to their claims.

### 4. The new parties and claims do not relate back to the original complaint and thus are barred by the statute of limitations.

The addition of Barbara Miller and Robert Miller as plaintiffs in their individual capacities and the addition of three new claims were improperly done and, in any event, cannot relate back to the time of filing of the original complaint for purposes of the statute of limitations. Even if their claim of damage stemming from the alleged pledge of $200,000 to Seabury Hall had been properly added, the two-year statute of limitations on their claim for breach of an oral contract would have run on August 11, 2007, two years after plaintiffs were told by Carleton L. Briggs that the checks to plaintiffs' latest choice of charities, which had been unconditionally promised by defendant Bohn, would *not* be issued by Greensprings without prior approval of the court in *Anderson v. Dillon*. FAC ¶ 43, 15:8-23. The first amended complaint was not filed until March 28, 2008.

Amendments naming new parties plaintiff are permissible only if there is no change in the claim being asserted. *Besig v. Dolphin Boating and Swimming Club,* 683 F.2d 1271, 1278 (9th Cir. 1982).

> Relation back imposes no prejudice when an amendment restates a claim with no new facts . . . . An amendment changing plaintiffs may relate back when the relief sought in the amended complaint is identical to that demanded originally.
>
> *Ibid.*

In this case, plaintiffs have added new parties, new facts and new claims without leave of court. These claims do not relate back to the date of filing of the original complaint and therefore are barred by the statute of limitations. In their opposition to the instant motion,

plaintiffs have failed completely to address the issue of relation back.

### 5. Plaintiffs have failed to state a viable promissory estoppel theory.

In its order, the Court stated that plaintiffs' promissory estoppel theory was "deficient":

> [Plaintiffs have] not alleged what, if any, claims [they] would have had against Greensprings as a result of the decedent's gift of the house at Malcomb Ave. to Greensprings.
> Order Granting Defendant Greensprings' and Defendant Bohn's 12(b)(6) Motions To Dismiss With Leave To Amend, 5: 14-16.
>
> Also, as alleged, there does not appear to have been an enforceable agreement between the decedent and her great grandchildren for the gift of the house at 325 Malcomb Avenue, Belmont, California to Greensprings. Miller must explain how the decedent's apparent intent to give a gift to Anne and Molly provides Miller with grounds to bring a claim against either Greensprings or the Estate, or both.
>
> *Id.* 5:19-23

Plaintiffs have not addressed these issues at all. Instead, ignoring the Court's directive, they now argue that the validity of the proposed gift by Elsie Turchen and any claim they may have had against her estate is irrelevant. Plaintiffs say their claims are based strictly on their reliance on defendants' alleged promise to pay them $500,000. But they ignore the elephant in the courtroom: the key question of whether plaintiffs ever had any *enforceable entitlement* to the $500,000. Their failure to allege facts that show any legally enforceable entitlement to that sum is fatal to their claims.

Plaintiffs have failed to state the necessary elements for promissory estoppel.

> The required elements for promissory estoppel in California are . . . (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.
> *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 890 (1976) (citing *Thomson v. Internat. Alliance of Stage Employees* 232 Cal.App.2d 446, 454 (1965)).

Plaintiffs have not met any of these elements. In addition to the issue of reasonable reliance discussed *infra*, plaintiffs include (at FAC ¶ 43) a partial transcript of a

6

DEFENDANT GREENSPRINGS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED [F.R.C.P. 12(b)(6)]

conversation between Carleton L. Briggs and Barbara Miller which contradicts plaintiffs' own assertions. Briggs's quoted statements demonstrate that he told Barbara Miller that Christine Dillon and Donald Bohn did not have authority to bind Greensprings because the approval of its board of directors was required. The statements also convey that, while Briggs believed he would be able to obtain the board's approval, he did not have authority to bind Greensprings without its approval. In addition, Briggs clearly told Barbara Miller that court approval in *Anderson v. Dillon* would be required. These conditions preclude the possibility that there was a promise clear and unambiguous in its terms between Carleton L. Briggs and Barbara Miller, or between Greensprings and Barbara Miller, to pay plaintiffs or their designated charities $500,000.

