United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Barbara Miller, et al., | No. C 07-4776 JL |
| Plaintiffs, | **ORDER OF DISMISSAL**<br>**Granting Docket Numbers 28, 29, 52,** |
| v. | **55, 56, and 77; Denying without**<br>**prejudice Docket No. 54** |
| Greensprings Baptist Christian Fellowship Trust, | |
| Defendants. | |

**Introduction**

Plaintiffs in their complaint sued for breach of contract, conversion, fraud, declaratory relief, and promissory estoppel. The Court's jurisdiction derives from the parties' diversity of citizenship, as provided by 28 U.S.C. §1332. The property from which the dispute arises is located in this district. Plaintiffs are citizens of Hawaii and Defendants are citizens of California and Oregon. The case was initially filed in San Mateo County Superior Court and removed to this Court by Defendants pursuant to 28 U.S.C. §1441 and 1446. All parties consented to the jurisdiction of this Court pursuant to 28 U.S. Code §636(c) and Civil Local Rule 73.

The following motions came on for hearing:

1. Defendants' motion to dismiss the first amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) -

(Docket #s 28, 29, 56, 77 -Donald Bohn)(Docket # 52-Greensprings Baptist Christian Fellowship Trust);

2. Greensprings Baptist Christian Fellowship Trust's Motion to Strike allegations of First Amended Complaint (Docket # 55 )

3. Greensprings Baptist Christian Fellowship Trust's motion to dismiss for failure to join an indispensable party pursuant to FRCP 12(b)(7) (Docket # 54);

James P. Cilley, TEMMERMAN & CILLEY, LLP, appeared for Plaintiffs. Carleton L. Briggs, LAW OFFICES OF CARLETON L. BRIGGS, appeared for Defendant Greensprings Baptist Fellowship Trust - James H. Hartnett, HARTNETT, SMITH & ASSOCIATES, appeared for Defendant Donald Bohn. John B. Lytle appeared for Defendant Carleton L. Briggs.

## Factual Background

Plaintiffs Robert Miller; Barbara Miller, individually and as guardian ad litem for her adopted daughter Molly Miller; and Anne Miller, the natural daughter of Barbara and Robert Miller, have sued to recover, or obtain a declaration that they are entitled to, the sum of $500,000. The complaint, as amended, alleges claims for breach of contract-promissory estoppel, conversion, fraud, declaratory relief, constructive trust, specific performance, intentional interference with right to inherit, and negligent interference with right to inherit. Plaintiffs' purported right to the $500,000 in question initially arose from an alleged promise by the late Elsie G. Turchen (Molly Miller's natural great-grandmother) to make a gift to Plaintiffs Molly and Anne. The $500,000 has been returned by Greensprings to the Estate of Elsie G. Turchen.

Before her death, Elsie Turchen expressed in writing her intent to give a substantial gift to Anne and Molly. In a letter to Barbara and Robert Miller dated November 23, 2000, she asked the Millers if they would "consider" a gift to Anne and Molly of a house located at 325 Malcolm [sic] Avenue, Belmont, California.

Elsie's November 23, 2000 letter, written to Barbara and Robert Miller, stated, in pertinent part:

> "I would like to do something for your girls. I do not shop; and I don't want to send things that have to be exchanged or are not useful, so I have failed to do anything on either Annie's or Molly's birthdays.
>
> Would you consider the gift of the house for them? Enclosed is the picture. . . .
>
> It will go vacant approximately 2/1/2001.
>
> As you know, I am very ill. . . ."

(FAC at ¶ 37)

The first amended complaint alleges that it was Elsie's clear intent to give the Malcolm [sic] Avenue house to Anne and Molly, but Elsie died 17 days later, on December 10, 2000. Plaintiffs do not allege that the gift was completed. First Amended Complaint ("FAC"), ¶ 37.

After Elsie's death, defendant Christine Dillon, who had told Barbara Miller that she was the personal representative of Elsie's estate, said that Grace Parish Christian Church would pay $500,000 to a charity or charities of Barbara and Robert Miller's choice on Anne and Molly's behalf. The complaint alleges that defendant Dillon knew of Elsie's intended gift to Anne and Molly and proposed the charitable payment so that Anne and Molly would not make a claim against Elsie's estate. FAC, ¶ 38.