Nor, to supply consideration, can plaintiffs rely on the offer by Elsie Turchen to make a gift to Anne and Molly Miller. At most, the letter from Elsie Turchen evidences an intended gift that was not completed before her death and is therefore void. A void claim cannot be consideration for another promise. *City Street Improvement Co. v. Pearson*, 181 Cal. 640, 651 (1919).

**6.    Plaintiffs' forbearance from initiating a claim against the estate or an investigation of Dillon and Bohn does not provide the requisite elements necessary to enforce the alleged contract.**

Plaintiffs allege that they refrained from filing a creditor's claim or making a claim against the Estate of Elsie Turchen in reliance on Greensprings' alleged promise to pay $500,000 to charities of their choice. Plaintiffs' Opp. to Motion to Dismiss, 9:15-19. Plaintiffs also state in their opposition to the related Rule 12(b)(7) motion that they had four months from the issuance of Letters to the Personal Representative of the estate in which to file a claim. Plaintiffs Anne and Molly Miller (there is no allegation in the first amended complaint of a promise to pay anything to or on behalf of Barbara and Robert Miller individually, or their foundation) state that their reliance on alleged representations

by Donald Bohn on July 22, 2005, and by Carleton L. Briggs on August 11, 2005, created an estoppel as a result of their losing the opportunity to pursue a claim against the estate.

However, plaintiffs continue to misapprehend the law. A "claim" subject to the probate claim-filing rules only includes a demand for payment. Probate Code § 9000(a). *No* filing of a claim is required to enforce a demand for specific property, *e.g.*, a partnership accounting claim traceable to specific property. See generally, *Steen v. Hendy*, 107 Cal. 49, 50-54 (1895); *Porter v. Van Denburgh*, 15 Cal.2d 173, 176-177 (1940); *Pay Less Drug Stores v. Bechdolt*, 92 Cal.App.3d 496, 502 (1979) (creditor's claim not required for suit against estate to judicially enforce rescission of contract). Ross, CAL. PRAC. GUIDE: PROBATE (The Rutter Group, 2007) § 8:37, at 1076. The specific, identifiable fund of $500,000 here is equally traceable and may be demanded without the filing of a probate claim.

When the gist of an action is fraud, regardless of the form, the three-year period of limitation prescribed by Code of Civil Procedure § 338(d) applies, and this limitation period applies in an action, based on fraud, to establish a constructive trust. *Security First Nat'l Bank v. Ross*, 214 Cal.App.2d 424, 429-430 (1963). Plaintiffs allege that Barbara Miller was defrauded into returning the $500,000 check in August of 2005, so the applicable limitation period has not yet run.

At any rate, Greensprings has pointed out that forbearance to pursue a claim that is wholly void cannot provide good consideration to enforce another promise. *City Street Improvement Co.*, *supra*; 1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2007) "Contracts" § 211, at 253. Plaintiffs have not addressed this issue, other than now to assert without any support, and in spite of this Court's direction, that the validity of Elsie Turchen's alleged gift is irrelevant. However, plaintiffs cannot escape the fact that forbearance from initiating a claim in the estate proceedings provides no "consideration" to enforce the alleged promise by defendants, because any claim of plaintiffs against the estate was wholly void.

1       Furthermore, defendant Greensprings contends that the November 14, 2004 letter from Barbara and Robert Miller to defendants Christine Dillon and Donald Bohn (Exhibit I of the Request for Judicial Notice served and filed with the instant 12(b)(6) motion) constituted a threat. The letter stated that, if defendants Dillon and Bohn did not issue a check for $500,000 as plaintiffs directed, "you will be forcing us to commence an investigation of your handling of Grandma Teddy's estate." Greensprings has noted that an agreement made under duress or threat is voidable. See REST.2D, CONTRACTS § 175; 28 WILLISTON ON CONTRACTS (4th ed. 1990) § 71:8; *Marriage of Gonzales*, 57 Cal.App.3d 736, 743 (1976).

      Plaintiffs contend that this letter was not a threat but "merely an attempt to get the Defendants to make the $500,000.00 checks out to the right payee." Plaintiff's Opposition, 11: 26-27. This argument is simply not credible. Plaintiffs' forbearance from initiating an investigation of Dillon's and Bohn's handling of the Turchen estate provides no basis for enforcing an agreement made under duress and threat.