On August 11, 2002, two checks totaling $500,000 were issued to First Hawaiian Title Company. The checks were issued to a title company because the Millers' chosen charity, Maui Preparatory Academy, was in the process of buying real property for use as a school, and the $500,000 was to be used for that purchase. The two checks were drawn on an account owned by Real Estate Trust, which plaintiffs believe is a "dba" for defendant Greensprings. The checks were signed by defendant Bohn, and "were intended to be performance on the agreement by defendant Dillon (and now by Defendant Greensprings) to fulfill Elsie Turchin's [sic] promise to make a gift to Anne and Molly as indicated in Elsie's November 23, 2000 letter." FAC, ¶ 39.

Barbara and Robert Miller later learned that there was no entity named First Hawaiian Title Company, and in an October 9, 2002 letter to defendants Bohn and Dillon, they asked that the checks be reissued in the name of First Hawaii Title Corporation.

After not hearing from Bohn and Dillon for some considerable time, in January 2005 the Millers demanded that they reissue a check to Maui Preparatory Academy. On January 10, 2005, defendant Bohn delivered to the Millers a cashier's check for $500,000 made out to Maui Preparatory Academy. The complaint alleges that the purpose of making the check payable to Maui Preparatory Academy "was to make a gift to the Academy on behalf of Anne and Molly." FAC, ¶¶ 39- 40.

Many months after receiving the cashier's check payable to Maui Preparatory Academy, the Millers again asked defendants Bohn and Dillon to reissue the check, this time as three checks totaling $500,000 payable to Stanford University, Seabury Hall, and West Maui Carden Academy. In a telephone conversation on August 10, 2005, Defendant Bohn told Barbara Miller that it would be done the next day. FAC, ¶ 42.

At the same time, Barbara Miller wrote a letter to Carleton L. Briggs, who plaintiffs believe is a member of defendant Greensprings' board of directors, to explain why the three checks were needed instead of one. The next day, Briggs wrote back to Barbara Miller asking that the $500,000 cashier's check payable to Maui Preparatory Academy be returned because of litigation against Greensprings, Bohn, and Dillon by Penny D. Anderson, who is Elsie Turchen's granddaughter and Molly Miller's birth mother. Briggs's letter said that a motion would have to be made in the "*Anderson v. Greensprings*" litigation to have the checks reissued; that such a motion would be made with all possible haste; and that the $500,000 would be maintained in a separate, interest-bearing account earmarked for the three charities named by the Millers. Barbara Miller returned the cashier's check on August 16, 2005, but no motion was ever made in the *Anderson v. Dillon* litigation to reissue the three checks, and Plaintiffs allege that the $500,000 was never put in a separate, interest-bearing account earmarked for the charities. FAC, ¶¶ 43-44.

**Disposition of the $500,000**

In August 2005, Barbara Miller returned the $500,000 cashier's check payable to Maui Preparatory Academy to Greensprings' attorney, Carleton L. Briggs. Attorney Briggs subsequently paid the $500,000 to the Estate of Elsie Turchen. FAC ¶ 44.

**Procedural Background**

This Court, on March 24, 2008, at Docket No. 48, granted Defendants' motions to dismiss for failure to state a claim, pursuant to FRCP 12(b)(6), but also granted leave to Plaintiffs to amend their complaint, ruling:

> "Each of Miller's causes of action requires a showing of damages. Miller's claim that she is entitled to the $500,000 is not supported by her complaint, which alleges an agreement that the $500,000 be donated to a charity or charities of her choosing in the names of her children, Molly and Anne. If the money was to be given to charity under the terms of the agreement, then it was not her money and she has not suffered damages in the amount of $500,000. Miller has not satisfied the element of damages for the causes of action she brings in her complaint. Consequently, all of Miller's causes of actions are missing an essential element. Defendants' motions to dismiss for failure to state a claim upon which relief can be granted should therefore granted. Miller is granted leave to amend her complaint."

(Order at 4:28-5:8; Docket No. 48, filed March 24, 2008)

The Court in its March 24 Order also addressed the issue of the Estate's possible status as an indispensable party, although it did not rule on that question. The Court expressly ordered Plaintiffs to amend their complaint thus:

> "In so amending, Miller should address several points. First, Miller must explain how and why she was damaged in the amount of $500,000 if the alleged agreement with defendants was for a gift of that amount to a charity or charities. As pled, Miller has at most stated facts sufficient to show damages only if her breach of contract claim was based on a third-party donee beneficiary contract theory.
>
> Second, Miller's breach of contract-promissory estoppel cause of action is deficient. Miller has not alleged what, if any, claims she would have had against Greensprings as a result of the decedent's gift of the house at Malcomb Ave to Greensprings. She has not alleged that the property was fraudulently obtained nor has she asserted any other basis for a claim on the Estate or against the defendants.
>
> Also, as alleged, there does not appear to have been an enforceable agreement between the decedent and her great grandchildren for the gift of the house at 325 Malcomb Avenue, Belmont, California. Miller must explain how the decedent's apparent intent to give a gift to Anne and Molly provides Miller with grounds to bring a claim against either Greensprings or the Estate, or both.