### 7. Plaintiffs' argument concerning the contract's illegality misses the point.

      Greensprings has argued that, because its payment of $500,000 to plaintiffs would violate applicable tax laws, it would disqualify Greensprings as a tax-exempt organization. Not only would the contract alleged be an act beyond the powers of Greensprings' trustee, it would be illegal. Plaintiffs attempt to get around this by asking for specific performance, *i.e.*, payment directly to the designated charities. However, payment of another's pledge to charity is not a charitable gift and is not eligible for the payor's gift tax charitable deduction. The payment of that pledge is deemed to be *a gift to the person who made the pledge*. Rev. Rul. 81-110, 1981-1 CB 479 (emphasis added).

      Plaintiffs allege that Greensprings promised to issue checks totaling $500,000 as plaintiffs directed in the names of Anne and Molly Miller, including $200,000 to Seabury Hall. In reliance on the alleged promise, plaintiffs Barbara and Robert Miller pledged

1  $200,000 to Seabury Hall.  Now, they are suing to make Greensprings pay their pledge.
2  Plaintiffs do not dispute that this would be an *ultra vires* and illegal act, as it would not be
3  a legal and proper charitable gift by Greensprings.  But plaintiffs argue that the only
4  consequence of that illegality would be that Greensprings could lose its tax-exempt status
5  and be required to report and pay income tax.  Plaintiffs argue that they are completely
6  innocent and that there would be no unjust enrichment to any party if the alleged contract
7  is enforced, but that their forfeiture of the $500,000 would be a "disproportionately harsh"
8  result to them.  Plaintiffs' Opposition, 13:14-21.
9      Plaintiffs' "unjust enrichment" argument misses the key point: on the one hand, the
10 requested relief would not only cost Greensprings a *second* $500,000, but it would be
11 contrary to Greensprings' purposes, in excess of its trustee's powers, and would destroy
12 Greensprings through the loss of its tax-exempt status.  On the other hand, plaintiffs have
13 shown no enforceable entitlement at all to the $500,000; and, rather than suffer any
14 forfeiture or harsh result, plaintiffs themselves will be no better or worse off, whether or
15 not the requested charitable donations are made.

### 8.    Plaintiffs' breach of contract claim is time-barred.

18     Code of Civil Procedure § 339 provides that an action on an oral contract must be
19 brought within two years.  Plaintiffs' breach of contract claim is based on a series of
20 alleged oral representations that occurred between 2002 and 2005.  The final acts in this
21 series of oral representations occurred on August 10, 2005, when Donald Bohn allegedly
22 agreed to issue new checks totaling $500,000 the next day (FAC ¶ 42), and on August 11,
23 2005, when Carleton L. Briggs requested the return of the $500,000 cashier's check that
24 Greensprings had issued to Maui Preparatory Academy, represented that a motion would
25 be made in the *Anderson v. Dillon* litigation for issuance of checks to the Millers' latest
26 choice of charities, and stated that the $500,000 would be maintained in a separate,
27 interest-bearing account.  FAC ¶ 44.  Plaintiffs' complaint was filed on August 17, 2007,

and their first amended complaint was filed on March 28, 2008, each *after* the two-year statute of limitations on breach of the alleged oral contract had run.

Plaintiffs argue that a claim does not accrue until the breach occurs, and that their claim for breach of the alleged oral contract did not accrue until August 15, 2007, at the earliest, the date when the *Anderson v. Dillon* litigation was dismissed and therefore Greensprings could no longer file a motion in the case. However, the breach, if any, must have occurred on August 11, 2005, when plaintiffs were told by Briggs that Greensprings would *not* issue the checks they had requested, and as had been unconditionally promised by Bohn on August 10, 2005, without prior approval of the court in *Anderson v. Dillon*. FAC ¶ 43, 15:8-23. Their claim, if any, must be deemed to have accrued then for purposes of the two-year statute of limitations.