> Lastly, Miller may wish to further develop the factual record to explain: (1) why the $500,000 went to the Estate or, the issues in the Anderson v. Greensprings litigation and their relevance to this case; (2) how reliance on Defendants' representations was reasonable, specifically, that reliance on Atty. Brigg's representations (on behalf of Greensprings) was reasonable even after learning of the Anderson v. Greensprings litigation; (3) what obligations Miller has to any charities as a result of the agreement with Defendants; (4) why the Estate is NOT an indispensable party OR why Defendants should not be dropped from the lawsuit altogether if it is the Estate, and not the Defendants, that is in possession of the $500,000; and (5) anything else Miller thinks is necessary to support or explain the causes of action in her amended complaint."

(Order at 5:9-6:4)

## ANALYSIS

Plaintiffs fail to address adequately the issues raised in the Court's order and consequently fail to heal the fatal defects in their complaint.

**1.    Motion to strike allegations of First Amended Complaint**

**2.    Motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6)**

The Court's Order to Plaintiffs granting them leave to amend their complaint does not contemplate the addition of new plaintiffs or claims, but merely some adequate basis for a finding of damages, of which there was none in the initial complaint. Plaintiffs try to add a new plaintiff, Robert Miller, along with new causes of action: for specific performance, for intentional interference with right to inherit, and for negligent interference with right to inherit. Plaintiffs Robert and Barbara Miller for the first time allege damage to themselves. They claim they pledged a $200,000 donation to Seabury Hall in reliance on their receipt of the $500,000 check from Greensprings. However, this allegation fails for a number of reasons, including that Seabury Hall is not pursuing them for the donation and that in fact the entity which committed to the donation is the Miller Family Foundation, a lapsed non-profit for which Plaintiffs have no responsibility.

### Addition of New Plaintiffs and Claims

In the parties' briefs or arguments or the Court's Order granting leave to amend, there was no discussion of the addition of new plaintiffs or claims. The Court's Order stated that the complaint failed to satisfy the essential element of damages in that,

according to the allegations, the purported gift of $500,000 was not to be given to any of the Millers, but was to go to charity. Thus, neither Anne Miller nor Molly Miller, nor Barbara Miller, as Molly's guardian ad litem, nor Robert Miller, the newly-added plaintiff, would have received the money under the terms of the alleged agreement. They have not suffered any damage, let alone damages of $500,000. There was no claim in the original complaint on behalf of Robert Miller, Barbara Miller's husband, the father of Anne and Molly.

## Claim for Damages of $200,000

The first amended complaint adds Barbara and Robert Miller as plaintiffs in their individual capacities and alleges that, in reliance on the anticipated gift of $200,000 by defendants to Seabury Hall, they personally pledged $200,000 to Seabury Hall. However, the first amended complaint contains no allegation of a promise to pay money to or on behalf of Barbara or Robert Miller individually. Moreover, this allegation does nothing to cure the defect of the lack of damages for Anne and Molly Miller.

It appears from correspondence from Seabury Hall that the pledge on which plaintiffs rely was regarded by Seabury Hall as a commitment not by Barbara and Robert Miller individually, or by Anne and Molly Miller, but by the Miller Family Foundation, a separate legal entity not a party to this action. (Exhibit J to Def. Request for Judicial Notice) The Miller Family Foundation is a California corporation currently in suspended status, and thus unable to have its rights asserted by anyone. It further appears from the Seabury Hall letter that Barbara and Robert Miller face no personal liability if they fail to pay the pledge, that any negative impact would be limited to the Miller Family Foundation's name being removed from the list of donors on the school plaques. Arguably, this line of reasoning rests on disputed material facts and would be more appropriate for resolution on summary judgment, rather than a motion to dismiss. However, as discussed below, other factors militate for dismissal, regardless of the outcome of this part of the dispute.

Even if they could make out a case for a legal obligation on the part of Defendants to make the charitable gifts allegedly promised, the Miller's simply have no standing to bring a claim on behalf of Seabury Hall or any of the other third-party charities

who they allege are the donee-beneficiaries of Defendants' alleged promises. The new allegations do nothing to cure the defects that the Court previously directed Plaintiffs to address.