### 9. The amended complaint fails to establish the essential elements of conversion.

To state a claim for conversion, plaintiffs must show ownership or right to possession of the tangible property at the time of the alleged taking or interference with the property. *Otworth v. Southern Pac. Transp. Co.,* 166 Cal.App.3d 452, 458 (1985); 5 Witkin, CALIFORNIA PROCEDURE (4th ed. 1997) "Pleading," § 660, at 116. Here, however, none of the cashier's checks in question were ever made out to plaintiffs. Their inability to establish that plaintiffs themselves ever were entitled to receive the sum of $500,000 is fatal to the claim that Greensprings "converted" the money. Plaintiffs acknowledge that Greensprings paid that specific, identifiable fund over to the Estate of Elsie Turchen. Thus, their contention in opposition to the related motion under Rule 12(b)(7) that the Estate is not even "necessary" to a full and fair resolution of this matter is difficult to understand. At any rate, plaintiffs have not stated a claim for conversion and, under the facts they allege, cannot.

**10.  Plaintiffs cannot establish justifiable reliance or damages required for fraud.**

In its dismissal order, the Court specifically directed plaintiffs to address "how reliance upon Defendants' representations (on behalf of Greensprings) was reasonable *even after* learning of the Anderson v. Greensprings litigation." Reasonable or justifiable reliance is an essential element necessary to establish a claim for fraud. 5 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Torts," § 772, at 1121. Plaintiffs argue that they were "absolutely reasonable" in relying on the alleged representations that Greensprings would pay the $500,000 as instructed because "if one believes that his claim is going to be paid in full without any court intervention, it would be a waste of time and money to prepare papers in order to enforce any claim in court." Plaintiffs' Opp. 9:20-22.

This contention fails to address the Court's directive. It simply was not reasonable for plaintiffs to refrain from filing any kind of claim in the probate proceeding, when their claim to the $500,000 was based on an intended testamentary gift (which they now allege they had a right to inherit), or from intervening in the *Anderson v. Dillon* litigation, where they knew the ownership of the separate, identifiable fund of $500,000 in the Greensprings account was to be determined, whatever Greensprings might want. They failed to take the necessary steps to protect their alleged interest.

The first amended complaint quotes at length the August 11, 2005 telephone conversation between plaintiff Barbara Miller and Carleton L. Briggs. Briggs clearly advised Barbara Miller that Donald Bohn and Christine Dillon had lacked authority to issue the previous checks and that they had acted improperly without authorization from Greensprings' board of directors. FAC ¶ 43, 14:22-15:3. Moreover, he expressly stated that court authorization would be necessary before any other checks could be issued. FAC ¶ 43, 15:8-23. Further, Greensprings' board of directors would have to ratify the acts of Donald Bohn or Christine Dillon. FAC ¶ 43, 15:17-19. Thus, it was not reasonable for plaintiffs to interpret, and then to rely upon, these representations as an unconditional

"promise" to pay the charities, let alone the plaintiffs, the $500,000 fund.

Finally, as previously discussed, plaintiffs' failure to establish the requisite element of damages is also fatal to their fraud claim.

**11.    The facts alleged do not warrant imposition of a constructive trust.**

Plaintiffs ask the Court to impose a constructive trust on the grounds that

> Greensprings has wrongfully retained assets (specifically $500,000) of Anne and Molly Miller. The assets are Anne and Molly Miller's by virtue of Greensprings' payments to the chosen charities as directed by the Millers as a substitute for Elsie Turchen's gift to them.
>
> Plaintiff's Opposition, 18:14-17.

Constructive trust is a remedy used by a court of equity to compel the transfer by one who has property to which he or she is not justly entitled to the person entitled to it. 13 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Trusts" § 319 at 892. Plaintiffs' argument that Greensprings has "retained" the $500,000, directly contradicts the allegation (at FAC ¶ 44) that Greensprings transferred the $500,000 to the Estate of Elsie Turchen. *Greensprings doesn't have it*, and so cannot be compelled to transfer it.