Further, amendments naming new plaintiffs are permissible only if there is no change in the claim being asserted. *Besig v. Dolphin Boating and Swimming Club*, 683 F.2d 1271, 1278 (9th Cir. 1982). The addition of new plaintiffs with new claims does not relate back to the date of filing the original complaint. The two-year statute of limitations on the claim for breach of an oral contract ran on August 11, 2007, two years after plaintiffs were told by Carleton L. Briggs that the checks to plaintiffs' latest choice of charities, which allegedly had been promised unconditionally by defendant Bohn, would not be issued by Greensprings without prior approval of the court in *Anderson v. Dillon*. FAC ¶ 43, 15:8-23. The first amended complaint was not filed until March 28, 2008. Therefore any new claims by new plaintiffs are time-barred.

Plaintiffs add two new claims to their complaint, for which they have failed to establish the requisite elements, or even that such a claim is available, under existing law (the negligent and intentional interference with right to inherit claims). Nor have they alleged facts sufficient to support their old claims.

**Plaintiffs have failed to state the necessary elements for promissory estoppel.**

The required elements for promissory estoppel in California are . . . (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 890 (1976) (citing *Thomson v. Internat. Alliance of Stage Employees,* 232 Cal.App.2d 446, 454 (1965)).

Plaintiffs have not met any of these requirements. Plaintiffs include (at FAC ¶ 43) a partial transcript of a conversation between Carleton L. Briggs and Barbara Miller which contradicts Plaintiffs' own assertions. Briggs told Barbara Miller that Christine Dillon and Donald Bohn did not have authority to bind Greensprings without the approval of its board of directors. While Briggs believed he would be able to obtain the board's approval, he did

not have authority to bind Greensprings without that approval. In addition, Briggs clearly told Barbara Miller that court approval in *Anderson v. Dillon* would also be required before issuance of the checks she was requesting.

These conditions preclude the possibility that there was a promise clear and unambiguous in its terms between Carleton L. Briggs and Barbara Miller, or between Greensprings and Barbara Miller, to pay $500,000 to Plaintiffs or their designated charities. Nor, to supply consideration, can Plaintiffs rely on the offer by Elsie Turchen to make a gift to Anne and Molly Miller.  Plaintiff's reliance on such a promise is unreasonable, given Brigg's statements to Barbara Miller.

A valid gift requires (1) intent to make an unconditional gift; (2) intent to make a present, rather than a future gift; (3) an actual or symbolic delivery, that is that the donor relinquish control of the property; and (4) that the donee accept the gift. *U.S. v. Alcaraz-Garcia,* 79 F.3d 769 (9th Cir. 1996). At most, the letter from Elsie Turchen evidences an intended gift that was not completed before her death and is therefore void.

**Plaintiffs' forbearance from initiating a claim against the Estate or an investigation of Dillon and Bohn does not provide the requisite elements to enforce the alleged contract.**

Plaintiffs allege that they refrained from filing a creditor's claim or making a claim against the Estate of Elsie Turchen in reliance on Greensprings' alleged promise to pay $500,000 to charities of their choice. Plaintiffs' Opp. to Motion to Dismiss, 9:15-19.

Plaintiffs Anne and Molly Miller (there is no allegation in the first amended complaint of a promise to pay anything to or on behalf of Barbara and Robert Miller individually, or their foundation) state that their reliance on alleged representations  by Donald Bohn on July 22, 2005, and by Carleton L. Briggs on August 11, 2005, is the basis for their cause of action for breach of contact, in that it created an estoppel as a result of their losing the opportunity to pursue a claim against the Estate. Plaintiffs also cite their reliance on promises by Defendant Christine Dillon as the basis for a claim for fraud, their damages also arising from their forbearance to file a claim against the Turchen Estate.

"Consideration may be forbearance to sue on a claim, extension of time, or any other giving up of a legal right, in consideration of some promise." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 211, p. 246, italics added.) But where a duty is imposed by law, "the promise to perform it is obviously not good consideration." ( Id., § 219, p. 253.)