**12.    Plaintiffs' rationale for specific performance is flawed.**

Plaintiffs now ask the Court to grant "specific performance" under the rationale that "Defendants are directly responsible for the Plaintiffs' inability to file a claim in the probate proceeding or participate in the *Anderson v. Dillon* matter because of their false representations that the money would be paid." Plaintiffs' Opposition, 19:3-5. However, an agreement to perform an act which the party does not have the power lawfully to perform when required to do so cannot be specifically enforced. Civ. Code § 3390(3). A court will not lend its aid to give effect to a contract that is illegal, whether it violates the common law or a statute, either expressly or by implication. *Kreamer v. Earl*, 91 Cal. 112, 117 (1891). It is undisputed that, as plaintiffs were advised by Briggs on August 11, 2005,

1 the court in *Anderson v. Dillon* had jurisdiction over the $500,000 fund in dispute, so
2 Greensprings had no lawful power to issue replacement checks as Bohn had promised on
3 August 10, 2005. Further, as is described *supra*, the payment of a charitable pledge of
4 another by Greensprings, a 501(c)(3) organization, would violate applicable tax laws.

5 At the bottom line, plaintiffs knew entitlement to the $500,000 was being
6 determined in *Anderson v. Dillon*, and they were responsible for their own decision not to
7 participate; and plaintiffs Barbara and Robert Miller were responsible for their unilateral
8 decision to make an unconditional pledge to Seabury Hall before the court in *Anderson v.*
9 *Dillon* had determined the fate of the fund they allegedly were relying on to pay it.

**13. Plaintiffs' interference-with-right-to-inherit claims are not founded in law or fact.**

Plaintiffs' first amended complaint includes new claims for intentional and negligent "interference with right to inherit." These claims cannot state a claim for relief because plaintiffs had no right to inherit from Elsie Turchen, whether by her will or by the laws of intestacy, and no such claims have been recognized under California or Hawaii law. California Probate Code § 6451 provides that adoption severs the relationship of parent and child between an adopted person and that person's natural parent. Plaintiffs allege that Elsie Turchen died intestate. But if the Estate of Elsie Turchen were distributed under the laws of intestate succession, neither Molly Miller, whose inheritance rights through her natural parents were severed by her adoption, nor Anne Miller, who was no relation to Elsie Turchen, would have any right to inherit from Elsie Turchen.

Plaintiffs claim that Elsie Turchen intended to give a gift to Molly and Anne Miller, and she certainly may have. However, that gift was never completed before her death. Her will (produced to plaintiffs in initial disclosure and attached as Exhibit K to the Request for Judicial Notice in support of the instant motion) does not provide for the proposed gift. Nor do Anne or Molly Miller have any right to inherit from Elsie Turchen's

1  Estate under the law of intestacy. Thus, there simply were no "rights to inherit" to be
2  interfered with by defendants. Plaintiffs have failed completely to address this issue.
3       Furthermore, neither California nor Hawaii ever has recognized such claims. "The
4  second count suggested a theory—recognized in several states but not previously validated
5  in California—of intentional interference with an expected inheritance or gift." *Hagen v.*
6  *Hickenbottom*, 41 Cal.App.4th 168, 173 (1995). *Hagen* did not further address the theory
7  and certainly did not adopt it, and defendant Greensprings can find no Hawaii case or
8  statute which addresses it. Thus, there is no basis in law for these claims.

10 **CONCLUSION**
11      The facts alleged in plaintiffs' first amended complaint show that they are not now,
12 nor ever were, entitled to the claimed $500,000. They never received it as a gift, and if the
13 promises alleged in the first amended complaint had been performed, the $500,000 would
14 belong to a charity or charities, not to plaintiffs. Plaintiffs do not allege that they are
15 authorized to sue defendants on behalf of any of the multiple sets of charities to which
16 defendants allegedly promised to make gifts. On the facts alleged, defendants have not
17 damaged plaintiffs in the sum of $200,000, or $500,000, or in any amount. Even if all
18 their allegations concerning defendants are taken as true, plaintiffs cannot prove *any* set of
19 facts that would entitle them to relief. Accordingly, the motion to dismiss of defendant
20 Greensprings should be granted without leave to amend.

22 Dated: June 23, 2008                      Respectfully submitted,

23                                               LAW OFFICES OF
                                              CARLETON L. BRIGGS
24

25                                               /s/ Carleton L. Briggs
                                              CARLETON L. BRIGGS
26                                               Attorneys for Defendant GREENSPRINGS
                                              BAPTIST CHRISTIAN FELLOWSHIP
27                                               TRUST
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28