The offeree's consideration for the offeror's promise must actually be bargained for in exchange for the promise. *Saks v. Charity Mission Baptist Church,* 90 Cal.App.4th 1116, 1135 (2001). This is the essence of a contract - a mutual bargain. With respect to forbearance, it constitutes consideration only if the agreement or consent to forebear is given in exchange for the offeror's promise. *Tiffany & Co. v. Spreckels*, 202 Cal. 778, 790 (1927) [forbearance to sue on a claim must be in pursuance of an agreement; if the party is not bound to forbear and can institute suit at any time without breaching the parties' bargain, mere forbearance is not consideration]; *Wine Packing Corp. v. Voss,* 37 Cal.App.2d 528, 538 (1940) [same].  In Elliott on Contracts, section 235, it is said: "If the claim threatened to be enforced is invalid or worthless, a promise not to attempt to enforce or to refrain from making trouble concerning it is not a consideration recognized by the law as valuable." (cited in *City Street Imp. Co. v. Pearson,* 181 Cal. 640, 651 (1919); overruled on other grounds at 63 Cal. 2d 584, 593 (1965).

Forbearance to pursue a claim that is wholly void cannot provide good consideration to enforce another promise. *City Street Improvement Co., supra*; 1 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2007) "Contracts" § 211, at 253. Plaintiffs have not addressed this issue, other than now to assert without any support, and in spite of this Court's direction, that the validity of Elsie Turchen's alleged gift is irrelevant. (Pltf Opp. To Def 12(b)(7) motion at 3:20-23, 4:11-12). However, Plaintiffs cannot escape the fact that forbearance from initiating a claim in the Estate proceedings provides no "consideration" to enforce the alleged promise by Defendants, because any claim of Plaintiffs against the Estate was wholly void.

Furthermore, Defendant Greensprings contends that the November 14, 2004 letter from Barbara and Robert Miller to defendants Christine Dillon and Donald Bohn (Exhibit I of the Request for Judicial Notice to Def. 12(b)(6) motion) constituted a threat. The letter stated that, if defendants Dillon and Bohn did not issue a check for $500,000 as plaintiffs directed, "you will be forcing us to commence an investigation of your handling of Grandma Teddy's estate." An agreement made under duress or threat is voidable. See REST.2D, CONTRACTS § 175; 28 WILLISTON ON CONTRACTS (4th ed. 1990) § 71:8; *Marriage of Gonzales*, 57 Cal.App.3d 736, 743 (1976).

Plaintiffs contend that this letter was not a threat but "merely an attempt to get the Defendants to make the $500,000.00 checks out to the right payee." Plaintiff's Opposition, 11: 26-27. Again, the question whether Plaintiffs' threatened Defendants might best be resolved on summary judgment but the complete lack of consideration for Defendants' promise makes duress or threat unnecessary as grounds for dismissal.

Neither can Plaintiffs credibly claim that any action by Defendants caused them to miss the statute of limitations. When the gist of an action is fraud, regardless of the form, the three-year period of limitation prescribed by Code of Civil Procedure § 338(d) applies, and this limitation period applies in an action, based on fraud, to establish a constructive trust. *Security First Nat'l Bank v. Ross*, 214 Cal.App.2d 424, 429-430 (1963). Plaintiffs allege that Barbara Miller was defrauded into returning the $500,000 check in August of 2005, so the applicable limitation period has not yet run on this claim .

**Plaintiffs' argument concerning the contract's illegality misses the point.**

Greensprings argues that, because its payment of $500,000 to plaintiffs would violate applicable tax laws, it would disqualify Greensprings as a tax-exempt organization. Not only would the alleged contract be an act beyond the powers of Greensprings' trustee, it would be illegal. Plaintiffs attempt to get around this by asking for specific performance, i.e., payment directly to the designated charities. However, payment of another's pledge to charity is not a charitable gift and is not eligible for the payor's gift tax charitable deduction. The payment of that pledge is deemed to be a gift to the person who made the pledge. Rev. Rul. 81-110, 1981-1 CB 479.

Plaintiffs allege that Greensprings promised to issue checks totaling $500,000, as Plaintiffs directed, in the names of Anne and Molly Miller, including $200,000 to Seabury Hall. Plaintiffs Barbara and Robert Miller argue that they relied on this promise when they pledged $200,000 to Seabury Hall. Now they are suing to make Greensprings pay their pledge. Plaintiffs do not dispute that this would be an *ultra vires* and illegal act, as it would not be a legal and proper charitable gift by Greensprings. But Plaintiffs argue that the only consequence of that illegality would be that Greensprings could lose its tax-exempt status and be required to report and pay income tax. Plaintiffs argue that they are completely innocent and that there would be no unjust enrichment to any party if the alleged contract is enforced, but that their forfeiture of the $500,000 would be a "disproportionately harsh" result to them. Plaintiffs' Opposition, 13:14-21.

Plaintiffs' "unjust enrichment" argument misses the key point: on the one hand, the requested relief would not only cost Greensprings a second $500,000, in addition to the $500,000 it paid the to estate of Elsie Turchen, but it would be contrary to Greensprings' purposes, in excess of its trustee's powers, and would destroy Greensprings through the loss of its tax-exempt status. On the other hand, Plaintiffs have shown no enforceable entitlement to the $500,000 and, rather than suffer any forfeiture or harsh result, Plaintiffs themselves will be no better or worse off, whether or not the requested charitable donations are made.

**Plaintiffs' breach of contract claim is time-barred.**

Code of Civil Procedure § 339 provides that an action on an oral contract must be brought within two years. Plaintiffs' breach of contract claim is based on a series of alleged oral representations that occurred between 2002 and 2005. The final acts in this series occurred on August 10, 2005, when Donald Bohn allegedly agreed to issue new checks totaling $500,000 the next day (FAC ¶ 42), and on August 11, 2005, when Carleton L. Briggs requested the return of the $500,000 cashier's check that Greensprings had issued to Maui Preparatory Academy, represented that a motion would be made in the *Anderson v. Dillon* litigation for issuance of checks to the Millers' latest choice of charities, and stated that the $500,000 would be maintained in a separate, interest-bearing account.

FAC ¶ 44.

Plaintiffs' complaint in this action was filed on August 17, 2007, and their first amended complaint was filed on March 28, 2008, each after the two-year statute of limitations on breach of the alleged oral contract had run, on August 10, 2007.

Plaintiffs argue that a claim does not accrue until the breach occurs, and that their claim for breach of the alleged oral contract did not accrue until August 15, 2007, at the earliest, the date when the *Anderson v. Dillon* litigation was dismissed and therefore Greensprings could no longer file a motion in the case. However, the breach, if any, must have occurred on August 11, 2005, when Plaintiffs were told by Briggs that Greensprings would not issue the checks they had requested, and as had been unconditionally promised by Bohn on August 10, 2005, without prior approval of the court in *Anderson v. Dillon*. FAC ¶ 43, 15:8-23. Their claim, if any, must be deemed to have accrued then for purposes of the two-year statute of limitations.

**The amended complaint fails to establish the essential elements of conversion.**

To state a claim for conversion, plaintiffs must show ownership or right to possession of the tangible property at the time of the alleged taking or interference with the property. *Otworth v. Southern Pac. Transp. Co.*, 166 Cal.App.3d 452, 458 (1985); 5 Witkin, CALIFORNIA PROCEDURE (4th ed. 1997) "Pleading," § 660, at 116. Here, however, none of the cashier's checks in question were ever made out to Plaintiffs. Their inability to establish that they themselves were entitled to receive the sum of $500,000 is fatal to the claim that Greensprings "converted" the money. Plaintiffs acknowledge that Greensprings paid that specific, identifiable fund over to the Estate of Elsie Turchen.

Thus, their contention in opposition to the related motion under Rule 12(b)(7) that the Estate is not even "necessary" to a full and fair resolution of this matter is difficult to understand. At any rate, Plaintiffs have not stated a claim for conversion and, under the facts they allege, cannot prevail.

**Plaintiffs cannot establish justifiable reliance or damages required for fraud.**

In its dismissal order, the Court specifically directed Plaintiffs to address "how reliance upon Defendants' representations (on behalf of Greensprings) was reasonable

even after learning of the *Anderson v. Greensprings* litigation." (Referring to *Anderson v Dillon).* Reasonable or justifiable reliance is an essential element necessary to establish a claim for fraud. 5 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Torts," § 772, at 1121. Plaintiffs argue that they were "absolutely reasonable" in relying on the alleged representations that Greensprings would pay the $500,000 as instructed because "if one believes that his claim is going to be paid in full without any court intervention, it would be a waste of time and money to prepare papers in order to enforce any claim in court." Plaintiffs' Opp. 9:20-22.

This contention fails to address the Court's directive. It simply was not reasonable for Plaintiffs to refrain from filing any kind of claim in the probate proceeding, when their claim to the $500,000 was based on an intended testamentary gift (which they now allege they had a right to inherit), or from intervening in the *Anderson v. Dillon* litigation, where they knew the ownership of the separate, identifiable fund of $500,000 in the Greensprings account was to be determined, whatever Greensprings might want. They failed to take the necessary steps to protect their alleged interest.

The first amended complaint quotes at length the August 11, 2005 telephone conversation between plaintiff Barbara Miller and Carleton L. Briggs. Briggs clearly advised Barbara Miller that Donald Bohn and Christine Dillon had lacked authority to issue the previous checks and that they had acted improperly without authorization from Greensprings' board of directors. FAC ¶ 43, 14:22-15:3. Moreover, he expressly stated that court authorization would be necessary before any other checks could be issued. FAC ¶ 43, 15:8-23. Further, Greensprings' board of directors would have to ratify the acts of Donald Bohn or Christine Dillon. FAC ¶ 43, 15:17-19. Thus, it was not reasonable for Plaintiffs to interpret, and then to rely upon, these representations as an unconditional "promise" to pay the charities, let alone the Plaintiffs, the $500,000 fund. Finally, as previously discussed, Plaintiffs' failure to establish the requisite element of damages is also fatal to their fraud claim.

**The facts alleged do not warrant imposition of a constructive trust.**

Plaintiffs ask the Court to impose a constructive trust on the grounds that Greensprings has wrongfully retained assets (specifically $500,000) which rightfully belong to Anne and Molly Miller. They argue that these assets are Anne and Molly Miller's by virtue of Greensprings' issuing checks in the names of the chosen charities as directed by the Millers as a substitute for Elsie Turchen's gift to them. Plaintiff's Opposition, 18:14-17.

Constructive trust is a remedy used by a court of equity to compel the transfer of property by one who has possesses it but is not justly entitled to it, to the person entitled to it. 13 Witkin, SUMMARY OF CALIFORNIA LAW (10th ed. 2005) "Trusts" § 319 at 892. Plaintiffs' argument that Greensprings has "retained" the $500,000, directly contradicts the allegation (at FAC ¶ 44) that Greensprings transferred the $500,000 to the Estate of Elsie Turchen. Greensprings doesn't have it, and so cannot be compelled to transfer it.

**Plaintiffs' rationale for specific performance is flawed.**

Plaintiffs now ask the Court to grant "specific performance" under the rationale that "Defendants are directly responsible for the Plaintiffs' inability to file a claim in the probate proceeding or participate in the *Anderson v. Dillon* matter because of their false representations that the money would be paid." Plaintiffs' Opposition, 19:3-5. However, an agreement to perform an act which the party does not have the power lawfully to perform when required to do so cannot be specifically enforced. Civ. Code § 3390(3). A court will not lend its aid to give effect to a contract that is illegal, whether it violates the common law or a statute, either expressly or by implication. *Kremer v. Earl,* 91 Cal. 112, 117 (1891).

It is undisputed that, as Plaintiffs were advised by Briggs on August 11, 2005, the court in *Anderson v. Dillon* had jurisdiction over the $500,000 fund in dispute, so Greensprings had no lawful power to issue replacement checks as Bohn had promised on August 10, 2005. Further, as is described supra, the payment of a charitable pledge of another party by Greensprings, a 501(c)(3) organization, would violate applicable tax laws.

1    Plaintiffs knew that the rights to the $500,000 was being determined in *Anderson v. Dillon*, and they are responsible for their own decision not to participate in that litigation. Plaintiffs Barbara and Robert Miller are also responsible for their unilateral decision to make an unconditional pledge to Seabury Hall before the court in *Anderson v. Dillon* had determined the fate of the fund they allegedly were relying on to pay it.

**Plaintiffs' interference-with-right-to-inherit claims are not founded in law or fact.**

Plaintiffs' first amended complaint includes new claims for intentional and negligent "interference with right to inherit."

These claims cannot state a claim for relief because Plaintiffs had no right to inherit from Elsie Turchen, whether by her will or by the laws of intestacy, and no such claims have been recognized under California or Hawaii law. California Probate Code § 6451 provides that adoption severs the relationship of parent and child between an adopted person and that person's natural parent. Plaintiffs allege that Elsie Turchen died intestate. But if the Estate of Elsie Turchen were distributed under the laws of intestate succession, neither Molly Miller, whose inheritance rights through her natural parents were severed by her adoption, nor Anne Miller, who was no relation to Elsie Turchen, would have any right to inherit from Elsie Turchen.

Plaintiffs claim that Elsie Turchen intended to give a gift to Molly and Anne Miller, and she certainly may have. However, that gift was never completed before her death. Her will (produced to plaintiffs in initial disclosure and attached as Exhibit K to the Request for Judicial Notice in support of Defendants' motion to dismiss) does not provide for the proposed gift. Since Anne or Molly Miller also have no right to inherit from Elsie Turchen's Estate under the law of intestacy, there simply were no "rights to inherit" to be interfered with by Defendants.

Furthermore, neither California nor Hawaii ever has recognized such claims. "The second count suggested a theory—recognized in several states but not previously validated in California—of intentional interference with an expected inheritance or gift." *Hagen v. Hickenbottom*, 41 Cal.App.4th 168, 173 (1995). *Hagen* did not further address the theory and certainly did not adopt it, and defendant Greensprings can find no Hawaii case

or statute which addresses it. Thus, there is no basis in law for these claims.

## Conclusion re Motions to Strike and to Dismiss

The facts alleged in Plaintiffs' first amended complaint show that they are not now, nor ever were, entitled to the claimed $500,000. They never received it as a gift, and if the promises alleged in the first amended complaint had been performed, the $500,000 would belong to a charity or charities, not to Plaintiffs. Plaintiffs do not allege that they are authorized to sue Defendants on behalf of any of the multiple sets of charities to which defendants allegedly promised to make gifts. On the facts alleged, Defendants have not damaged plaintiffs in the sum of $200,000, $500,000, or any amount. Even if all their allegations concerning Defendants are taken as true, Plaintiffs cannot prove any set of facts that would entitle them to relief. Accordingly, Greensprings' motion to strike and to dismiss Plaintiffs' First Amended Complaint is hereby granted without leave to amend.

### 3. Motion by Greensprings Baptist Christian Fellowship Trust to dismiss for failure to join an indispensable party

Defendant Greensprings Baptist Christian Fellowship Trust moves the Court to dismiss this action on the ground that the Estate of Elsie Turchen is a party the joinder of which is indispensable to this action's just adjudication, and that the Estate has not been made a party to it.

Because the Court grants the motion to strike the claims of the First Amended Complaint, and dismisses the complaint without leave to amend, the Court will not reach the issue of whether the Estate of Elsie Turchen is an indispensable party to this action. The motion to dismiss under FRCP 12(b)(7)(Docket No. 54) is therefore denied without prejudice.

## Summary, Conclusion, and Order

As Elsie Turchen was dying she apparently wanted to do something for her great-granddaughters, Molly and Anne. Molly was her granddaughter Penny's child, who had been given up for adoption. Anne was the child of Molly's adoptive parents. Elsie said in her letter that she had been too busy to do much for the girls. She wrote a letter to the

girls' parents, Robert and Barbara. Would the gift of a house be all right with them? She had one in mind, and enclosed a photo. Two and a half weeks later, Elsie died.

What ensued was a complicated legal tangle. Penny, Molly's birth mother, contested Elsie's will and sued in state court. The state lawsuit was settled.

Molly and Anne's parents did not join in the lawsuit or make a claim against Elsie's estate. Greensprings was willing at first to make a donation to charities of their choice. Over several years, checks were written and re-written, sent back, replaced, and finally returned to the Estate. Molly and Anne's parents ultimately received nothing from either Greensprings or Elsie's estate. They sued in this Court.

Plaintiffs claim two kinds of damages: forbearance to file a claim against Elsie's estate, and their liability for a pledge to Seabury Hall of $200,000. They argue that they gave up their opportunity to receive something from the Estate, in exchange for Greensprings' promise to donate to charities on their behalf. They argue that they promised a donation to Seabury Hall based on Greensprings' promise to them.

This Court concludes that none of this amounts to a cause of action. When Molly was adopted, her legal ties to Elsie were severed. Even if the will, which left her nothing, was invalidated, the law of intestate succession would also have given her nothing. Anne and her parents had no legal connection to Elsie. Even if Elsie's proposal in the letter amounted to a promise of a gift, the gift was never completed. The promise was not enforceable. There was no valid claim on that basis available to Plaintiffs against Elsie's estate. So the Plaintiffs' forbearance to file a claim against the Estate did not amount to consideration for Greensprings' promise to donate on their behalf. Their forbearance was worthless, since they had no viable claim against Elsie's estate. Their second claim, for their liability for the pledge to Seabury Hall, was not based on any reasonable reliance on a promise by Greensprings. The promise, if there was one, was to donate to charities, including Seabury Hall, but not to Plaintiffs. Plaintiffs never had possession or a promise of possession of any money.

Accordingly, Defendants' motions to strike and to dismiss pursuant to FRCP 12(b)(6) are granted, Plaintiffs' First Amended Complaint is dismissed. The motion for failure to join an indispensable party pursuant to FRCP 12(b)(7) is denied without prejudice. Plaintiffs shall take nothing on their complaint. Parties to bear their own costs. The Clerk shall close the file.

IT IS SO ORDERED.

DATED: August 18, 2008

_____
James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\07-4776\Order Final no estate 28, 29, 52, 54, 55, 56, 77 .wpd